## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARIO SAVA, ALIN POP, individually and
on behalf of all those similarly situated,

|  |  |
|---|---|
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) **Civil Action No**. |
| 21ST CENTURYSPIRITS, LLC, LEANNA | ) **1:22-cv-6083** |
| BARTLETT, ALEXA COLLINS, SARAH | ) |
| HOUCHENS, METISHA SCHAEFER, NINA | ) **Class Action** |
| SEREBROVA, SKYLER SIMPSON, | ) |
| KRISTEN STROUT, KATHY PICOS f/k/a | ) **Jury Trial Demanded** |
| KATHY CRUZALEGUI, JAMIE VILLAMOR,, | ) |
| ANNA KATHARINA VON STAEHLE | ) |
| a/k/a ANNA KATHARINA, | ) |
| | ) |
| Defendants. | ) |

_____

## CLASS ACTION COMPLAINT
_____

Plaintiffs, MARIO SAVA a/k/a MARIUS T. SAVA ("SAVA") and ALIN POP

("POP"), collectively "Plaintiffs"), on behalf of themselves and all those similarly situated,

brings this Class Action Complaint against 21ST CENTURY SPIRITS, LLC, LEANNA

BARTLETT, ALEXA COLLINS, SARAH HOUCHENS, METISHA SCHAEFER, NINA

SEREBROVA, SKYLER SIMPSON, KRISTEN STROUT, KATHY PICOS f/k/a

KATHY CRUZALEGUI, JAMIE VILLAMOR, and ANNA KATHARINA VON

STAEHLE a/k/a ANNA KATHARINA, alleging as follows:

/

**INTRODUCTORY STATEMENT**

1.      This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants 21ST CENTURY SPIRITS, LLC ("21st Century"), maker, distributor and marketer of Blue Ice Vodka ("Blue Ice"), and so-called "influencers" illegally promoting Blue Ice products on social media: LEANNA BARTLETT, ALEXA COLLINS, SARAH HOUCHENS, METISHA SCHAEFER, NINA SEREBROVA, SKYLER SIMPSON, KRISTEN STROUT, KATHY PICOS, JAMIE VILLAMOR, and ANNA KATHARINA VON STAEHLE a/k/a ANNA KATHARINA (together "Influencers").

2.      This action is arising from the deceptive, unfair and misleading promotion of Blue Ice products in the states of Illinois, Florida and throughout the United States.

3.      21st Century and the Influencers are involved in misleading advertising by promoting Blue Ice as "handcrafted," as well as suggesting that there are health benefits in consuming vodka.

4.      During the Class Period (defined below), the Influencers misrepresented the material relation they have with the brand by promoting Blue Ice products without disclosing the fact that they were paid to do it, in violation of the law.

5.      In in order to artificially inflate the prices for the Blue Ice products, both 21st Century and the Influencers devised a scheme in which the Influencers will tag or recommend Blue Ice products, pretending they are disinterested consumers.

6.      Blue Ice is sold at various retailers throughout the United States, including retailers in Illinois and Florida.

7.      Relying on the undisclosed and misleading advertising, Plaintiffs and the class members purchased Blue Ice products and paid a premium, while the Blue Ice products proved to be of a much lower value than the price paid.

## BLUE ICE VODKA

8.      Vodka is a neutral spirit created by mixing high-grade alcohol and water. The high-grade alcohol is obtained by the fermentation of various raw materials like cereal grains (wheat, rye, barley), corn, potatoes, grapes, etc., followed by distillation and filtration.

9.      Until 2022, in the United States the official definition of Vodka was "a neutral spirit so distilled, or so treated after distillation with charcoal or other materials, as to be **without distinctive** character, aroma, **taste,** or color." 27 CFR §5.22.

10.     Despite the obvious fact that vodka was required to have no taste, 21st Century made the unsubstantiated claim that Blue Ice is "the best tasting vodka; BECAUSE TASTE IS EVERYTHING."



Screenshot from https://www.blueicevodka.com/home

11.     Distilled from potatoes, in Idaho, Blue Ice Vodka took Instagram by storm,

3

and seems to be the alcoholic drink of choice for many influencers and their followers.

12.     In order to distinguish itself from competitors, 21st Century represents to consumers that Blue Ice is "hand crafted" and "filtered 5 times" in a distillery that purports to be a distillery bearing the name "Blue Ice Vodka," and belonging to the brand.

13.     Also, the Blue Ice website features interviews with the "Director of Blue Ice Distillery," and shows pictures of the sign outside the distillery bearing the name "Blue Ice." All of this information is misleading.



Screenshot from https://www.blueicevodka.com/

14.     In fact, Blu Ice is manufactured as a "private label" for 21st Century by Distilled Resources Inc. ("DRINC"), an alcohol distillery located in Idaho that manufactures and bottles for many other brands including Zodiac, Square One Vodka, Simple Vodka, American Harvest Vodka, Veev Spirits, etc.

15.     Not only is 21st Century misleading consumers regarding the qualities of its vodka and the true nature of their operations, but it also promotes Blue Ice by using Influencers on social media and making deceptive claims.

16.     Blue Ice Vodka clearly states on its secondary label that it is "handcrafted" to suggest it is made in small quantities and distilled in pot still, under constant supervision of a human. "Handcrafted" is defined in Miriam Webster Dictionary as: "created by a hand process rather than by a machine." In fact, Blue Ice vodka is made by machines.

17.     DRINC produces Blue Ice as a "private label" spirit, part of their massive alcohol production and distillation business. Distilled can produce at least 750,000 gallons of 190-proof beverage alcohol every year. One gallon of 190-proof beverage alcohol makes one 9-liter case of 80-proof bottled vodka[1]. In fact, DRINC states that they can produce close to one million **cases** per year.



Picture of the facility where the "handmade" vodka is produced available at https://waytogoidaho.com/

18.     There is no manual processing involved in producing tens of millions of bottles of alcohol per year. Distilling vodka in a modern and automated facility that

---

[1] waytogoidaho.com/wp-content/themes/final_path/pdf/DRINCPressKitBookFinal2018.pdf

produces one million cases per year does not qualify as "handcrafted," which is usually reserved for artisanal fermentation and distillation.

19.    Both 21st Century and the Influencers falsely claim that Blue Ice had health benefits that it helps a person stay fit.

20.    Such health benefits like "helping you stay fit" or being "fit-friendly" are promoted by the Influencers in their posts. It is also mentioned on the Blue Ice bottle's collar, a detachable label-like marketing material placed on each bottle sold.



Screenshot from: instagram.com/blueicevodkausa/tagged/

21.    The Influencers claim "Together we can stay fit", suggesting that consumption of vodka has benefits like weight loss.

22.    Defendant Alexa Collins, for example, compares vodka with an apple, suggesting that  vodka is the healthier alternative[2].

---

[2] "I make fit-friendly cocktails that have fewer calories than an apple." quote available at https://www.instagram.com/p/B-esJ1KHnho/, last visited Oct. 28, 2022.

23.     Such claims by 21st Century and the Influencers are not only misleading, but also untrue and not supported by scientific evidence. Such claims are also prohibited by the Alcohol and Tobacco Tax and Trade Bureau ("TTB")[3], as they are purely deceptive and misleading.

24.     TTB prohibits "representations" that imply that consumption of "low-carbohydrate" wines, distilled spirits, or malt beverages may play a healthy role in a weight maintenance or weight reduction plan." *Id.*

25.     As further observed by the TTB: "Alcohol beverages supply calories but few nutrients, and excessive consumption of alcohol poses significant health risks. Accordingly, representations that imply that alcohol beverages may be a healthy part of a weight maintenance or weight loss plan, or that consumers may drink more of such beverages because of their low calorie or carbohydrate content, mislead consumers by presenting incomplete information about the health effects and nutritional content of alcohol beverages." *Id.*

26.     In order to set its vodka apart from hundreds of thousands of spirits on the market today, 21st Century makes many of its deceiving claims about its Blue Ice products, on a detachable bottle collar, a secondary bottle label, or on social media through undisclosed advertising, trying to avoid the proper disclosures in their COLA[4] approval

---

[3] See TTB-Ruling 2004-01. See also 27 CFR 4.39(h)(2)(ii), 4.64(i)(2)(ii), 5.129, 5.235(d), 7.129, and 7.235(e).
[4] Alcohol producers must apply for a Certification/Exemption of Label/Bottle Approval (COLA) and follow the labeling and advertising regulations emphasized by TTB. See. https://www.ttb.gov/alfd/certificate-of-label-aproval-cola/, last visited October 19, 2022.

process.

27.     21st Century even adds a label (the secondary label) to the Blue Ice bottle that seems to be signed by a real person. Similar to luxury retailers that would often include a note inside the box signed by the person who packed the box, Blue Ice claims that the person that signed the label was directly involved in the "manual" manufacturing and/or "manual" bottling process, which is untrue.

28.     21st Century promotes Blue Ice Vodka as being filtered four times and "handcrafted" without defining the term or the amount of human intervention in the process of distilling the vodka.

29.     These false claims and the undisclosed advertising by Influencers are the only reasons why Blue Ice has a place on shelves and the reasons why the price of Blue Ice is inflated, much higher than the value of the spirit inside. For example, Blue Ice is retailing for at least 50% more than *Rain Vodka*, another American-made "handcrafted" spirit, advertised as organic (unlike Blue Ice), gluten-free, low-calories vodka, distilled seven times (rather than just one time for Blue Ice). The difference in price can be attributed to the unfair advertising methods employed by 21st Century and the "Influencers."



8

*Screenshots from abcfws.com*

30. Out of the immense profits obtained from this scheme, part is paid to the "influencers" for their indispensable role.

## THE UNDISCLOSED ADVERTISING

31. While the practice employed by 21st Century and the Influencers is very profitable, it is, nevertheless, illegal. Both Federal law, California law, Illinois law and Florida law prohibit such commercial behavior.

32. Plaintiffs saw Blue Ice vodka being consumed by Instagram influencers they followed and purchased Blue Ice products, which proved to be of an inferior quality compared with the expectations the Plaintiffs had and the premiums they paid for Blue Ice.

33. But for the undisclosed advertising by the Influencers and the misleading advertising claims, Plaintiffs and the class members would not have purchased the Blue Ice products.

34. In deciding to purchase Blue Ice vodka products, Plaintiffs followed what they believed to be the honest advice of the Influencers. None of the posts Plaintiffs saw mentioned, as required, that the influencers are nothing more than paid advertisers for the brand.

35. Sometimes Influencers will only pose next to a bottle of Blue Ice and tag Blue Ice in their posts, suggesting that this is their drink of choice when it comes to spirits.

36. Other times the Influencers will specifically indicate that Blue Ice is their favorite alcoholic beverage or recommend cocktails for their followers where they must use Blue Ice.

37.    The Influencers often try to convince consumers to purchase Blue Ice, even directing the consumer to their closest grocery/liquor store or bar.

38.    At times, the Influencers would make claims that the vodka is "fit-friendly," or it can "help you stay fit," almost in the same manner they would talk about a dietary supplement or a healthy vegetable. The Influencers will infer that introducing this vodka in your diet will help you stay fit.

39.    This undisclosed advertising has been prevalent on Instagram in the last few years. Defendants Alexa Collins and Leanna Barlett, for example, advertised Blue Ice products on Instagram more than ten times, without mentioning even once that they are paid (substantial amounts) to advertise Blue Ice and keep it quiet.

## NATURE OF THE ACTION

40.    Plaintiffs, MARIO SAVA and ALIN POP, on behalf of themselves and all those similarly situated seek damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants 21st Century Spirits, LLC, Leanna Bartlett, Alexa Collins, Sarah Houchens, Metisha Schaefer, Nina Serebrova, Skyler Simpson, Kristen Strout, Kathy Picos, Jamie Villamor, and Anna Katharina Von Staehle a/k/a Anna Katharina, for unjust enrichment, fraud, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violations of the state laws, violation of Florida Deceptive and Unfair Trade Practices Act, violation of Illinois Uniform Deceptive Trade Practices Act, violation of California Unfair Competition Law, violation of California False Advertising Law, violations of California's Consumers Legal Remedies Act.

## PARTIES

41.     Plaintiff, **Mario Sava a/k/a Marius T. Sava** ("Sava"), is a citizen of Illinois who resides in Cook County, IL and is otherwise *sui juris*.

42.     Plaintiff, **Alin Pop** ("Pop"), is a citizen of Florida who resides in Pinellas County, FL and is otherwise *sui juris*.

43.     Plaintiffs bring this action on their behalf and on behalf of all other persons similarly situated individuals.

44.     Defendant **21st Century Spirits**, LLC (" 21st Century"), is a company registered in California doing business in California, Florida, Illinois and around the country. 21st Century owns the vodka brand Blue Ice Vodka.

45.     Defendant **Leanna Bartlett** ("Bartlett") is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Bartlett is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://*instagram.com/leannabartlett/*

46.     Defendant **Alexa Collins** ("Collins"), is a citizen of Florida who resides in

Broward County and is otherwise *sui juris*. Collins is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/alexacollins/

47. Defendant **Sarah Houchens** ("Houchens") is a citizen of Florida who resides in Hillsborough County and is otherwise *sui juris*. Houchens is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/sarahlhouchens/

48. Defendant **Metisha Schaefer** ("Schaefer") is a citizen of Florida who

resides in Miami-Dade County and is otherwise *sui juris*. Schaefer is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/metisha/

49.     Defendant **Nina Serebrova** ("Serebrova"), is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Serebrova is transacting business in business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/ninaserebrova/

13

50.     Defendant **Skyler Simpson** ("Simpson"), is a citizen of Florida who resides in Hillsborough County and is otherwise *sui juris*. Simpson is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from https://www.instagram.com/skylersimpsonn/*

51.     Defendant **Kristen Strout** ("Strout"), is a citizen of Tennessee who resides in Davidson County and is otherwise *sui juris*. Strout is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from https://www.instagram.com/r1_vette_babe23/*

52.     Defendant **Katherine Picos** a/k/a **Kathy Picos** ("Picos"), is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Picos is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/kathypicos/

53.     Defendant **Jamie Villamor**, ("Villamor") is a citizen of Nevada who resides in Clark County and is otherwise *sui juris*. Villamor is transacting business in California, Florida, Illinois, and the United States over the internet and actively soliciting business in California, Florida and Illinois.

54.     Defendant **Anna Katharina Von Staehle** ("Katarina") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Schaefer is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.

/

/



*Screenshot from* https://www.instagram.com/akatharinav/

## JURISDICTION AND VENUE

55.     This Court has jurisdiction over this matter also pursuant to 28 U.S.C.

§ 1331 as an action arising under 15 U.S.C. 45(a).

56.     This Court also has jurisdiction over this matter under the Class

Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in

which: 1) there are at least 100 class members; 2) the combined claims of Class

Members exceeds $5,000,000, exclusive of interest, attorneys' fees, and costs; and

3) Defendants and Class Members are citizens of different states.

57.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over the

Plaintiffs' related state law claims.

58.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). The Defendants

are alleged to perpetrate their illegal conduct in Cook County, Illinois.

## STATEMENT OF FACTS

59.     Social media emerged in the last years as a main source of information and

communication[5] for billions of users.

---

[5] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding.* [S.l.]: Springer

60.     There were an estimated 159 million Instagram users in the United States in 2022[6], while the platform engaged last year over 2 billion monthly users[7].

61.     In the last three years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown tremendously, adding 100 million users every few months[8]. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[9]

62.     Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published guidelines for influencers regarding proper advertising practices[10].

63.     Indeed, the rapid growth of social media platforms, including Instagram, allowed for lack of regulation and oversight. Some 80% of social media users said they were concerned about advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[11].

---

Fachmedien Wiesbaden, p.2.

[6] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Oct 28, 2022).

[7] Rodriguez, S., 2021. *Instagram surpasses 2 billion monthly users while powering through a year of turmoil,* https://www.cnbc.com/2021/12/14/instagram-surpasses-2-billion-monthly-users.html (last visited Oct 28, 2022).

[8] Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited Oct 28, 2022).

[9] Schaeffer, K., 2022. *7 Facts About Americans and Instagram*. Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).

[10] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers*. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).

[11] Raine, L., 2022. *Americans' complicated feelings about social media in an era of privacy*

64.     This is because some unscrupulous "influencers" are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to create the content displayed on their profile. More than often, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the obscene amounts they are demanding.

65.     Defendant Influencers, for example, advertise alcohol on their Instagram account without disclosing that they are paid to do so and without regard to the rules relating to advertising alcohol found in 27 CFR 5.233(a) and Instagram's own policies.[12]



*Screenshots from Instagram.com/alexacollins*

/

/

---

*concerns*.  http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-in-an-era-of-privacy-concerns/ (last visited Feb. 15, 2022).
[12] "Users may not post content that attempts to buy, sell, trade, donate or gift alcohol products if it is not posted by a Page, Group, or Instagram Profile representing a real brick and mortar store, legitimate website, or brand."



*Screenshots from Instagram.com/leannabartlett/*

66.     According to this business model, a number of carefully selected influencers will pretend to consume Blue Ice and present this fact to their followers, while being properly compensated, without disclosing any material relation with 21st Century.

67.     In order to increase the price of Blue Ice, 21st Century makes misleading claims that Blue Ice helps in weight management, that Blue Ice is handmade and that it tastes better than other vodkas; the Influencers amplify this message by repeating these claims to millions of their followers.

68.     Plaintiffs and thousands of similarly situated individuals purchase such products at inflated prices, exclusively because of the way the Blue Ice products are advertised and the misleading content of the advertisement.

**THE INFLUENCERS**

69.     Despite being compensated for pretending to drink and promoting Blue Ice , none of the Influencers use the "paid partnership" tag suggested by the FTC or other disclosures like "#ad," or "#sponsored." Therefore, they fail to be compliant with the FTC Rules found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social

media.[13] See also *Exhibit* A.

70.     In fact, many of the Influencers are familiar with the FTC guidelines and properly display the required disclosures when the brands are not willing to pay for them to disguise the advertising.

71.     Plaintiffs are following all the Influencers on Instagram. The Plaintiffs' decision to purchase Blue Ice and pay a premium for it was determined by the Influencers they followed, specifically by the Defendants in this case and the claims they made about Blue Ice.

72.     The Plaintiffs would not have purchased the products if they knew that the Influencers were paid to pretend that they like Blue Ice and that the claims they made are not accurate.

### THE ADVERTISING

73.     Facebook, the parent company of Instagram offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Facebook. Both the *post* and the *ad* are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

74.     The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the *grid* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show

---

[13] Federal Trade Commission, *supra* note 7.

for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

75.     Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership" tag is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

76.     Every time an influencer advertises a product, such advertisement appears in the Instagram *feed* of everybody following the influencer.

77.     The FTC has repeatedly published guidelines for influencers regarding proper advertising practices, the latest material being printed in 2019 and attached in *Exhibit A*.

78.     By advertising Blue Ice products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a).

79.     By instructing and allowing the influencers to advertise its products without making the proper disclosures, 21st Century is in violation of of 15 U.S.C. § 45(a).

### THE PLAINTIFFS

80.     Given the fact that Blue Ice was consumed by many of the influencers they followed, the Plaintiffs decided to purchase Blue Ice.

81.     Mario Sava, purchased Blue Ice to celebrate his birthday, in October 2022, from a Liquor Store in Chicago, IL.

82.     Sava realized shortly after opening the spirit that is not what he expected to be and he believes it to be of inferior quality. He also realized that Blue Ice is pure alcohol and upon research concluded that consuming Blue Ice does not have health benefits.

83.     The Blue Ice product Sava purchased is industrially manufactured so he didn't purchase a small-batch, high-value spirit, but rather a generic spirit with an overinflated price.

84.     Alin Pop purchased Blue Ice online in August 2022, and, upon receiving the delivery, realized that the spirit is not worth the high price he paid.

85.     While he relied on the statements made by the Influencers and the statements on 21st Century's advertising, Pop believed he bought a high-quality, handcrafted vodka made by human hands.

86.     After consuming Blue Ice at home, Pop realized that the Blue Ice product he purchased is of an inferior, generic quality, and the vodka is not special.  He paid a premium price for a substandard vodka product. After further research, Pop discovered that Blue Ice was not manufactured in a pot still, not produced manually, did not have any health benefits, and it was not different in any way from a cheap, run-of-the-mill vodka.

### CLASS ALLEGATIONS

87.     Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

88.     Plaintiffs assert the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

89.     Plaintiffs are filing this lawsuit on behalf of all persons that purchased Blue

Ice relying on misleading marketing practices and Influencers from September 1, 2018, to present ("Class Period").

90.     Plaintiff Pop seeks to represent two classes composed of and defined as follows:

>       a.  <u>Nationwide Class</u>: All consumers that purchased Blue Ice Vodka.

>       b.  <u>Florida Subclass</u>: All Florida residents that that purchased Blue Ice Vodka.

91.     Plaintiff Sava seeks to represent two classes composed of and defined as follows:

>       a.  <u>Nationwide Class</u>: All consumers that purchased Blue Ice Vodka (same as above).

>       b.  <u>Illinois Subclass</u>: All Illinois residents that that purchased Blue Ice Vodka.

92.     The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

93.     Plaintiffs reserve the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

94.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

95.    _Numerosity_: Thousands of consumers have been injured by Defendants' deceptive marketing practices, including Plaintiffs. They all have purchased Blue Ice Vodka products and paid a premium for it in reliance on the Defendants' representations.

96.    Each of the classes represented by Sava and Pop have thousands of members and the joinder of all members is impracticable.

97.    _Typicality_: Plaintiffs' story and their claims are typical for the class and, as the named Plaintiffs, they are aware of other persons in the same situation. Plaintiffs and the members of each class sustained damages arising out of Defendants' illegal course of business.

98.    _Commonality_: Since the whole class purchased Blue Ice Vodka products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

99.    _Adequacy_: Sava and Pop will fairly and adequately protect the interests of each class they represent.

100.    _Superiority_: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**VIOLATIONS OF 15 U.S.C. § 45(a)**

101.    By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

102.    By failing to mandate and enforce disclosure of material connections, 21st Century is in violation of 15 U.S.C. § 45(a).

## COUNT I: VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (On behalf of Plaintiff Pop and Florida Subclass)

103.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein. As set forth above, Pop asserts this count on his own behalf and on behalf of all other similarly situated persons, members of the Florida Subclass, pursuant to Fed. R. Civ. P. 23.

104.    21st Century provided Instagram users with the means and instrumentalities for the commission of deceptive acts and practices and engaged in a deceptive act or unfair practice, by engaging in misrepresentation, and statutory violations.

105.    For a fee, the Influencers, with the means and instrumentalities for the commission of deceptive acts and practices, engaged in deceptive acts or unfair practices, by engaging in misrepresentation and statutory violations.

106.    By failing to disclose material connections, Defendants violated 15 U.S.C. § 45(a) which represents a *per se* violation of "FDUTPA".

107.    Defendants engaged in practices aimed at misleading consumers, as per 27 CFR §4.39.

108.    Such practices as the ones employed by the Defendants are illegal, unethical, unscrupulous, and likely to mislead any consumer acting reasonably in the circumstances, to the class members' detriment.

109.    Defendants' engagement in these unfair practices caused the Plaintiffs to suffer a loss.

110.    The value of the loss, calculated as the price paid for a bottle of Blue Ice

product less the value of the vodka is over $5,000,000.00 for the entire class.

111.   Plaintiffs also request injunctive relief. Absent injunctive relief by this Court, the Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the class members.

112.   In the alternative, pursuant to § 501.211(1), Fla. Stat., as the Plaintiffs are aggrieved by the violation of FDUTPA, they are entitled to obtain a declaratory judgment that the Defendants' practice violates the law and to enjoin the defendants as they have violated, are violating, and it is likely to violate the Act in the future.

113.   Plaintiffs also request attorney fees pursuant to § 501.2105, Fla. Stat.

## COUNT II: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT
### (On behalf of Plaintiff Sava and Illinois Subclass)

114.   Plaintiff incorporates by reference paragraphs 1-102 of this Complaint as if fully re-written herein. Sava asserts this count on his own behalf and on behalf of the Illinois Subclass, as defined above, pursuant to Fed. R. Civ. P. 23.

115.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., provides protection to consumers by mandating fair competition in commercial markets for goods and services.

116.   The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

117.    The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

118.    Defendant is a "person" as defined by section 505/1(c) of the ICFA.

119.    Plaintiff and each member of the Class are "consumers" as defined by section 505/1(e) of the ICFA.

120.    Blue Ice constitutes "merchandise" under the meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

121.    Defendants' misrepresentations and omissions regarding the true origin of Blue Ice, the benefits of Blue Ice, the taste of Blue Ice, and the endorsements obtained by Blue Ice are deceptive and unfair acts and practices prohibited by Chapter 2 of ICFA.

122.    Defendants are also in violation of Section 5(a) of 15 U.S.C. § 45(a), which should be considered as a violation of 815 ILL. COMP. STAT. ANN. 505/2

123.    Defendants violated the ICFA when it misrepresented facts regarding Blue Ice. Accordingly, the misrepresentations were the central reason for consumers chose to purchase Blue Ice over other alternatives, and to pay a premium for it.

124.    Plaintiff and members of the Class relied upon Defendants' misrepresentations and omissions when they purchased bottles of Blue Ice.

125.    If Plaintiff and the Class had been aware of the true characteristics of Blue Ice, or the fact that the Influencers are not honest influencers but that they are paid to promote Blue Ice, they would not have purchased it.

126.    Defendants also violated section 510/2(a)(5) of the DTPA by representing that Blue Ice has characteristics and ingredients that it does not have and offers health

benefits.

127.    Plaintiff and the Class saw Defendants' marketing and online advertising materials prior to purchasing Blue Ice, and they reasonably relied on Defendant's misrepresentations and omissions when they purchased Blue Ice.

128.    Defendants' misrepresentations and omissions regarding Blue Ice were acts likely to mislead the Plaintiff and the Class members acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of ICFA.

129.    As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and the Class members have suffered harm in the form of monies paid in exchange for Blue Ice because they paid more than what they would have otherwise paid had they know the true nature of the product.

130.    Defendants' practices set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

### COUNT III: VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (On behalf of Plaintiff Sava and Illinois Subclass)

131.    Plaintiff incorporates by reference paragraphs 1-102 of this Complaint as if fully re-written herein. Sava asserts this count on his own behalf and on behalf of the Illinois Subclass, as defined above.

132.    At all times relevant hereto, there was in full force and effect the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/1, et seq. ("DTPA").

133.    Furthermore, Defendants represent that Blue Ice has characteristics and ingredients that it does not have.

134.    Defendants advertises Blue Ice with the intent not to sell it as advertised by using the false and misleading advertising and marketing detailed above.

135.    Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead the named Plaintiffs and the Class.

136.    Accordingly, Defendants have violated the DTPA.

**COUNT IV: VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT. CAL. CIV. CODE. §§ 1750, *ET SEQ.***
**(On behalf of Plaintiffs Sava and Pop and the Nationwide Class)**

137.    Plaintiffs incorporate by reference paragraphs 1-102 of this Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class, as defined above.

138.    The conduct that forms the basis of this action arose in California, the state in which 21st Century has its headquarters and principal place of operations.

139.    Defendants are each a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

140.    Defendants provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

141.    Plaintiffs and members of the Nationwide Class are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770, and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

142.    As set forth herein, Defendants' acts and practices, undertaken in

transactions violate §1770 of the Consumers Legal Remedies Act in that:

    a. Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services.

    b. Defendants misrepresented the affiliation, connection, or association with, or certification by another.

    c. Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

    d. Defendants advertised goods or services with intent not to sell them as advertised;

143. Pursuant to the provision of Cal. Civ. Code §1780, Plaintiffs seek an order enjoining Defendants from the unlawful practices described herein, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

**COUNT V: VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE § 17200. *ET. SEQ***
**(On behalf of Plaintiffs Sava and Pop and the Nationwide Class)**

144. Plaintiffs incorporate by reference paragraphs 1-102 of this Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class, as defined above, and pursuant to Rule 23.

145. The conduct that forms the basis of this action arose in California, state in which 21st Century has its headquarters and principal place of operations.

**Unfair And Fraudulent Competition**

146.    Defendant has engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200, et seq., because Defendants' conduct is unlawful, unfair, and/or fraudulent, as herein alleged.

147.    Plaintiffs, the class members, and Defendants are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

148.    Defendants promoted and advertised Blue Ice without properly disclosing their financial interest and such acts and practices constitute deceptive acts or practices in violation of Section 5(a) of 15 U.S.C. § 45(a).

149.    A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a per se violation of the California Unfair Competition Law ("UCL").

**Unlawful Competition**

150.    The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies.  Plaintiffs hereby incorporate by reference all prior causes of action into this cause of action.

151.    Plaintiffs and Nationwide Class Members request that this Court enter such  orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and Class Members any monies Defendant acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies,

interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

152.     Plaintiffs and Class Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT VI: UNJUST ENRICHMENT**
**(On behalf of Plaintiffs Pop and Sava, the Nationwide Class, the Illinois and Florida Subclasses)**

153.     Plaintiffs incorporate by reference all paragraphs 1-102 of this Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

154.     By paying the high prices demanded by  21st Century the Plaintiffs and the members of the class conferred a direct benefit to all the Defendants.

155.     Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behaviors. If the Defendants do not compensate the Plaintiffs, they would be unjustly enriched as a result of their unlawful act or practices.

156.     It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, reap unjust enrichment.

157.     Since the Defendants unjustly enriched themselves at the expense of the Instagram users, the Plaintiffs request the disgorgement of these ill-gotten money.

158.     Due to Defendants' conduct, Plaintiffs and the putative class members are entitled to damages according to proof.

**COUNT VII: NEGLIGENT MISREPRESENTATION**
**(On behalf of Plaintiffs Sava and Pop and the Nationwide Class)**

159. Plaintiffs incorporate by reference all paragraphs 1-102 of this Complaint as if fully rewritten herein. As set forth above, the Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

160. Defendants had a duty to be truthful in their commercial speech. In convincing the Plaintiffs to purchase Blue Ice products, the Defendants made representations that they knew to be false, or negligently failed to examine the veracity of the affirmations.

161. As a result of Defendants' negligent misrepresentations, Plaintiffs and members of the Nationwide Class suffered injury.

## COUNT VIII: BREACH OF EXPRESS WARRANTY
### (On behalf of Plaintiff Pop, the Nationwide Class and the Florida Subclass)

162. Plaintiff incorporate by reference paragraphs 1-102 of this Complaint as if fully re-written herein. Plaintiff asserts this count on his own behalf and on behalf of the Nationwide Class and Florida Subclass, as defined above.

163. Defendant 21st Century provided and express warranty regarding the Blue Ice vodka. It described it to have a specific taste, to be handcrafted and to promote a healthy lifestyle. Since the description of the goods was made part of the basis of the bargain an express warranty was created that that the goods shall conform to the description.

164. Plaintiff and the class members reasonably relied upon said warranties and purchased Blue Ice vodka products which failed to conform to the Defendant's description.

165. As a result of Defendant's breach of express warranties, the Plaintiff and the class members suffered damages.

166.     Plaintiff, Alin Pop, provided notice to 21st Century by mailing a letter to 21st Century's Registered Agent in Florida, indicating the basis of his claims, prior to initiating this action.

## DEMAND FOR JURY TRIAL

167.    Plaintiffs and those similarly situated demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Alin Pop and Jane Doe, respectfully request that judgment be entered in their favor and in favor of those similarly situated as follows:

a.      Certifying and maintaining this action as a class action, with the named Plaintiffs as designated class representatives and with their counsel appointed as class counsel;

b.      Declaring the Defendants in violation of each of the counts set forth above;

c.      Awarding the Plaintiffs and those similarly situated compensatory, punitive, and treble damages;

d.      Awarding the Plaintiffs and those similarly situated liquidated damages;

e.      Order the disgorgement of ill-gotten monies;

f.      Awarding each of the named Plaintiffs a service award;

g.      Awarding pre-judgment, post-judgment, and statutory interest;

h.      Awarding attorneys' fees and costs;

i.      Awarding such other and further relief as the Court may deem just

and proper.

Dated: November 3, 2022

                                    Respectfully Submitted,

                                    s/Keith Gibson
                                    Keith L. Gibson, Esq.
                                    PRACTUS LLP
                                    IL Bar No.: 6237159
                                    490 Pennsylvania Avenue, Suite 1
                                    Glen Ellyn IL 60137
                                    Telephone: (630) 677-6745
                                    Email: Keith.Gibson@practus.com

                                    Bogdan, Enica, Esq.
                                    PRACTUS LLP
                                    FL Bar No.: 101934
                                    66 West Flagler St., Ste. 937
                                    Miami, FL 33130
                                    Telephone: (305) 539-9206
                                    Email: Bogdan.Enica@practus.com

                                    Steven E. Young, Esq.
                                    PRACTUS LLP
                                    CA Bar No. 63278
                                    (*pro hac vice* forthcoming)
                                    16501 Ventura Blvd, Ste 304
                                    Encino, CA 91436
                                    Telephone: (818) 641-5001
                                    Email: Steven.Young@practus.com

                                    *Attorneys for the Plaintiffs*