**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIO SAVA and ALIN POP, individually and on behalf of all those similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | **Civil Action No**. **1:22-cv-6083** |
| v. | ) ) | **Honorable Joan H. Lefkow** |
| 21ST CENTURYSPIRITS, LLC, LEANNA BARTLETT, ALEXA COLLINS, SARAH HOUCHENS, METISHA SCHAEFER, NINA SEREBROVA, SKYLER SIMPSON, KRISTEN STROUT, KATHY PICOS f/k/a KATHY CRUZALEGUI, JAMIE VILLAMOR,, ANNA KATHARINA VON STAEHLE a/k/a ANNA KATHARINA, | ) ) **)** **)** ) ) ) ) ) ) | **Class Action** **Jury Trial Demanded** |
| Defendants. | ) ) | |

_____

**FIRST AMENDED CLASS ACTION COMPLAINT**
_____

Plaintiffs, MARIO SAVA a/k/a Marius T. Sava ("SAVA") and ALIN POP ("POP") (collectively "Plaintiffs"), on behalf of themselves and all those similarly situated, bring this First Amended Class Action Complaint against 21ST CENTURY SPIRITS, LLC, LEANNA BARTLETT, ALEXA COLLINS, SARAH HOUCHENS, METISHA SCHAEFER, NINA SEREBROVA, SKYLER SIMPSON, KRISTEN STROUT, KATHY PICOS f/k/a KATHY CRUZALEGUI, JAMIE VILLAMOR, and ANNA KATHARINA VON STAEHLE a/k/a ANNA KATHARINA, alleging as follows:

**INTRODUCTORY STATEMENT**

1.     This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants 21ST CENTURY SPIRITS, LLC ("21st Century"), maker, distributor and marketer of Blue Ice Vodka ("Blue Ice"), and so-called "influencers" illegally promoting Blue Ice products on social media: LEANNA BARTLETT, ALEXA COLLINS, SARAH HOUCHENS, METISHA SCHAEFER, NINA SEREBROVA, SKYLER SIMPSON, KRISTEN STROUT, KATHY PICOS, JAMIE VILLAMOR, and ANNA KATHARINA VON STAEHLE a/k/a ANNA KATHARINA (together "Influencers").

2.     This action is arising from the deceptive, unfair and misleading promotion of Blue Ice products in the states of Illinois, Florida and throughout the United States.

3.     21st Century and the Influencers are involved in deceptive, unfair and misleading advertising by promoting Blue Ice as "handcrafted," misrepresenting the qualities of Blue Ice vodka, including the taste and the number of calories, as well as suggesting that there are health benefits in consuming vodka.

4.     During the Class Period (defined below), the Influencers also misrepresented the material connection they have with the brand by promoting Blue Ice products without disclosing the fact that they were paid to do it, a practice deemed to be unfair and deceptive.

5.     In in order to artificially inflate the prices for Blue Ice products, both 21st Century and the Influencers devised a scheme in which the Influencers will tag or recommend Blue Ice products, pretending they are disinterested consumers.

6.     Blue Ice is sold at various retailers throughout the United States, including

major retailers in Illinois and Florida like Walmart, Walgreens, Jewel-Osco, Whole Foods Market, Publix, Total Wine & More, etc. Blue Ice is sold at over 1300 retailers in Florida and over 590 retailers in Illinois.

7.     Relying on the undisclosed and misleading advertising, Plaintiffs and the Class Members (defined below in para. 109) purchased Blue Ice products and paid a premium, while the Blue Ice products proved to be of a much lower value than the price paid.

## BLUE ICE VODKA

8.     Vodka is a neutral spirit created by mixing high-grade alcohol and water. The high-grade alcohol is obtained by the fermentation of various raw materials like cereal grains (wheat, rye, barley), corn, potatoes, grapes, etc., followed by distillation and filtration.

9.     Until 2022, in the United States the official definition of Vodka was "a neutral spirit so distilled, or so treated after distillation with charcoal or other materials, as to be **without distinctive** character, aroma, **taste,** or color." *See* 27 CFR §5.22.

10.     Despite the obvious fact that vodka was required to have no taste, 21st Century made the unsubstantiated and misleading claim that Blue Ice is "the best tasting vodka; BECAUSE TASTE IS EVERYTHING."



Screenshot from https://www.blueicevodka.com/home

11.     Advertised as distilled from potatoes, in Idaho, Blue Ice Vodka took Instagram by storm, and seems to be the alcoholic drink of choice for many influencers and their followers.

12.     In order to distinguish itself from competitors, 21st Century represents to consumers that Blue Ice is "handcrafted and American made" and "filtered 5 times" in a distillery that purports to be a distillery bearing the name "Blue Ice Vodka," and belonging to the brand[1].

13.     Also, the Blue Ice website features interviews with the "Director of Blue Ice Distillery," and shows pictures of the sign outside the distillery bearing the name "Blue Ice." All this information is misleading as neither Blue Ice nor 21st Century own a distillery.



Screenshot from https://www.blueicevodka.com/ (the Blue Ice logo is digitally placed on top of the actual sign).

---

[1] Quotes from https://www.blueicevodka.com (last visited Sep.29, 2023)

14.    In fact, Blue Ice is manufactured as a "private label" for 21st Century by Distilled Resources Inc. ("DRINC"), an alcohol distillery located in Idaho that manufactures and bottles vodka for many other brands including Zodiac, Square One Vodka, Simple Vodka, American Harvest Vodka, Veev Spirits, etc. Upon information and belief, out of these brands, Blue Ice is the only spirit produced by DRINC sold through major retailers (Walmart, Walgreens, Publix, Jewel Osco, etc.)

15.    Blue Ice Potato Vodka and Blue Ice Huckleberry flavored vodka are the main products manufactured by DRINC for 21st Century, and the only Blue Ice products widely available for purchase through major retailers or online stores.

16.    Not only is 21st Century misleading consumers regarding the qualities of its vodka and the true nature of its operations, but it also promotes Blue Ice by using Influencers on social media and making deceptive claims.

17.    Blue Ice clearly states on its secondary label that it is "handcrafted" to suggest it is made in small quantities and distilled in a pot still, under constant supervision of a human. "Handcrafted" is defined in Miriam Webster Dictionary as: "created by a hand process rather than by a machine." In fact, Blue Ice is made by machines.

18.    DRINC produces Blue Ice as a "private label" spirit, part of their massive alcohol production and distillation business. DRINC can produce at least 750,000 gallons of 190-proof beverage alcohol every year. One gallon of 190-proof beverage alcohol makes one 9-liter case of 80-proof bottled vodka[2]. In fact, DRINC states that they can produce close to one million **cases** (12 million bottles) per year.

---

[2] waytogoidaho.com/wp-content/themes/final_path/pdf/DRINCPressKitBookFinal2018.pdf



Picture of the facility where the "handmade" vodka is produced available at https://waytogoidaho.com/

19.     There is no manual processing involved in producing tens of millions of bottles of alcohol per year. Distilling vodka in a modern and automated facility that produces one million cases per year does not amount to "handcrafted," which is usually reserved for artisanal fermentation and distillation.

20.     Also, both 21st Century and the Influencers falsely claim that Blue Ice had health benefits that it helps a person stay fit.

21.     Such health benefits like "helping you stay fit" or being "fit-friendly" are promoted by the Influencers in their posts.  These misrepresentations are also made on the Blue Ice bottle's collar, a detachable label-like marketing material placed on each bottle sold.



Sample Bottle Collars for the two vodka varieties available in stores:
Blue Ice Potato Vodka (left) Blue Ice Huckleberry Flavored Vodka (right)

22.     Apart from stating that Blue Ice is a "fit friendly vodka," the bottle collars above make the same claim the Influencers are making: there are only 52 or 57 calories in an ounce of Blue Ice vodka. This is inaccurate and misleading to the consumer. No type of Blue Ice Vodka has less than 64 calories per ounce and 96 calories per serving.

23.     Influencer Metisha Schaefer, on May 23, 2020, on her Instagram feed even claims that "[Blue Ice has] only 52 calories per serving, so my calories stay well under 100 calories." Influencer Jaime Villamor, on April 30, 2020, claims on an Instagram post that "With only 52 calories a serving, no sugar added and gluten free, Blue Ice can definitely help you stay fit during quarantine." The influencers are cutting the actual number of calories almost in half, in order to present Blue Ice as a healthy product.

24.     All these statements are untrue.  It is actually mentioned on the Blue Ice website in very small print: "Blue Ice Vodka (per 1.5 oz.), 96 calories total, 0g carbs; 0g protein; 0g fat," www.blueicevodka.com (last accessed Feb. 26, 2023). It also comes as no surprise that the caloric value is reported relative to 1.5 oz, which is the serving size accepted in the United States. USDA (Unites States Department of Agriculture) guideline also conveys information on the definition of standard drink servings: 1.5 ounces of 80-

proof distilled spirits (40% ABV), 5 ounces of wine (12% ABV) and 12 ounces of regular beer (5% ABV)[3]. In fact, according to the USDA, Blue Ice Vodka, like any other vodka, has at least 96 calories (406 KJ) per serving.[4]

25.     The Influencers also claim "Together we can stay fit", suggesting or plainly stating that consumption of vodka has benefits like weight loss and improved fitness.



Screenshot from: instagram.com/blueicevodkausa/tagged/

26.     Defendant Alexa Collins, for example, compares vodka with an apple, suggesting that vodka is the healthier alternative[5].

27.     Such claims by 21st Century and the Influencers are not only misleading, but also untrue and not supported by scientific evidence. Such claims are also prohibited

---

[3] *See* https://www.distilledspirits.org/news/the-2020-u-s-dietary-guidelines-advice-on-alcohol-if-alcohol-is-consumed-it-should-be-in-moderation/
[4] See https://fdc.nal.usda.gov/fdc-app.html#/food-details/174818/nutrients (last visited, Sept. 27, 2023)
[5] "I make fit-friendly cocktails that have fewer calories than an apple." quote available at https://www.instagram.com/p/B-esJ1KHnho/, last visited Oct. 28, 2022.

8

by the Alcohol and Tobacco Tax and Trade Bureau ("TTB")[6], as they are purely deceptive and misleading.

28.     TTB prohibits "representations" that imply that consumption of "low-carbohydrate" wines, distilled spirits, or malt beverages may play a healthy role in a weight maintenance or weight reduction plan." TTB-Ruling 2004-01.

29.     As further observed by the TTB: "Alcohol beverages supply calories but few nutrients, and excessive consumption of alcohol poses significant health risks. Accordingly, representations that imply that alcohol beverages may be a healthy part of a weight maintenance or weight loss plan, or that consumers may drink more of such beverages because of their low calorie or carbohydrate content, mislead consumers by presenting incomplete information about the health effects and nutritional content of alcohol beverages." *Id.*

30.     In order to set its vodka apart from thousands of spirits on the market today, 21st Century makes many of its deceiving claims about its Blue Ice products on a detachable bottle collar, a secondary bottle label, or on social media through undisclosed advertising, trying to avoid the proper disclosures in their COLA[7] approval process.

31.     21st Century adds a label (the secondary label) to the Blue Ice bottle that seems to be signed by a real person. Similar to luxury retailers that often include a note

---

[6] See TTB-Ruling 2004-01. See also 27 CFR 4.39(h)(2)(ii), 4.64(i)(2)(ii), 5.129, 5.235(d), 7.129, and 7.235(e).

[7] Alcohol producers must apply for a Certification/Exemption of Label/Bottle Approval (COLA) and follow the labeling and advertising regulations emphasized by TTB. See. https://www.ttb.gov/alfd/certificate-of-label-aproval-cola/, last visited October 19, 2022.

inside the box signed by the person who packed the box, Blue Ice claims that the person that signed the label was directly involved in the "manual" manufacturing and/or "manual" bottling process, which is untrue.

32.     21st Century promotes Blue Ice as being filtered four times and "handcrafted" without defining the term or the amount of human intervention in the process of distillation and filtration of vodka.

33.     These false claims and the undisclosed advertising by Influencers are the only reasons why Blue Ice has a place on shelves and the reasons why the price of Blue Ice is inflated, much higher than the value of the spirit inside. For example, Blue Ice is retailing for at least 50% more than *Rain Vodka*, another American-made "handcrafted" spirit, advertised as organic (unlike Blue Ice), gluten-free, low-calorie vodka, distilled seven times (rather than just one time for Blue Ice).  Blue Ice is retailing for at least 65% more than *Smirnoff Vodka*, another American-made spirit produced in Illinois. The difference in price between Blue Ice and these two competing vodkas (at least $11 per bottle) can only be attributed to the unfair and misleading advertising methods employed by 21st Century and the "Influencers."



*Screenshots from abcfws.com (visited on Sep 12, 2023)*

34.     As a direct result of 21st Century's unfair and misleading advertising, consumers pay at least $11 more for a bottle of Blue Ice than they would otherwise pay.

35.     Out of the considerable profits obtained from this scheme, part of the money is paid to the "influencers" for their indispensable role.

### THE UNDISCLOSED ADVERTISING

36.     While the practice employed by 21st Century and the Influencers is very profitable, it is, nevertheless, illegal. Federal law, California law, Illinois law and Florida law all prohibit such commercial behavior.

37.     Plaintiffs saw Blue Ice vodka being consumed by Instagram influencers they followed and purchased Blue Ice products, which proved to be of an inferior quality compared with the expectations the Plaintiffs had and the premiums they paid for Blue Ice.

38.     But for the undisclosed advertising by the Influencers and the misleading advertising claims, Plaintiffs and the Class Members would not have purchased Blue Ice products.

39.     In deciding to purchase Blue Ice vodka products, Plaintiffs and Class Members followed what they believed to be the honest advice of the Influencers. None of the posts Plaintiffs saw mentioned, as required, that the Influencers are nothing more than paid advertisers for the brand.

40.     Sometimes Influencers will only pose next to a bottle of Blue Ice and tag Blue Ice in their posts, suggesting that this is their drink of choice when it comes to spirits.

41. Other times the Influencers will specifically indicate that Blue Ice is their favorite alcoholic beverage or recommend cocktails for their followers where they must use Blue Ice.

42. The Influencers often try to convince consumers to purchase Blue Ice, even directing the consumer to their closest grocery/liquor store or bar.

43. At times, the Influencers would make claims that the vodka is "fit-friendly," or it can "help you stay fit," almost in the same manner they would talk about a dietary supplement or a healthy vegetable. The Influencers infer that introducing this vodka in your diet will help you stay fit.

44. This undisclosed advertising has been prevalent on Instagram in the last few years. Defendants Alexa Collins and Leanna Barlett, for example, advertised Blue Ice products on Instagram more than ten times, without mentioning even once that they are paid (substantial amounts) to advertise Blue Ice and keep it quiet.

## NATURE OF THE ACTION

45. Plaintiffs, MARIO SAVA and ALIN POP, on behalf of themselves and all those similarly situated Class Members seek damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants 21st Century Spirits, LLC, Leanna Bartlett, Alexa Collins, Sarah Houchens, Metisha Schaefer, Nina Serebrova, Skyler Simpson, Kristen Strout, Kathy Picos, Jamie Villamor, and Anna Katharina Von Staehle a/k/a Anna Katharina, for unjust enrichment, fraud, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violations of the state laws, violation of Florida Deceptive and Unfair

Trade Practices Act, violation of Illinois Uniform Deceptive Trade Practices Act, violation of California Unfair Competition Law, violation of California False Advertising Law, violations of California's Consumers Legal Remedies Act.

## PARTIES

46.     Plaintiff, **Mario Sava a/k/a Marius T. Sava** ("Sava"), is a citizen of Illinois who resides in Cook County, IL and is otherwise *sui juris*.

47.     Plaintiff, **Alin Pop** ("Pop"), is a citizen of Florida who resides in Pinellas County, FL and is otherwise *sui juris*.

48.     Plaintiffs bring this action on their behalf and on behalf of all other persons similarly situated Class Members.

49.     Defendant **21st Century Spirits**, LLC ("21st Century"), is a company registered in California doing business in California, Florida, Illinois and around the country. 21st Century owns the vodka brand Blue Ice Vodka.  21st Century operates its entire marketing program, as well as its compliance program from California.

50.     Defendant **Leanna Bartlett** ("Bartlett") is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Bartlett is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* [https://instagram.com/leannabartlett/](https://instagram.com/leannabartlett/)

51.    Defendant **Alexa Collins** ("Collins"), is a citizen of Florida who resides in Broward County and is otherwise *sui juris*. Collins is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/alexacollins/

52.    Defendant **Sarah Houchens** ("Houchens") is a citizen of Florida who

resides in Hillsborough County and is otherwise *sui juris*. Houchens is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/sarahlhouchens/

53.     Defendant **Metisha Schaefer** ("Schaefer") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Schaefer is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/metisha/

54.     Defendant **Nina Serebrova** ("Serebrova"), is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Serebrova is transacting business in business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/ninaserebrova/

55.     Defendant **Skyler Simpson** ("Simpson"), is a citizen of Florida who resides in Hillsborough County and is otherwise *sui juris*. Simpson is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from https://www.instagram.com/skylersimpsonn/*

56.     Defendant **Kristen Strout** ("Strout"), is a citizen of Tennessee who resides in Davidson County and is otherwise *sui juris*. Strout is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from https://www.instagram.com/r1_vette_babe23/*

57.     Defendant **Katherine Picos** a/k/a **Kathy Picos** ("Picos"), is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Picos is transacting

business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/kathypicos/

58.     Defendant **Jamie Villamor**, ("Villamor") is a citizen of Nevada who resides in Clark County and is otherwise *sui juris*. Villamor is transacting business in California, Florida, Illinois, and the United States over the internet and actively soliciting business in California, Florida and Illinois.

59.     Defendant **Anna Katharina Von Staehle** ("Katarina") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Schaefer is transacting business in California, Florida and Illinois over the internet and actively soliciting business in California, Florida and Illinois.



*Screenshot from* https://www.instagram.com/akatharinav/

## JURISDICTION AND VENUE

60.    This is a national class action, including every purchaser of Blue Ice in the United States.

61.    Blue Ice is the "#1 selling potato vodka in the United States" and it is sold through major retailers like Walmart and Walgreens.

62.    Between 2020 and 2022, 21st Century sold at least 1.7 million bottles of Blue Ice.

63.    During the entire Class Period, dating back to September 1, 2018, 21st Century sold at least 2 million bottles of Blue Ice Vodka. Out of the 2 million bottles sold, at least 500,000 bottles were sold in Florida and Illinois, combined.

64.    21st Century sells Blue Ice at nearly 1400 retail stores in Florida and nearly 600 retail stores in Illinois.

65.    Upon information and belief, 21st Century sells Blue Ice at approximately 20,000 retail stores in the United States.

66.     The National Class is comprised of at least 1 million people who purchased Blue Ice during the Class Period.

67.      Each bottle of Blue Ice vodka sold by 21st Century results in damages of at least $11 per bottle.

68.     With at least 2 million bottles of Blue Ice vodka sold during the Class Period, the combined potential class-wide damages exceed $20 million dollars for the entire Class Period.

69.     This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

70.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiffs' related state law claims.

71.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). The Defendants are alleged to perpetrate their illegal conduct in Cook County, Illinois.

**STATEMENT OF FACTS**

72.     Social media emerged in the last years as a main source of information and communication[8] for billions of users.

73.     There were an estimated 159 million Instagram users in the United States

---

[8] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding*. [S.l.]: Springer Fachmedien Wiesbaden, p.2.

in 2022[9].

74.     In 2021 the platform engaged over 2 billion monthly users[10].

75.     In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown tremendously, adding 100 million users every few months[11]. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[12]

76.     Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published guidelines for influencers regarding proper advertising practices[13].

77.     Indeed, the rapid growth of social media platforms, including Instagram, allowed for lack of regulation and oversight. Some 80% of social media users said they were concerned about advertisers and businesses accessing the data they share on social

---

[9] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Oct 28, 2022).

[10] Rodriguez, S., 2021. *Instagram surpasses 2 billion monthly users while powering through a year of turmoil,* https://www.cnbc.com/2021/12/14/instagram-surpasses-2-billion-monthly-users.html (last visited Oct 28, 2022).

[11] Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited Oct 28, 2022).

[12] Schaeffer, K., 2022. *7 Facts About Americans and Instagram*. Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).

[13] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers*. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).

media platforms, and 64% said the government should do more to regulate advertisers[14].

78.     This is because some unscrupulous "influencers" are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to create the content displayed on their profile. More than often, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the obscene amounts they are demanding.

79.     Defendant Influencers, for example, advertise alcohol on their Instagram account without disclosing that they are paid to do so and without regard to the rules relating to advertising alcohol found in 27 CFR 5.233(a) and Instagram's own policies.[15]

 

*Screenshots from Instagram.com/alexacollins*



[14] Rai... ...ngs about soc... ...2018/03/27/a... about ... f (last visited ...
[15] "Us... ...y, sell, trade, ... is not ... ...file representing a real brick and mortar store, legitimate website, or brand."

*Screenshots from Instagram.com/leannabartlett/*

80. According to this business model, a number of carefully selected influencers will pretend to consume Blue Ice and present this fact to their followers, while being properly compensated, without disclosing any material relationship with 21st Century.

81. In order to increase the price of Blue Ice, 21st Century makes misleading claims that Blue Ice helps in weight management, that Blue Ice is handmade and that it tastes better than other vodkas; the Influencers amplify this message by repeating these claims to millions of their followers.

82. The marketing and sales strategy and the misleading claims above were developed by 21st Century in California and printed or otherwise distributed at the direction of its staff located in California. Some of the statements are contained on the BlueIceVodka.com website, also maintained from California. Also, 21st Century warrants, and oversees regulatory compliance and product distribution from California.

83. Plaintiffs and Class Members purchase such products at inflated prices, exclusively because of the way the Blue Ice products are advertised and the misleading content of the advertisement.

## THE INFLUENCERS

84. Despite being compensated for pretending to drink and promoting Blue Ice,

none of the Influencers use the "paid partnership" tag suggested by the FTC or other disclosures like "#ad," or "#sponsored." Therefore, they fail to be compliant with the FTC Rules found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.[16] See also *Exhibit* A.

85.     In fact, many of the Influencers are familiar with the FTC guidelines and properly display the required disclosures when the brands are not willing to pay for them to disguise the advertising.

86.     Plaintiffs are "following" all the Influencers on Instagram. Plaintiffs' decision to purchase Blue Ice and pay a premium for it was determined by the Influencers they followed, specifically by the Defendants in this case and the claims they made about Blue Ice.

87.     Other influencers that promoted Blue Ice vodka without disclosing material connections with the brand, and therefore violating the law are: Hope Beel[17], Krystle Lina[18], Elin Olash[19], Briana Smith[20], Amanda Taylor[21], Tiffany Vy[22], Morgan Ketzner[23] and Ali Lynn[24]. These influencers contributed to disseminating the misrepresentations

---

[16] Federal Trade Commission, *supra* note 7.

[17] See https://www.instagram.com/p/CDj6BTuJ-Gl/ Aug. 6, 2020 (last visited Sept. 6, 2023).

[18] See https://www.instagram.com/p/CIEtL1xpQiD/ Nov. 27, 2020 (last visited Sept. 6, 2023).

[19] https://www.instagram.com/p/CjJG6mKpr5P/ Sep. 30, 2022 (last visited Sept. 6, 2023).

[20] Briana Smith's Feb 7, 2021, and Sep.6, 2021 posts are currently deleted from her feed.

[21] Amanda Taylor's Feb. 14, 2021, and Aug. 27, 2021, posts are currently deleted from her feed.

[22] See https://www.instagram.com/p/CUxcnESF6Ue/ Oct. 8, 2021 (last visited Sept. 6, 2023).

[23] Morgan Ketzner's Apr. 24, 2020, post is currently deleted from her feed.

[24] See https://www.instagram.com/p/CZ108IqFd2v/ Oct. 28, 2021 (last visited Sept. 6, 2023).

about Blue Ice while deceivingly promoting the product.

88.     Plaintiffs would not have purchased the products if they knew that the Influencers were paid to pretend that they like Blue Ice and that the Influencers' claims were unfair and misleading.

## THE ADVERTISING

89.     Facebook, the parent company of Instagram offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Facebook. Both the *post* and the *ad* are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

90.     The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the *grid* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

91.     Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership" tag is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

92.     Every time an influencer advertises a product, such advertisement appears in the Instagram *feed* of everybody following the influencer.

93.     The FTC has repeatedly made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act. The 2019 material is attached as *Exhibit A*.

94.     As recognized by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious double whammy. They harm consumers with misleading tactics that subvert their choices at check-out. And they take business away from honest competitors that work hard to comply with the law."[25]

95.     By advertising Blue Ice products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in Florida, Illinois and California.

96.     By instructing and allowing the influencers to advertise its products without making the proper disclosures, 21st Century is in violation of of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in Florida, Illinois and California.

## THE PLAINTIFFS

97.     Given the fact that Blue Ice was consumed by many of the Influencers they followed, the Plaintiffs decided to purchase Blue Ice.

---

[25] Ritchie, J.N.& A. *et al.* (2023) *FTC and endorsements: Final revised guides, a proposed new rule, and an updated staff publication*, *FTC.gov*. Available at: https://www.ftc.gov/business-guidance/blog/2023/06/ftc-endorsements-final-revised-guides-proposed-new-rule-updated-staff-publication (Accessed: 07 September 2023).

98.     Mario Sava, purchased Blue Ice (Blue Ice Huckleberry Flavored Vodka) to celebrate his birthday, in October 2022, from a Liquor Store in Chicago, IL.

99.     Sava realized shortly after opening the spirit that is not what he expected to be and he believes it to be of inferior quality. He also realized that Blue Ice is nothing else than low quality flavored alcohol and upon research concluded that consuming Blue Ice does not have health benefits.

100.    The Blue Ice product Sava purchased is industrially manufactured so he didn't purchase a small-batch, high-value spirit, but rather a generic spirit with an overinflated price.

101.    Alin Pop purchased Blue Ice (Blue Ice Potato Vodka) online on August 23, 2022, and, upon receiving the delivery, realized that the spirit is not worth the high price he paid.

102.    While he relied on the statements made by the Influencers and the statements on 21st Century's advertising, Pop believed he bought a high-quality, handcrafted vodka made by human hands in the United States.

103.    After consuming Blue Ice at home, Pop realized that the Blue Ice product he purchased is of an inferior, generic quality, and the vodka is not special.  He paid a premium price for a substandard vodka product. After further research, Pop discovered that Blue Ice was not manufactured in a pot still, not produced manually, did not have any health benefits, and it was not different in any way from a cheap, run-of-the-mill alcohol.

### CLASS ALLEGATIONS

104.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint

as if fully re-written herein.

105.    Plaintiffs assert the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

106.    Plaintiffs are filing this lawsuit on behalf of all persons that purchased Blue Ice relying on misleading marketing practices and Influencers from September 1, 2018, to present ("Class Period").

107.    Plaintiff Pop seeks to represent two classes composed of and defined as follows:

        a.    <u>Nationwide Class</u>: All consumers that purchased Blue Ice Vodka in the United States.

        b.    <u>Florida Subclass</u>: All Florida residents that that purchased Blue Ice Vodka.

108.    Plaintiff Sava seeks to represent two classes composed of and defined as follows:

        a.    <u>Nationwide Class</u>: All consumers that purchased Blue Ice Vodka in the United States (same as above).

        b.    <u>Illinois Subclass</u>: All Illinois residents that that purchased Blue Ice Vodka.

109.    Collectively the members of the Nationwide Class and all Subclasses shall be referred to as "Class Members".

110.    The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers,

directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

111.   Plaintiffs reserve the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

112.   This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

113.   <u>Numerosity</u>: At least one million consumers have been injured by Defendants' deceptive marketing practices, including Plaintiffs.  At least one million consumers have purchased Blue Ice vodka products and paid a premium for it in reliance on the Defendants' representations.

114.   Each of the classes represented by Sava and Pop have at least one million members and the joinder of all members is impracticable.

115.   <u>Typicality</u>: Plaintiffs' story and their claims are typical for the class and, as the named Plaintiffs, they are aware of other persons in the same situation. Plaintiffs and the members of each class sustained damages arising out of Defendants' illegal course of business.

116.   <u>Commonality</u>: Since the whole class purchased Blue Ice vodka products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

117.  <u>Adequacy</u>: Sava and Pop will fairly and adequately protect the interests of each class they represent.

118.  <u>Superiority</u>: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## VIOLATIONS OF 15 U.S.C. § 45(a)

119.  By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

120.  By failing to mandate and enforce disclosure of material connections, 21st Century is in violation of 15 U.S.C. § 45(a).

121.  The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this Complaint.

## COUNT I: VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (On behalf of Plaintiff Pop and Florida Subclass)

122.  Plaintiffs incorporate by reference all previous paragraphs of this First Amended Complaint as if fully rewritten herein. As set forth above, Pop asserts this count on his own behalf and on behalf of all other similarly situated persons, members of the Florida Subclass, pursuant to Fed. R. Civ. P. 23.

123.  21st Century provided Instagram users with the means and instrumentalities for the commission of deceptive acts and practices and engaged in a deceptive act or unfair practice, by engaging in misrepresentation, and statutory violations.

124.    For a fee, the Influencers, with the means and instrumentalities for the commission of deceptive acts and practices, engaged in deceptive acts or unfair practices, by engaging in misrepresentation and statutory violations.

125.    As discussed supra, by failing to disclose material connections, Defendants violated 15 U.S.C. § 45(a) ("FTC Act") which represents a *per se* violation of "FDUTPA".

126.    Defendants engaged in practices aimed at misleading consumers, as per 27 CFR §4.39 (a)(1)[26] which represents the official FTC interpretation of the FTC Act.

127.    The FTC clarifies its interpretation of the FTC Act is as follows: "if there's a connection between an endorser and the marketer that a significant minority of consumers wouldn't expect and it would affect how they evaluate the endorsement, that connection should be disclosed clearly and conspicuously.[27]"

128.    FDUTPA recognizes that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and [...] relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1)." § 501.204 Fla. Stat.

129.    As interpreted by the FTC, failure to disclose material connections represents a violation of FDUTPA.

130.    Such practices as the ones employed by the Defendants are illegal,

---

[26] "(a) *Statements on labels.* Containers of wine, or any label on such containers, or any individual covering, carton, or other wrapper of such container, or any written, printed, graphic, or other matter accompanying such container to the consumer shall not contain:
(1) Any statement that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression." 27 CFR §4.39

[27] See https://www.ftc.gov/business-guidance/resources/ftcs-endorsement-guides-what-people-are-asking

unethical, unscrupulous, and likely to mislead any consumer acting reasonably in the circumstances, to the class members' detriment.

131.    Defendants' engagement in these unfair practices caused the Plaintiffs to suffer a loss.

132.    The value of the loss, calculated as the price paid for a bottle of Blue Ice product less the value of the vodka is in excess of $5,000,000.00 for the entire Florida Subclass.

133.    Plaintiffs also request injunctive relief. Absent injunctive relief by this Court, the Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the class members.

134.    In the alternative, pursuant to § 501.211(1), Fla. Stat., as the Plaintiffs are aggrieved by the violation of FDUTPA, they are entitled to obtain a declaratory judgment that the Defendants' practice violates the law and to enjoin the defendants as they have violated, are violating, and it is likely to violate the Act in the future.

135.    Plaintiffs also request attorney fees pursuant to § 501.2105, Fla. Stat.

## COUNT II: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT
### (On behalf of Plaintiff Sava and Illinois Subclass)

136.    Plaintiff incorporates by reference paragraphs 1-121 of this First Amended Complaint as if fully re-written herein. Sava asserts this count on his own behalf and on behalf of the Illinois Subclass, as defined above, pursuant to Fed. R. Civ. P. 23.

137.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., provides protection to consumers by mandating fair

32

competition in commercial markets for goods and services.

138.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

139.     The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

140.     Defendant is a "person" as defined by section 505/1(c) of the ICFA.

141.     Plaintiff and each member of the Class are "consumers" as defined by section 505/1(e) of the ICFA.

142.     Blue Ice constitutes "merchandise" under the meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

143.     Defendants' misrepresentations and omissions regarding the true origin of Blue Ice, the benefits of Blue Ice, the taste of Blue Ice, and the endorsements obtained by Blue Ice are deceptive and unfair acts and practices prohibited by Chapter 2 of ICFA.

144.     Defendants are also in violation of Section 5(a) of 15 U.S.C. § 45(a), which should be considered as a violation of 815 ILL. COMP. STAT. ANN. 505/2

145.     Defendants violated the ICFA when it misrepresented facts regarding Blue Ice. Accordingly, the misrepresentations were the central reason for consumers chose to purchase Blue Ice over other alternatives, and to pay a premium for it.

146.     Plaintiff and Class Members relied upon Defendants' misrepresentations

and omissions when they purchased bottles of Blue Ice.

147.    If Plaintiff and Class Members had been aware of the true characteristics of Blue Ice, or the fact that the Influencers are not honest influencers but that they are paid to promote Blue Ice, they would not have purchased it.

148.    Defendants also violated section 510/2(a)(5) of the DTPA by representing that Blue Ice has characteristics and ingredients that it does not have and offers health benefits.

149.    Plaintiff and Class Members saw Defendants' marketing and online advertising materials prior to purchasing Blue Ice, and they reasonably relied on Defendant's misrepresentations and omissions when they purchased Blue Ice.

150.    Defendants' misrepresentations and omissions regarding Blue Ice were acts likely to mislead the Plaintiff and Class Members acting reasonably under the circumstances, and thus constitute unfair and deceptive trade practices in violation of ICFA.

151.    As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and the Class Members have suffered harm in the form of monies paid in exchange for Blue Ice because they paid more than what they would have otherwise paid had they know the true nature of the product.

152.    The value of the loss, calculated as the price paid for a bottle of Blue Ice product less the value of the vodka is in excess of $5,000,000 for the entire Illinois Subclass.

153.    Defendants' practices set forth herein offend public policy, were and are

immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

## COUNT III: VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (On behalf of Plaintiff Sava and Illinois Subclass)

154.    Plaintiff incorporates by reference paragraphs 1-121 of this First Amended Complaint as if fully re-written herein. Sava asserts this count on his own behalf and on behalf of the Illinois Subclass, as defined above.

155.    At all times relevant hereto, there was in full force and effect the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/1, et seq. ("DTPA").

156.    Furthermore, Defendants represent that Blue Ice has characteristics and ingredients that it does not have.

157.    Defendants advertises Blue Ice with the intent not to sell it as advertised by using the false and misleading advertising and marketing detailed above.

158.    Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead the named Plaintiffs and the Class.

159.    Accordingly, Defendants have violated the DTPA.

## COUNT IV: VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT. CAL. CIV. CODE. §§ 1750, *ET SEQ.*
### (On behalf of Plaintiffs Sava and Pop and the Nationwide Class)

160.    Plaintiffs incorporate by reference paragraphs 1-121 of this First Amended Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class, as defined above.

161.    The conduct that forms the basis of this action arose in California, the state

in which 21st Century has its headquarters and principal place of operations.

162. Defendants developed, designed, and implemented policies and procedures at issue in this case in California.

163. Defendants are each a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

164. Defendants provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

165. Plaintiffs and Class Members of the Nationwide Class are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770, and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

166. As set forth herein, Defendants' acts and practices, undertaken in transactions violate §1770 of the Consumers Legal Remedies Act in that:

a. Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services.

b. Defendants misrepresented the affiliation, connection, or association with, or certification by another.

c. Defendants represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

d. Defendants advertised goods or services with intent not to sell them as advertised;

167.    Pursuant to the provision of Cal. Civ. Code §1780, Plaintiffs seek an order enjoining Defendants from the unlawful practices described herein, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

### COUNT V: VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE § 17200. *ET. SEQ* (On behalf of Plaintiffs Sava and Pop and the Nationwide Class)

168.    Plaintiffs incorporate by reference paragraphs 1-121 of this First Amended Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class, as defined above, and pursuant to Rule 23.

169.    The conduct that forms the basis of this action arose in California, the state in which 21st Century has its headquarters and principal place of operations. Defendants developed, designed, and implemented policies and procedures at issue in this case in California.

### Unfair And Fraudulent Competition

170.    Defendants has engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200, et seq., because Defendants' conduct is unlawful, unfair, and/or fraudulent, as herein alleged.

171.    Plaintiffs, the class members, and Defendants are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

172.    Defendants promoted and advertised Blue Ice without properly disclosing their financial interest and such acts and practices constitute deceptive acts or practices in violation of Section 5(a) of 15 U.S.C. § 45(a).

173.    A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a per se violation of the California Unfair Competition Law ("UCL").

## Unlawful Competition

174.    The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies.  Plaintiffs hereby incorporate by reference all prior causes of action into this cause of action.

## Violations of Advertising Law

175.    By making statements that are not true and statements that are misleading, Defendants are in violation of California False Advertising Law, Cal. Civ. Code. §§ 17500, *ET SEQ*.

176.    "'[A]ny violation of the false advertising law . . . necessarily violates the UCL.'"  (*Kasky, supra*, 27 Cal.4th at p. 950.)  Section 17500 "proscribe[s] '"not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."'  [Citation.]"  (*Colgan v. Leatherman Tool Group, Inc*. (2006) 135 Cal.App.4th 663, 679.)

177.    Plaintiffs and Nationwide Class Members request that this Court enter such  orders or judgments as may be necessary to enjoin Defendant from continuing its

unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and Class Members any monies Defendant acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

178.    Plaintiffs and Class Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### COUNT VI: UNJUST ENRICHMENT
### (On behalf of Plaintiffs Pop and Sava, the Illinois and Florida Subclasses)

179.    Plaintiffs incorporate by reference paragraphs 1-121 of this First Amended Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

180.    By paying the high prices demanded by 21st Century, Plaintiffs and Class Members conferred a direct benefit to all the Defendants.

181.    Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behaviors. If the Defendants do not compensate the Plaintiffs, they would be unjustly enriched as a result of their unlawful act or practices.

182.    It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, reap unjust enrichment.

183.    Since the Defendants unjustly enriched themselves at the expense of the Instagram users, the Plaintiffs request the disgorgement of these ill-gotten money.

184.    Due to Defendants' conduct, Plaintiffs and the Class Members are entitled

to damages according to proof.

## COUNT VII: NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiffs Sava and Pop and the Nationwide Class)

185.    Plaintiffs incorporate by reference all paragraphs 1-121 of this First Amended Complaint as if fully rewritten herein. As set forth above, the Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

186.    Defendants had a duty to be truthful in their commercial speech. In convincing the Plaintiffs to purchase Blue Ice products, the Defendants made representations that they knew to be false, or negligently failed to examine the veracity of the affirmations.

187.    As a result of Defendants' negligent misrepresentations, Plaintiffs and the Nationwide Class Members suffered injury.

## COUNT VIII: BREACH OF EXPRESS WARRANTY
### (On behalf of Plaintiff Pop, the Nationwide Class and the Florida Subclass)

188.    Plaintiff incorporate by reference paragraphs 1-120 of this First Amended Complaint as if fully re-written herein. Plaintiff asserts this count on his own behalf and on behalf of the Nationwide Class and Florida Subclass, as defined above.

189.    Defendant 21st Century provided and express warranty regarding the Blue Ice vodka. It described it to have a specific taste, to be handcrafted and to promote a healthy lifestyle. Since the description of the goods was made part of the basis of the bargain an express warranty was created that that the goods shall conform to the description.

190.    Plaintiff and Class Members reasonably relied upon said warranties and

purchased Blue Ice vodka products which failed to conform to the Defendant's description.

191.     As a result of Defendants' breach of express warranties, the Plaintiff and Class Members suffered damages.

192.     Plaintiff, Alin Pop, provided notice to 21st Century by mailing a letter to 21st Century's Registered Agent in Florida, indicating the basis of his claims, prior to initiating this action.

## DEMAND FOR JURY TRIAL

193.     Plaintiffs and those similarly situated Class Members demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Mario Sava and Alin Pop, respectfully request that judgment be entered in their favor and in favor of the Class Members as follows:

a.     Certifying and maintaining this action as a class action, with the named Plaintiffs as designated class representatives and with their counsel appointed as class counsel;

b.     Declaring the Defendants in violation of each of the counts set forth above;

c.     Awarding the Plaintiffs and those similarly situated compensatory, punitive, and treble damages in excess of $5,000,000;

d.     Awarding the Plaintiffs and those similarly situated liquidated damages;

e.     Order the disgorgement of ill-gotten monies;

f.     Awarding each of the named Plaintiffs a service award;

g.     Awarding pre-judgment, post-judgment, and statutory interest;

h.      Awarding attorneys' fees and costs;

i.      Awarding such other and further relief as the Court may deem just and proper.


Dated: October 2, 2023                        Respectfully Submitted,

                                              s/Keith Gibson
                                              Keith L. Gibson, Esq.
                                              KEITH GIBSON LAW P.C.
                                              IL Bar No.: 6237159
                                              490 Pennsylvania Avenue, Suite 1
                                              Glen Ellyn IL 60137
                                              Telephone: (630) 677-6745
                                              Email: Keith@KeithGibsonLaw.com

                                              Bogdan, Enica, Esq.
                                              KEITH GIBSON LAW P.C.
                                              FL Bar No.: 101934
                                              66 West Flagler St., Ste. 937
                                              Miami, FL 33130
                                              Telephone: (305) 306-4989
                                              Email: Bogdan@KeithGibsonLaw.com


                                              *Attorneys for the Plaintiffs and the Putative
                                              Class Members*