# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARIO SAVA, et al., | ) | Case No.: 1:22-cv-06083 |
| | ) | |
| Plaintiffs, | ) | Honorable Joan H. Lefkow |
| | ) | |
| v. | ) | |
| | ) | |
| 21st CENTURY SPIRITS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' AMENDED MOTION
TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES_____ d

I. INTRODUCTORY STATEMENT_____ 1

II. PROCEDURAL HISTORY_____ 3

III. STATEMENT OF FACTS _____ 3

IV. LEGAL STANDARD _____ 6

V. ARGUMENT_____ 7

  A. Plaintiffs' Complaint Satisfies the Enhanced Pleading Requirements of Rule 9. 7

  B. Plaintiffs Have Standing to Bring Their Claim _____ 9

  C. Plaintiffs Properly Allege False and Misleading Statements_____ 10

    i. The number of calories _____ 11

    ii. The amount of human intervention _____ 12

    iii. Health benefits of drinking Blue Ice_____ 13

    iv. The taste of Blue Ice _____ 14

    v. Failure to disclose material connections_____ 15

  D. The "Little FTC Acts" Adopt the FTC Interpretation of the Law_____ 16

    i. Causation Is Established by Linking the Misrepresentations to the Loss___ 17

  E. The FDUTPA Claim Is Properly Alleged _____ 17

    i. Plaintiff Has Properly Alleged a Deceptive Act_____ 18

    ii. Plaintiff Sufficiently Pled Causation Under FDUTPA_____ 20

    iii. Plaintiff Suffered Actual Damages_____ 21

    iv. The Safe Harbor Provision of Fla. Stat. §501.212(1) Does not Apply_____ 22

v. Rule 9(b) Does not Apply to FDUTPA Claims_____ 22

G. The ICFA Claim is Properly Alleged _____ 24

  i. Plaintiff Properly Alleges Deceptive or Unfair Conduct_____ 25

ii. Plaintiff Sustained Damages Under the ICFA _____ 28

iii. Proximate Causation_____ 29

iv. Plaintiff's Transaction Occurred in the Course of Trade or Commerce in

  Illinois_____ 30

H. Plaintiffs' CLRA Claim Is Properly Alleged _____ 31

I. Plaintiffs' UCL Claim Is Properly Alleged _____ 32

  i. Unlawful Conduct_____ 32

J. The Unjust Enrichment Claim Is Properly Alleged _____ 33

K. Negligent Misrepresentation Is Properly Alleged_____ 33

L. The Breach of Express Warranty Claim Is Properly Alleged _____ 35

M. Alternatively, Leave to Amend Should Be Granted_____ 37

VI. CONCLUSION_____ 37

CERTIFICATE OF SERVICE_____ i

c

**TABLE OF AUTHORITIES**

**Cases**                                                                                     Page

*Alan Wood Steel Co. v. Capital Equip. Enter., Inc.*, 349 N.E.2d 627, 633
(Ill.App.Ct.1976)_____     36

*Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 931 (N.D. Ill. 2015)     9, 13, 29

*AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)_____     26

*Aquino v. C.R. Bard, Inc.,* 413 F. Supp. 3d 770, 787 (N.D. Ill. 2019)_____     36

*Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009)_____     6

*Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996)____     30

*Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill. 2d 100, 199, 835 N.E.2d 801, 861
(2005)_____     29

*Azimi v. Ford Motor Co.*, 977 F.Supp. 847, 852 (N.D. Ill, 1996)_____     30

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Com'n*, 377 F.3d 682, 687 (7th
Cir. 2004)_____     37

*Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 834 (7th Cir. 2014)_____     28

*Begualg Inv. Management Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153, 2011 WL
4434891 (S.D. Fla. Sep. 23, 2011)_____     23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d
929 (2007)_____     6

*Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020)_____     16

*Bonahoom v. Staples, Inc.,* 20-CV-1942, 2021 WL 1020986, at *6 (N.D. Ill. Mar.
17, 2021)_____     9

*Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.,* 532 F. Supp. 2d 1350, 1364
(M.D. Fla. 2007)_____     19

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir.2007)_____     7

Buechin v. Ogden Chrysler-Plymouth, Inc., 159 Ill. App. 3d 237, 250 (2d Dist.
1987)_____     25

*Camasta v. Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 737 (7th Cir.2014)_____ 7, 25

*Carriuolo v. GM Co*., 823 F.3d 977, 983 (11th Cir. 2016)_____ 17

*Christopher Advert. Grp., Inc. v. R & B Holding Co. Inc.,* 883 So. 2d 867, 871 (Fla. 3d DCA 2004)_____ 21

*City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)_____ 17

*Collins v. DaimlerChrysler Corp*., 894 So. 2d 988, 991 (Fla. 5th DCA 2004)_____ 22

*Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 593 (1996)_____ 26

*Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)_____ 24

*Dieffenbach v. Barnes & Noble, Inc*., 887 F.3d 826, 830 (7th Cir. 2018)_____ 10

*DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)_____ 7

*Dorestin v. Hollywood Imports, Inc*., 45 So. 3d 819, 831 (Fla. Dist. Ct. App. 2010)_ 24

*Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 808 (2011)_____ 17

*F.T.C. v. Colgate-Palmolive Co*., 380 U.S. 374, 385 (1965)_____ 19

*FTC v. Student Aid Center, Inc.*, 281 F. Supp. 3d 1324, 1334 (S.D. Fla. 2016)_____ 23

Fed. Trade Comm'n v. Lifewatch Inc., 176 F. Supp. 3d 757, 779 (N.D. Ill. 2016)___ 27

Fed. Trade Comm'n v. Simple Health Plans LLC, 379 F. Supp. 3d 1346, 1358 (S.D. Fla. 2019), aff'd, 801 Fed. Appx. 685 (11th Cir. 2020)_____ 28

*Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005)__ 23

*Hoffman v. Fifth Generation, Inc*., Case No. 14-cv-2569, 2015 WL 5440330 (S.D. Cal. Mar. 18, 2015)_____ _____ 11, 31

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.,* 843 N.E.2d 327, 332  (Ill. 2006)_____ 33

*Fed. Trade Comm'n v. Alcoholism Cure Corp.,* 3:10-CV-266-J-34JBT, 2012 WL 12903173, at *1 (M.D. Fla. July 3, 2012)_____ 19

e

*Fed. Trade Comm'n v. Simple Health Plans LLC,* 379 F. Supp. 3d 1346, 1358 (S.D. Fla. 2019), *aff'd,* 801 Fed. Appx. 685 (11th Cir. 2020)_____ 19

*Fed. Trade Comm'n v. Lifewatch Inc.,* 176 F. Supp. 3d 757, 779 (N.D. Ill. 2016)___ 19

*Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005)__ 23

*G.M. Brod & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1538 (11th Cir. 1985)__ 21

*Galstaldi v. Sunvest Comtys. USA, LLC,* 637 F.Supp.2d 1045, 1056 (S.D.Fla.2009)_ 21

*Geske v. PNY Techs., Inc.,* 503 F. Supp. 3d 687, 709 (N.D. Ill. 2020)_____ 29

*Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990)_____ 6

*Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 992 (7th Cir.1991)_____ 7

*Greycas, Inc. v. Proud*, 826 F.2d 1560, 1565 (7th Cir. 1987)_____ 33

*Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1354-55 (S.D. Fla. 2012)_____ 23

*Harris v. Nordyne, LLC*, 14-cv-21884, 2014 WL 12516076 (S.D. Fla. Nov. 13, 2014)_____ 23

*Hoffman v. Nationwide Mut. Ins. Co.,* 10 C 3841, 2011 U.S. Dist. LEXIS 81575, 2011 WL 3158708, at *3 (N.D.Ill. July 26, 2011)_____ 7, 31

In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig., 348 F. Supp. 3d 797, 811 (N.D. Ill. 2018), rev'd in part, appeal dismissed in part sub nom. Bell v. Publix Super Markets, Inc., 982 F.3d 468 (7th Cir. 2020)_____ 20

*In re Illinois Bell Switching Station Litigation*, 641 N.E.2d 440 (1994)_____ 34

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig*., 497 F. Supp. 3d 552_____ 32

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig*., 05 C 4742, 2012 WL 1015806, at *7 (N.D. Ill. Mar. 22, 2012)_____ 17, 18

*Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010)____ 23

*Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 951, 45 P.3d 243, 250 (2002)_____ 32

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 246 P.3d 877 (2011)_____ 11, 31

*Llado-Carreno v. Guidant Corp.*, 09-cv-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb 22, 2011)_____ 23

*Lachmund v. ADM Investor Servs., Inc.,* 191 F.3d 777, 782-83 (7th Cir.1999)_____ 7

*Levey v. Concesionaria Vuela Compania de Aviacion,* S.A.P.I. de C.V., 529 F. Supp. 3d 856 (N.D. Ill. 2021)_____ 10

*Locke v. Warner Bros.,* 57 Cal. App. 4th 354, 364, 66 Cal. Rptr. 2d 921, 926 (1997) 10

*Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 861-62 (N.D. Cal. 2022)_____ 31

*Marrache v. Bacardi U.S.A., Inc.,* 17 F.4th 1084, 1097 (11th Cir. 2021)_____ 19

*Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1004 (N.D. Ill. 2016)_ 27

*Moorman Mfg. Co. v. Nat'l Tank Co*., 911 Ill.2d 69, 86-87 (1982)_____ 34

*Morgan v. AT&T Wireless Services, Inc*., 99 Cal. Rptr. 3d 768, 785 (Ct. App. 2009) 32

*Mormon Mfg. Co. v. National Tank Co*., 435 N.E.2d 443, 452-53 (1982)_____ 32

*Muir v. Playtex Products, LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013)_____ 29

*Mullins v. Premier Nutrition Corp.,* 178 F. Supp. 3d 867, 894 (N.D. Cal. 2016)____ 32

*O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 972 (N.D. Ill. 2021)_____ 17, 22

*O'Shea v. Epson Am., Inc.,* CV 09 -8063 PSG CWX, 2011 WL 3299936, at *9 (C.D. Cal. July 29, 2011), *aff'd in part,* 566 Fed. Appx. 605 (9th Cir. 2014)_____ 31

*Office of A.G., Dep't of Legal Affairs v. Wyndham Int'l, Inc.,* 869 So. 2d 592, 598 (Fla. 1st DCA 2004)_____ 24

*Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 776 N.E.2d 151 (2002) _____ 26

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 446 (7th Cir. 2011)_____ 8

*Pop v. Lulifama.com, LLC, Case No. 8:22-cv-2698, 2023 WL 4661977 (M.D. Fla. July 20, 2023)*_____ *passim*

*Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012)_____ 23

*Pressalite Corp. v. Matsushita Elec. Corp. of Am.,* 02 C 7086, 2003 WL 1811530, at *4 (N.D. Ill. Apr. 4, 2003)_____ 36

*Price v. Philip Morris, Inc.,* 219 Ill.2d 182, 269, 302 Ill. Dec. 1, 848 N.E.2d 1, 52 (2005)_____ 30

*Pye v. Fifth Generation, Inc.,* Case No. 4:14-cv-493,2015 WL 5634600, *1 (N.D. Fla. 2015)_____ 12, 13

*Ramson v. Layne*, 668 F. Supp. 1162, 1165 (N.D. Ill. 1987)_____ 16

*Receivership Management, Inc. v. Locke Lord LLP*, No. 18-cv-8158, 2022 WL 4551889 at *14 (N.D. Ill., Sept. 29, 2022)_____ 33

*Robinson v. Toyota Motor Credit Corp.,* 775 N.E. 2d 951, 961 (2002)_____ 27

*Rudy v. Family Dollar Stores, Inc*., 583 F. Supp. 3d 1149, 1162 (N.D. Ill. 2022)____ 37

*Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)_____ 7

*Siegel v. Shell Oil Co.,* 612 F.3d 932, 934-35 (7th Cir. 2010)_____ 24, 26

*Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 WL 3232274, at *11-12 (S.D. Fla. 2007)_____ 20

*Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563 (1931)__ 21

*Stuve v. Kraft Heinz Co.,* No. 21-CV-1845, 2023 WL 184235, at *12 (N.D. Ill. Jan. 12, 2023)_____ 36

*Suchanek v. Sturm Foods, Inc.,* 11-CV-565-NJR-RJD, 2018 WL 6617106 (S.D. Ill. July 3, 2018)_____ 16

*Taviere v. Precision Motor Cars, Inc*., No. 8:09-cv-467-T-TBM, 2010 U.S. Dist. LEXIS 12493, 2010 WL 557347, at *4 (M.D. Fla. Feb. 12, 2010)_____ 17

*Toback v. GNC Holdings, Inc.*, 13-cv-80526, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013)_____ 23

*Totz v. Continental DuPage Acura*, 23 Ill.App.3d 891, 900 (2nd Dist. 1992)_____ 22

*Toulon v. Cont'l Cas. Co*., 877 F.3d 725, 741 (7th Cir. 2017)_____ 33

*Tymar Distribution LLC v. Mitchell Group USA, LLC*, 558 F. Supp. 3d 1275, 1283 (S.D. Fla. 2021)_____ 16

h

*Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992)_____ 7

*Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)_____ 24, 29

*Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1184–85 (S.D. Fla. 2019)_____ 23

*Wigood v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 568-69 (7th Cir. 2012)_____ 34

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 670 (7th Cir. 2008)_____ 27

*Woodard v. Victory Records, Inc.,* 11-CV-7594, 2013 WL 4659562, at \*5 (N.D. Ill. Aug. 30, 2013)_____ 16

## Statutes

15 U.S.C.A. § 45(a)_____ 16

Fla. Stat. § 501.203(3)(c)_____ 19

Fla. Stat. Ann. § 501.204_____ 17

Illinois Consumer Fraud Act§ 815 ILCS 505/1 *et seq*_____ 16, 17

California Business and Professions Code §§ 17200 et seq._____ *passim*

16 C.F.R. §255.5 _____ 15

27 C.F.R. Subchapter A, Part 5_____ 22

## Rules

Fed. R. Civ. P. 8(a)(2)_____ 5

Fed. R. Civ. P. 9(b)_____ *passim*

Fed. R. Civ. P. 15(a)_____ 34

## Other authorities

Restatement (Second) of Torts § 552_____ 33, 34

TTB-Ruling 2004-01_____ 22

Jack E. Karns, *State Regulation of Deceptive Trade Practices Under "Little FTC Act": Should Federal Standards Control?,* 94 DICK. L. REV. 373, 378-79 n.24 (Winter 1990)_____ 16

Plaintiffs, MARIO SAVA and ALIN POP, by and through their undersigned attorneys, hereby submit this Response in Opposition to Defendants' Motions to Dismiss Class Action Complaint [ECF#71][1], and in support thereof, state as follows:

## I. INTRODUCTORY STATEMENT

While more than 140,000 people die from excessive alcohol use in the U.S. each year[2], defendants advertise alcohol on Instagram, to an audience composed of over 25% users under 21 years old[3]. They advertise high proof spirits while concealing the true relationship between the social media influencers recommending and pretending to enjoy vodka cocktails with "less calories than an apple" and the "fit-friendly" vodka maker.

While the _only_ goal of Defendant 21st Century is to produce "the best tasting vodka, because taste is everything," Defendants are claiming in their Motion that 21st Century failed, and they keep failing for years to achieve their "sole goal." Indeed, the motion asserts that, as a matter of law, stating that their _only_ goal is to achieve a result (which is "_everything_" for them) is different, in the eyes of a reasonable consumer, from achieving that result. 21st Century does not claim to have a research facility. In fact, their vodka is made as a private label by a major distillery in Idaho and no reasonable consumer would read the statement different than the Plaintiffs read it, and the way was designed to be read: _Blue Ice vodka tastes better, because taste is everything._

While defending their statement that vodka can be healthy and help you stay fit, Defendants' Motion also, interestingly, reasserts the statement that "Blue Ice has fewer calories than an apple_"_ (Mot. p.15), presenting it as one of the reasons why the First Amended Complaint

---

[1] Defendants' Motion exceeds the page limits allowed by the Court and also the line spacing requirements set forth in NDIL Local Rule 5.2.

[2] https://www.cdc.gov/alcohol/features/excessive-alcohol-deaths.html (last visited Feb.24.2023).

[3] The number is obtained based on the data available at https://blog.hootsuite.com/instagram-demographics/ (last visited Feb.24.2023) by considering a uniform distribution of ages in the 18-24 years old demographic group.

should be dismissed. Also, Defendants' Motion falsely states that the Instagram Posts were and are accurate. (Mot. p.13). In fact, vodka has **four times** more calories than an apple. According to USDA, there are 15 calories in 1oz apple (17.7 calories in a single serving of apple)[4] and 64 calories in 1oz of vodka (96 calories a single serving of vodka[5]). No matter how the numbers may be characterized, the claim that vodka has less calories when compared to apple just doesn't make sense. Even if the Blue Ice bottle collar is to be believed that Blue Ice has only 52 calories per ounce (which is demonstrably false), an apple always wins this argument.

Also, Defendants' Motion brings new elements and claims unsupported by facts which the Court should not consider. For example, Defendants' Motion repeats claims that Blue Ice is "distilled multiple times" (Mot. pp.13,15). This not only contradicts the allegations in the First Amended Complaint (Compl. ¶33), but also the information publicly available online stating that Blue Ice is distilled <u>only once</u>.

Defendants' Motion also argues that an opened bottle of vodka should have been returned to the retailer by the consumer. This is not a valid argument. In Illinois, sales and returns of alcoholic beverages are regulated by the Illinois Liquor Control Commission. The Florida Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco (DABT) regulates the sale of alcoholic beverages in Florida. Returning open alcohol is prohibited in Illinois, while returning sealed spirits is reserved only for retailers and only in very specific circumstances (i.e. during pandemic). *See* Illinois Liquor Control Commission, Guidance on Retailer to Distributor Alcoholic Liquor Returns, Nov. 16, 2020.

While the Motion states that "FAC is completely devoid of even one misrepresentation,"

---

[4] See USDA website: https://fdc.nal.usda.gov/fdc-app.html#/food-details/1102644/nutrients (last visited Feb.24.2023).
[5] See Defendant's website: https://www.blueicevodka.com/home (last visited Feb.26 2023).

(Mot. p.2), 21st Century and the Influencers relentlessly misrepresents the nature, qualities, and source of Blue Ice vodka, in a concerted effort to get it on the shelves and sell it as inflated prices.

## II. PROCEDURAL HISTORY

Plaintiffs filed their Complaint on November 3, 2022. On January 26, 2023, Defendant 21st Century Spirits Inc. ("21st Century") as well as Defendants Leanna Bartlett, Alexa Collins, Sarah Houchens, Metisha Schaefer, Nina Serebrova, Skyler Simpson, Kristen Strout, Kathy Picos, Jamie Villamor, Anna Katharina Von Staehle ("Influencers") filed a consolidated Motions to Dismiss on January 26, 2023.

On October 2, 2023, Plaintiffs filed the First Amended Complaint ("Compl."). On November 3, 2023, Defendants filed a Consolidated Amended Motion to Dismiss ("Motion" or "Mot."). This Response in Opposition follows.

## III. STATEMENT OF FACTS

Vodka is a neutral spirit created by mixing high-grade alcohol and water. (Compl. ¶ 8). Vodka is defined to be without distinctive character, aroma, taste or color. (*Id*. ¶ 9). According to the USDA, Blue Ice Vodka, like any other vodka, has at least 96 calories (406 KJ) per serving (*Id*. ¶ 24). According to the TTB (Alcohol and Tobacco Tax and Trade Bureau ), "[r]epresentations that imply that alcohol beverages may be a healthy part of a weight maintenance or weight loss plan, or that consumers may drink more of such beverages because of their low calorie or carbohydrate content, mislead consumers" (*Id*. ¶ 29) and are "purely deceptive" (*Id*. ¶ 27).

Despite the fact that vodka has, by definition, no taste, 21st Century made claims that Blue Ice is the best tasting vodka - "WE ARE HANDCRAFTED AND AMERICAN MADE WITH A SINGULAR GOAL – TO CREATE THE BEST TASTING VODKA. BECAUSE TASTE IS EVERYTHING." (*Id.* ¶10). Blue Ice Vodka states on its secondary label that it is "handcrafted"

(*Id*. ¶16), and 21st Century also claims that Blue Ice Vodka is "hand-crafted", in a distillery that purports to have the name "Blue Ice Vodka". (*Id.* ¶12).

The term "handcrafted" is defined in Miriam Webster Dictionary as "created by a hand process rather than by a machine". (*Id.* ¶17). Blue Ice Vodka is made by machines. (*Id.* ¶17). No manual processing is involved in producing tens of millions of bottles of vodka per year. (*Id.* ¶18). Blue Ice Vodka is distilled in a modern and automated facility that produces a total of one million cases per year. (*Id*. ¶19).

Defendant 21st Century and the Influencers claimed Blue Ice Vodka has health benefits such as "helping you stay fit" and being "fit-friendly". (*Id.* ¶21). Being "fit friendly" is also mentioned on the Blue Ice Vodka bottle collar (a detachable label-like marketing material placed on each Blue Ice bottle) not part of the COLA approval process. (*Id.* ¶30) Apart from stating that Blue Ice is a "fit friendly vodka," the bottle collars above make the same claim the Influencers are making: there are only 52 or 57 calories in an ounce of Blue Ice vodka. (*Id.* ¶22). These representations are false and deceiving as no type of Blue Ice Vodka has less than 64 calories per ounce and 96 calories per serving. (*Id.* ¶22)

Influencers would make claims that the Blue Ice Vodka is "fit-friendly" and that it can "help you stay fit". (*Id.* ¶¶23, 43). For example, Influencer Jaime Villamor, on April 30, 2020, claims on her Instagram post that "With only 52 calories a serving, no sugar added and gluten free, Blue Ice can definitely help you stay fit during quarantine." (*Id.* ¶23). Influencer Alexa Collins claims that vodka is healthier than an apple. (*Id*. ¶26). Influencer Metisha Schaefer, claims that "[Blue Ice has] only 52 calories per serving, so my calories stay well under 100 calories." (*Id.* ¶23). Despite being paid by 21st Century Spirits to promote Blue Ice Vodka, none of the none of the Influencers use the "paid partnership" tag suggested by the FTC or other disclosures like "#ad,"

or "#sponsored." (*Id.* ¶84). In some instances, Influencers will pose next to a bottle and tag Blue Ice Vodka in their Instagram posts. (*Id.* ¶40). In other posts Influencers would specifically indicate Blue Ice is their favorite alcoholic beverage or recommended cocktails for their followers. (*Id.* ¶41). Influencers would often try to convince consumers to purchase Blue Ice Vodka and direct consumers to the closest grocery store or liquor store or bar to purchase Blue Ice. (*Id.* ¶42). Defendant Influencers advertise alcohol on their Instagram account without disclosing that they are paid to do so and without regard to the federal rules relating to such advertising and without regard to Instagram's own policies. (*Id.* ¶79).

Blue Ice Vodka sells at an inflated price (*Id.* ¶¶33, 83, 100). For example, it retails for at least 50% more than *Rain Vodka*, a gluten-free, low-calorie American-made vodka distilled seven times (rather than <u>only one time</u> for Blue Ice) (*Id.* ¶33). Blue Ice retails for at least 65% more than Smirnoff Vodka, another American-made spirit produced in Illinois (*Id.*) In deciding to purchase Blue Ice Vodka products, Plaintiffs followed what they believed to be the honest advice of Influencers promoting Blue Ice as low-calorie, handcrafted, healthy, and tasty. (*Id.* ¶¶39, 102).

Plaintiffs are following all the Influencers on Instagram. (*Id.* ¶86) Plaintiffs decisions to purchase Blue Ice Vodka and pay a premium was determined by the Influencers and the misleading statements. (*Id.* ¶ 88). Plaintiff, Mario Sava, purchased Blue Ice Vodka in October 2022 from a liquor store in Chicago, Illinois, to celebrate his birthday. (*Id.* ¶98). After consuming Blue Ice Vodka, Sava realized it was industrially manufactured and that it was not a small-batch, high-value spirit, but rather a generic spirit with an overinflated price. (*Id.* ¶ 99). Plaintiff, Alin Pop, purchased Blue Ice Vodka online in August 2022 in Florida. (*Id.* ¶ 84). Pop purchased Blue Ice Vodka relied on statements by the Influencers and 21st Century in his decision to purchase Blue Ice Vodka and believed he had purchased a high-quality, low calorie, handcrafted vodka make by human hands.

(*Id.* ¶ 102). After consuming Blue Ice Vodka at home, Pop realized it was an inferior product of generic quality and that it was not special. (*Id.* ¶ 103). Pop paid a premium price for a substandard vodka product. (*Id*. ¶ 103).

## IV. LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, but not to decide the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520–21 (7th Cir. 1990). In reviewing a motion to dismiss [the Court] must accept as true all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them. *Id.*

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must include a short and plain statement of the claim, showing the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). Accordingly, a court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)); "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949.

Although a facially plausible claim need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964–65. This is to "ensure that the defendant receives fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1964.

Additionally, Federal Rule of Civil Procedure 9(b) requires plaintiffs who assert fraud claims to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). To satisfy the particularity requirement, an allegation of fraud must include the "who, what, when,

where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990); accord *Borsellino v. Goldman Sachs Grp., Inc*., 477 F.3d 502, 507 (7th Cir.2007); *Hoffman v. Nationwide Mut. Ins. Co.,* 10 C 3841, 2011 U.S. Dist. LEXIS 81575, 2011 WL 3158708, at *3 (N.D.Ill. July 26, 2011). Although Rule 9(b) does not require the plaintiff to plead facts sufficient to prove that the alleged misrepresentations were false, it does require the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff*." Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 737 (7th Cir.2014) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir.1992).

## V. ARGUMENT

### A.  Plaintiffs' Complaint Satisfies the Enhanced Pleading Requirements of Rule 9

Rule 9(b) "effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago,* 927 F.2d 988, 992 (7th Cir.1991); *Lachmund v. ADM Investor Servs., Inc.,* 191 F.3d 777, 782–83 (7th Cir.1999) (Rule 9(b) contains "a special pleading requirement that contrasts significantly with the general standard enunciated in Rule 8"). Rule 9(b) provides that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b).

To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990)

In this case, the Complaint is very specific and includes screenshots of the misrepresentations. For example, the Complaint shows an Instagram screenshot posted by Defendant Jamie Villamor, while in Las Vegas, Nevada, on Instagram, on April 30, 2020. (Complaint p.6).

Here are the Rule 9(b) requirements applied to the statements made by Defendant Villamor, as they appear in the Complaint:

- The person making the misrepresentation: Defendant Jamie Villamor

-  The time: first published on April 30, 2020, remains on Instagram to date.

- Place: Instagram (posting from Las Vegas, Neveda) (instagram.com/jamie_villamor)

- Content of the misrepresentation: "Blue Ice can definitely help you stay fit during quarantine."

- Method by which the misrepresentation was communicated to the plaintiff: Plaintiffs are "following" Defendant Villamor (Compl. ¶86) therefore the post appears on Plaintiffs Instagram feed. Defendant Villamor has 1.5 million followers who saw the misrepresentation in their feed.

Without citing any legal support Defendants claim that Rule 9 would require the Plaintiffs to state: "**When** did the Plaintiff(s) consume Blue Ice?" "**When** did Plaintiffs review Blue Ice Label?" **How** is Blue Ice an insufficient "premium" vodka that does not support the price paid by Plaintiffs?" **How** much did each Plaintiff pay? "The **exact day and time** when the Plaintiffs purchased Blue Ice" (Mot. pp.7-8). This is not the law. The "when," "how" and "where" are not applicable to each and every statement or allegation in the Complaint, but solely to the fraudulent or misleading statements. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d 436, 446 (7th Cir. 2011) ("Rule 9(b) apply to allegations of fraud, not claims of fraud").

Furthermore, Defendants' reliance on cases regarding defective products and the ability to locate what product was sold is misplaced. Plaintiffs' First Amended Complaint does not claim that a particular bottle of Blue Ice, sold in a particular store was defective, but that all bottles sold during the Relevant Time Period have the same characteristics. Therefore, the exact time of the day when the Plaintiffs purchased Blue Ice from a retailer is irrelevant in this case.

Regarding the date of the Instagram Posts, each of the screenshots included in the Complaint is dated on its lower right part.



Example from screenshot included in Complaint at page 6.

### B. Plaintiffs Have Standing to Bring Their Claims

Defendants claim that no injury is present because the Complaint does not plead the amount paid for vodka and the actual value. However, "[s]uch a standard would require [Plaintiffs] to calculate their damages, a much higher bar than alleging an injury." *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 931 (N.D. Ill. 2015).

The Complaint states that "Plaintiffs would not have purchased the products if they knew that the Influencers were paid to pretend that they like Blue Ice and that the claims they made are not accurate*." (*Compl. ¶88*)* Courts in the Seventh Circuit have held that similar allegations are sufficient to plead actual injury. *Bonahoom v. Staples, Inc.,* 20-CV-1942, 2021 WL 1020986, at *6 (N.D. Ill. Mar. 17, 2021) (collecting cases). Any amounts of money paid is sufficient to

constitute an injury. If it is real and measurable; Illinois does not require more. *Dieffenbach v. Barnes & Noble, Inc.,* 887 F.3d 826, 830 (7th Cir. 2018).

This is not a case about an "aesthetically unpleasing" and, thus, "entirely unsellable," vodka. (Mot. p 22). Plaintiffs do not claim that the vodka has no value or that they did not like the shape of the bottle. Plaintiffs claim that they were promised something else than what was actually in the bottle. They are entitled to the difference in price between the product as advertised, and the actual product. This is not a case about "subjective" dissatisfaction. It can be objectively measured that Blue Ice has 96 calories while being advertised as having 52 calories per serving. It ca be objectively observed that Blue Ice is made by machines, it is scientifically determined that vodka is not heathy nor "fit friendly." There is nothing subjective about this part.

Nevertheless, if "subjective dissatisfaction [is a] honestly held dissatisfaction, […] is not subject to being second-guessed by a court. *Locke v. Warner Bros.,* 57 Cal. App. 4th 354, 364, 66 Cal. Rptr. 2d 921, 926 (1997). The Court cannot state that, as a matter of law, the Plaintiffs have to accept whatever liquid is in the bottle as being what they bargained for.

The statutory claims properly pled by Plaintiffs, along with the negligent misrepresentation and the unjust enrichment claims are based on economic injuries (money paid), rather than personal injuries. "Customer's allegations that [he] suffered economic injury caused by [Defendant's conduct] alleged the concrete and particularized injury-in-fact required to establish Article III standing; *Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V.*, 529 F. Supp. 3d 856 (N.D. Ill. 2021).

## C. Plaintiffs Properly Allege False and Misleading Statements

Plaintiffs' Complaint alleges a series of false and misleading statements made by the Defendants. "These false claims and the undisclosed advertising by Influencers are the only

reasons why Blue Ice has a place on shelves and the reasons why the price of Blue Ice is inflated." (Compl. ¶29). Despite the ample space in the Motion discussing "The Label," Plaintiffs are not claiming that the misrepresentations were made on the actual label, but on the secondary label, the bottle collar, and on social media posts.

"To some consumers, processes and places of origin matter. […] Purchasing decisions may be "heavily influenced" by information about production processes and places of origin, such as whether food is kosher or halal, whether wine is from a particular locale, whether a diamond is conflict-free, and whether food was produced by union workers, although these considerations have nothing to do with the product's function or performance. When representations about processes and origins are not true, the consumer who cares about them has "not received the benefit of his or her bargain." *Hofmann v. Fifth Generation, Inc.,* 14-CV-2569 JM JLB, 2015 WL 5440330, at *4 (S.D. Cal. Mar. 18, 2015) citing *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 246 P.3d 877 (2011).

### i.     The number of calories.

Regarding the number of calories, Defendant's website disclosed: "Blue Ice Vodka (per 1.5 oz.), **96 calories total**, 0g carbs; 0g protein; 0g fat," www.blueicevodka.com (last accessed Feb. 26, 2023). It comes at no surprise that the caloric value is reported relative to 1.5 oz, which is the serving size accepted in the United States. USDA (Unites States Department of Agriculture) guideline also conveys information on the definition of standard drink servings: 1.5 ounces of 80-proof distilled spirits (40% ABV), 5 ounces of wine (12% ABV) and 12 ounces of regular beer (5% ABV)[6]. So, it is without doubt that Blue Ice has at least **96 calories per serving**. The Alcohol and Tobacco Tax and Trade Bureau ("TTB") also allows for caloric content disclosure calculated

---

[6] *See* https://www.distilledspirits.org/news/the-2020-u-s-dietary-guidelines-advice-on-alcohol-if-alcohol-is-consumed-it-should-be-in-moderation/

by multiplying the number of fluid ounces in a serving by the percentage of alcohol by volume and rounding to the nearest tenth of a fluid ounce. "Distilled spirits at 40 percent alcohol by volume. Serving size: 1.5 fl. oz.". *See* https://www.ttb.gov/faqs/alcohol#af (visited Feb.26, 2023).

But Blue Ice wants to project the image of a "fit-friendly: drink, so, both the detachable bottle collar and the Influencers dramatically slash the number of calories when promoting the product. Defendant Metisha Schafer, for example, states that "It's only **52 calories a serving**, so my calories stay well under 100 calories." (Compl. ¶ 23). Defendant Jamie Villamor states: "With only **52 calories a serving**, no sugar added and gluten free, Blue Ice can definitely help you stay fit during quarantine." *Id.* (emphasis added).

It is unclear how the number of calories got so dwindled, from the 96 (ninety-six) mentioned on the Blue Ice website to 52 (fifty-two) in Ms. Schafer's cocktail or Ms. Villamor's shot, but what is clear is that at least one of the two statements is false. And since Defendants' Motion claims that the statements on label and website might have been approved by the TTB (Mot. p.18), we can only conclude that the statements made by the Influencers are false.

### *ii.* __The amount of human intervention.__

Defendants claim that the "non-deceptive nature of the "hand crafted" argument has already been dismissed (sic) by a federal court in Florida," citing *Pye v. Fifth Generation, Inc.,* Case No. 4:14-cv-493,2015 WL 5634600, *1 (N.D. Fla. 2015). (Mot. pp. 11-12). In fact, the court in *Pye* affirmed the argument in question only to the extent it covered "handmade" term (rather than "hand crafted") by a well-known major alcohol producer. In that case, the Court recognized that Titos vodka is a massive operation producing tens of millions of bottles per year and a reasonable consumer cannot be confused by its claims.

Furthermore, Courts in this District declined to follow *Pye* when deciding on the actual

interpretation of "hand crafted" in *Aliano* 115 F. Supp. 3d at 931. In *Aliano*, this District recognized the difference between huge brands (like Maker's Mark) and smaller brands (like Angel's Envy or even Blue Ice) and held that a consumer could reasonably believe the phrase "hand crafted" on the finished whiskey label of a smaller manufacturer to mean that it was not mass-produced.

In their Motion, Defendants do not claim that Blue Ice is a massive brand, or that they actually own the distillery, and do nothing to rebut the allegations in the Complaint that Blue Ice is produced as a "private label" for 21st Century by Distilled Resources Inc. ("DRINC"), an alcohol distillery located in Idaho that manufactures and bottles for many other brands including Zodiac, Square One Vodka, Simple Vodka, American Harvest Vodka, Veev, etc. (Compl. ¶14).

While Defendants' Motion states that "There is no misrepresentation related to the qualities of Blue Ice or the nature of operations," (Mot. p.13), in fact, most of the representations made by Defendants are false or misleading: Blue Ice vodka is not "hand crafted," the distillery does not bear the name Blue Ice Vodka and it does not belong to the brand. (*See* Compl. ¶14 et seq.). Even the online pictures used to show the "Blue Ice Distillery" are made by digitally manipulating a real picture of a distillery belonging to someone else and to superimpose the Blue Ice sign on it.

### iii.　Health benefits of drinking Blue Ice

Defendants' Motion suggests that a misleading statement that is not on "the label, container, or packaging" is a fair statement. (Mot. p.13). Also, Defendants claim that *suggesting* that the consumption of vodka has benefits like weight loss (Mot. p.13) (emphasis in the Motion) is not the same as stating that vodka has benefits, as "suggestions" are not enough to find the Defendants liable. *Id*. This is not the law.

In fact, TTB prohibits "representations" that **imply** that consumption of "low carbohydrate" wines, distilled spirits, or malt beverages **may play** a healthy role in a weight

maintenance or weight reduction plan." (Compl. ¶28) (emphasis added). Statements like the ones made by the defendants are deceiving and were only made with the intention of deceiving. "<u>Blue Ice can definitely help you stay fit</u> during quarantine" states Defendant Villamor (Compl. p.6) and "fit-friendly cocktails that have fewer calories than an apple." states defendant Collins. (Compl. FN2). Not only that the statements are clearly false[7], but they are definitely implying that consumption of vodka may play a role in weight maintenance or weight reduction.

### iv.    The taste of Blue Ice

While "the singular goal of Defendant 21st Century is to create the best tasting vodka. (Compl. ¶10), Defendants somehow claim in their Motion that the assertion of taste-related arguments and a claim that Blue Ice was promoted as "*tast[ing] better than other vodkas* [is] just [a] false statements contained in the Complaint." This is not the case.  By reading the statements included in the Complaint: "Because taste is everything," the Plaintiffs understood that Blue Ice is the best tasting vodka in America. And, while this is exactly the message promoted by 21st Century, Plaintiffs' Complaint alleges that Blue Ice is tasteless and of low quality.

*See* below screenshot from www.blueicevodka.com/home (last visited February 12, 2023)



---

[7] "Research suggests that alcohol consumption may represent a sizable risk factor for weight gain." Shelton NJ, Knott CS. *Association between alcohol calorie intake and overweight and obesity in English adults.* Am J Public Health. 2014 Apr; 104(4):629-31. As discussed *supra* a serving of vodka has 96 calories and one serving of apple has 15 calories, however, the 96 calories are "empty." "Understanding the relation between alcohol calories and weight gain is important, as are efforts to raise awareness of alcohol calories as <u>empty</u>." *Id,* available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4025698/ (last visited March 1, 2023).

The FTC has repeatedly stated that posting on social media without disclosing material connections with an advertiser represents a deceptive act, and this practice is in violation of the FTC Act. It is, therefore, also a violation of various consumer protection statutes enacted by Florida, Illinois and California.  The FTC has sent numerous letters to Instagram influencers in the last ten (10) years advising them that failure to disclose material connections with an advertiser is a violation of the FTC Act. *See* Exhibit *1* ("[i]ndividual influencers who fail to make adequate disclosures about their connections to marketers **are subject to legal enforcement action** by the FTC.*") Id.*

It is undisputed that the Influencers failed to make any type of disclosure in this case. It is also undisputed that the Influencers were paid by 21st Century for promoting Blue Ice to their followers on social media. The Defendants claim that "a photograph holding Blue Ice or mentioning that a cocktail was made with Blue Ice […] is not an endorsement or advertisement within the meaning of 16 C.F.R. §255.5."  Even if the statement is incorrect as a matter of law, the factual allegations are not about a picture or a cocktail.

The Influencers are acting as endorsers for 21st Century. Defendant Villamor states "There is nothing better than relaxing with a smooth @blueicevodksusa cocktail in hand after a long day" (Compl. p.6), while Defendant Houchens states "Pick up a bottle of @blueicevodka at your local @abcfinespirits store so you are ready for next weekend." Defendant Schafer states "Pick up a bottle at @publix or have or delivered to your door[…]" (Compl. p.13) while Defendant Strout claims "If you still have not tried [Blue Ice] yet, you're missing out." (Compl. p.14). It is clear that the Influencers are pretending to drink Blue Ice and promoting the vodka. A reasonable consumer is likely to believe that these messages reflect the opinion or belief of the influencers posting them.

The influencers are endorsers of the product and should disclose their material connections to the brand. See *Ramson v. Layne*, 668 F. Supp. 1162, 1165 (N.D. Ill. 1987).

**D.    The "Little FTC Acts" Adopts the FTC Interpretation of the Law**

Following the enactment of the Federal Trade Commission Act. § 5(a), as amended, 15 U.S.C.A. § 45(a), (FTCA), several states adopted statutes modeled after the FTCA, which are commonly referred to as "Little FTC Acts." *Suchanek v. Sturm Foods, Inc.,* 11-CV-565-NJR-RJD, 2018 WL 6617106, at *5 (S.D. Ill. July 3, 2018). Over twenty states have adopted Little FTC Acts that contain similar provisions directing courts to defer to the FTCA when determining whether acts are deceptive. *Id.* citing Jack E. Karns, *State Regulation of Deceptive Trade Practices Under "Little FTC Acts": Should Federal Standards Control?,* 94 DICK. L. REV. 373, 378-79 n.24 (Winter 1990).

"The Little-FTC Acts broadly prohibit unfair business practices, including deceptive advertising. Unlike the federal act, however, these state statutes provide private rights of action to complement enforcement by the government." *Bell v. Publix Super Markets, Inc.,* 982 F.3d 468, 474 (7th Cir. 2020).

The Illinois Consumer Fraud Act§ 815 ILCS 505/1 *et seq.* ("ICFA"), and the Florida Deceptive Trade Practices Act, for example, are also a "little FTC acts." The ICFA was enacted to combat deceptive trade practices and consumer fraud in Illinois. *Woodard v. Victory Records, Inc.,* 11-CV-7594, 2013 WL 4659562, at *5 (N.D. Ill. Aug. 30, 2013). FDUTPA also prohibits deceptive and unfair trade practices. *Tymar Distribution LLC v. Mitchell Group USA, LLC*, 558 F. Supp. 3d 1275, 1283 (S.D. Fla. 2021).

The Motion claims that there are no allegations of an endorsement in the First Amended Complaint and that statements made by Influencers cannot be considered endorsements. Both

premises are inaccurate. "Blue Ice makes the yummiest cocktails […] Pick up a bottle @Publix or online via @DrizlyInc and have it delivered straight to your door." states Alexa Collins (Compl. p.7). "Don't forget to cheer up with @BlueIceVodka. Make sure to ask for Blue Ice at your local bar!!!" *Id.* Therefore, even if the Defendants are right about the absence of a private right of action under the FTC Act, the Complaint properly alleges violations of the Act in the context of statutory violations of Little FTC Acts in Florida, Illinois, and California.

### i. Causation Is Established by Linking the Misrepresentations to the Loss

Loss causation is the "causal connection between the material misrepresentation and the [economic] loss" *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 808 (2011) (internal citations omitted). Here the Plaintiffs allege that "[b]ut for the undisclosed advertising by the Influencers and the misleading advertising claims, Plaintiffs and the class members would not have purchased the Blue Ice products. (Compl. 33), and such, would not have suffered a loss. Therefore, causation is established.

### E. The FDUTPA Claim Is Properly Alleged

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 05 C 4742, 2012 WL 1015806, at *7 (N.D. Ill. Mar. 22, 2012) (citing Fla. Stat. Ann. § 501.204).

"To state a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), "a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *O'Connor v. Ford Motor Co.,* 567 F. Supp. 3d 915, 972 (N.D. Ill. 2021). *See also Carriuolo v. GM Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*,

988 So. 2d 82, 86 (Fla. 4th DCA 2008)). Here, Plaintiff have sufficiently alleged each of the required elements.

Reliance on the *Pop v. Lulifama.com, LLC, Case No. 8:22-cv-2698, 2023 WL 4661977 (M.D. Fla. July 20, 2023)* case is misplaced in this context for a few reasons:

First, the *Luli Fama* Complaint was filed in Florida state and then removed by one of the defendants. The plaintiff in *Luli Fama* did not get to amend the Complaint to satisfy the Federal standards of pleading.First, the Complaint in *Luli Fama* does not contain many of the elements present in this Complaint: screenshots of infringing posts, copies of the bottle collar, quotes with the misrepresentations, details about the purchase, etc. Second, the *Luli Fama* relied exclusively on the undisclosed advertising, specifically on hiding the nature of the material relation between the Influencers and Luli Fama. Here, apart from the nature of the relationship, the Influencer Defendants are affirmatively making statements to endorse Blue Ice (rather than just tagging the advertiser in *Luli Fama*) and false statements about the number of calories, the taste, and the health benefits of vodka.

Third, apart from the undisclosed Influencer endorsements, unlike *Luli Fama*, the case at hand contains numerous claims of deceptive conduct both on the part of the Influencers and 21st Century Spirits.  (*See* supra pp. 11-14). Lastly, a ruling in a District Court in Florida, currently under appeal, is not binding on this Court. The Rule 9 applicability to FDUTPA analysis below (pg. 21-24) shows that different Courts may reasonably interpret similar facts in a different manner.

i.     **Plaintiff Has Properly Alleged a Deceptive Act**

A deceptive practice allows a manufacturer or vendor to charge a premium for a product that the manufacturer would not be able to command absent the deceptive practice. *In re Sears,*

*Roebuck & Co.*, 05 C 4742, 2012 WL 1015806, at *8 (N.D. Ill. Mar. 22, 2012).

"A deceptive practice is one that is likely to mislead consumers." *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.,* 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007). Prohibited deceptive and unfair practices under FDUTPA include but are not limited to violations of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." *Marrache v. Bacardi U.S.A., Inc.,* 17 F.4th 1084, 1097 (11th Cir. 2021), citing Fla. Stat. § 501.203(3)(c). The FTC Act is one of such statutes.

When determining if a practice is "deceptive" as to FDUTPA, "[d]ue consideration and great weight shall be given to the **interpretations** of the Federal Trade Commission and the federal courts relating to [§] 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. [§] 45(a)(1) [in interpreting] § § 501.204, Fla. Stat. (2018)." *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, at *32 (M.D. Fla. Jan. 27, 2020). (emphasis added).

FDUPTA was modeled after the FTC Act and looks to interpretations of the FTC Act for guidance in determining "unfair or deceptive acts or practices." Fla. Stat. §§ 501.204(1) and (2); *see also Fed. Trade Comm'n v. Alcoholism Cure Corp.,* 3:10-CV-266-J-34JBT, 2012 WL 12903173, at *1 (M.D. Fla. July 3, 2012). Moreover, as an administrative agency which deals continually with cases in the area, the Federal Trade Commission is often in a better position than the courts in determining when a practice is 'deceptive' within the meaning of the Act. *See F.T.C. v. Colgate-Palmolive Co.,* 380 U.S. 374, 385 (1965), *Fed. Trade Comm'n v. Simple Health Plans LLC,* 379 F. Supp. 3d 1346, 1358 (S.D. Fla. 2019), *aff'd,* 801 Fed. Appx. 685 (11th Cir. 2020).

Simply stated, in this District, "[c]onduct that constitutes a 'deceptive act or practice' or an 'unfair act or practice' under the FTC Act **is** a violation of FDUTPA." *Fed. Trade Comm'n v. Lifewatch Inc.,* 176 F. Supp. 3d 757, 779 (N.D. Ill. 2016). (citations omitted) (emphasis added).

The FTC has repeatedly stated that posting on social media without disclosing material connections with an advertiser represents a deceptive act, and this practice is in violation of the FTC Act. It is, therefore, also a violation of FDUTPA. The FTC has sent numerous letters to Instagram influencers in the last ten years advising them that failure to disclose material connections with an advertiser is a violation of the FTC Act. *See* Exhibit 1 ("[i]ndividual influencers who fail to make adequate disclosures about their connections to marketers are subject to legal enforcement action by the FTC.") *Id.*

Plaintiffs alleged that failure to disclose material connections by the influencers represents a violation of the 15 U.S.C. § 45(a), the FTC act, therefore a violation of FDUTPA. Also, Plaintiffs alleged that Defendants misrepresented the qualities of Blue Ice Vodka. Therefore, the Plaintiffs sufficiently alleged a multitude of deceptive acts.

### ii. Plaintiff Sufficiently Pled Causation Under FDUTPA

The Complaint alleges that: "But for the undisclosed advertising by the Influencers and the misleading advertising claims, Plaintiffs and the class members would not have purchased the Blue Ice products." (Compl. ¶33). [Pop] relied on the statements made by the Influencers and the statements on 21st Century's advertising, Pop believed he bought a high-quality, handcrafted vodka made by human hands (Compl. ¶85). After consuming Blue Ice at home, Pop realized that the Blue Ice product he purchased is of an inferior, generic quality, and the vodka is not special. He paid a premium price for a substandard vodka product. (Compl. ¶86).

This Court defined causation as "a necessary element of an action to recover damages," and that "where ... plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements. *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 348

F. Supp. 3d 797, 811 (N.D. Ill. 2018), *rev'd in part, appeal dismissed in part sub nom. Bell v. Publix Super Markets, Inc.,* 982 F.3d 468 (7th Cir. 2020).

This is exactly the case here. As indicated above, Plaintiffs alleged that they relied on the statements that were misleading and would not have purchased the vodka otherwise. This satisfies the causation requirement of FDUTPA.

### iii.    Plaintiff Suffered Actual Damages

Plaintiffs have also pled their entitlement to damages by alleging that they are now in possession of alcohol of inferior in quality and worth far less than what they paid for it. The case law recognizes that while damages need not be calculated with exact precision at this stage on the litigation, damages calculations must still be based on adequate data. See *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 WL 3232274, at *11-12 (S.D. Fla. 2007) (citing *Christopher Advert. Grp., Inc. v. R & B Holding Co. Inc*., 883 So. 2d 867, 871 (Fla. 3d DCA 2004)) (law does not contemplate that damages must be calculated with mathematical exactness); see also *G.M. Brod & Co., Inc. v. U.S. Home Corp*., 759 F.2d 1526, 1538 (11th Cir. 1985) (proof of damages may be indirect and based upon assumptions […] as long as the assumptions rest on adequate data).

In fact, the risk of uncertainty in calculating damages, like it may be the case here, "falls on the wrongdoer." *See Slip-N-Slide Records, Inc.*, 2007 WL 3232274, at *36 (citing *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563 (1931))." *ME Tech. v. Brownstein*, No. 20-61508-Civ-Dimitrouleas/Snow, at *11 (S.D. Fla. Nov. 13, 2020).

The "simple question", in alleging damages under FDUTPA turns to be: Is a bottom-shelf, industrially-manufactured vodka worth less than "the best tasting vodka," that helps in maintaining a healthy lifestyle, is handmade, and is the drink of choice of many social media influencer with a

combined following in tens of millions? "Common sense indicates that it is," and this should be sufficient to allow the Plaintiffs to proceed with their claim. *O'Connor v. Ford Motor Co.,* 567 F. Supp. 3d 915, 973 (N.D. Ill. 2021), citing *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 991 (Fla. 5th DCA 2004), cases which applied the principle in the context of automobile sales.

### iv.    The Safe Harbor Provision of *Fla. Stat. §501.212(1)* Does not Apply

First, the misleading statements are not made on the label as argued in the Motion to Dismiss (Motion p.19). The Complaint is specifically alleging that the statements made on the secondary label and Blue Ice bottle's collar, a detachable label-like marketing material placed on each bottle sold. (Complaint ¶20).   *"*21st Century makes many of its deceiving claims about its Blue Ice products, on a detachable bottle collar, a secondary bottle label, or on social media through undisclosed advertising, trying to avoid the proper disclosures in their C.O.L.A. (Certification/Exemption of Label/Bottle Approval) approval. (Complaint ¶¶ 21-22).

Furthermore, Defendants recognize, "[i]t is undisputed that the labeling and advertising of distilled spirits is regulated by The Alcohol and Tobacco Tax and Trade Bureau ("TTB"). 27 C.F.R. Subchapter A, Part 5." (Mot. p. 18). However, Blue Ice advertising, is specifically deemed misleading by the TTB Decision.

The Complaint cites to numerous examples of statements that are not only misleading, but also untrue and not supported by scientific evidence. Such claims are also prohibited by the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), as they are deceitful and misleading. In fact, TTB deems these claims as purely deceptive. TTB-Ruling 2004-01. Complaint FN3.

### F.  Rule 9(b) Does not Apply to FDUTPA Claims

Defendants are incorrectly citing a decision in the US Court for the Middle District of Florida as the black-letter law on the applicability of Rule 9(b) to FDUTPA claims. It is not. In

fact, there is a split of authority within the Florida district courts as to whether Rule 9(b) applies to FDUTPA claims.

In one line of cases, a minority of judges, hold that Rule 9(b) applies to the extent the FDUTPA claim at issue sounds in fraud. *See, e.g., Llado-Carreno v. Guidant Corp.*, 09-cv-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb 22, 2011) (Altonaga, J.); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (Seitz, J.); *Begualg Inv. Management Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153, 2011 WL 4434891 (S.D. Fla. Sep. 23, 2011) (Martinez, J.). The *Luli Fama* case belongs to this line of cases. Judge Covington recognized in *Luli Fama* both the split and the existence of a different line of cases. *Luli Fama* is not binding on this Court.

The majority line of cases holds that the requirements of Rule 9(b) do not apply to claims under FDUTPA. *See, e.g.*, *FTC v. Student Aid Center, Inc.*, 281 F. Supp. 3d 1324, 1334 (S.D. Fla. 2016) (Moreno, J.); *Toback v. GNC Holdings, Inc.*, 13-cv-80526, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) (Cohn, J.); *Harris v. Nordyne, LLC*, 14-cv-21884, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 13, 2014) (Bloom, J.). *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1184–85 (S.D. Fla. 2019) (Scola, R.).

Also, Florida Appellate Courts have held that a similar highlighted pleading would not apply for claims brought in State Court: Since "FDUTPA is a remedial statute deigned to protect consumers." *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005). FDUTPA itself instructs courts to construe its provisions "liberally." Fla. Stat. § 501.202(2); *see Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010). "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud," *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012); *Florida v. Tenet*

*Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005), which is why a FDUTPA "plaintiff need not prove the elements of fraud to sustain an action under the statute." (*Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)).

As Florida courts explain, "[a] deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Office of A.G., Dep't of Legal Affairs v. Wyndham Int'l, Inc.,* 869 So. 2d 592, 598 (Fla. 1st DCA 2004) and "the application of fraud principles to a FDUTPA claim would improperly constrict the broad remedy intended by the legislature." *Dorestin v. Hollywood Imports, Inc.,* 45 So. 3d 819, 831 (Fla. Dist. Ct. App. 2010).

The above discussion notwithstanding, this Court does not have to rule on the applicability of Rule 9(b) in FDUTPA context. As explained above (supra, pp. 7-9), in the First Amended Complaint, Plaintiffs satisfied the enhanced pleading standard of Rule 9(b).

### G. The ICFA Claim Is Properly Alleged

The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) was enacted to give consumers a remedy for wrongs committed against them in the marketplace. The ICFA protects consumers against fraud, unfair methods of competition, and other unfair and deceptive practices. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). The ICFA makes it illegal for a defendant to engage in any deceptive or unfair act or practice in the course of commerce. *See* 815 ILCS 5/5/2; *see also Totz v. Continental DuPage Acura*, 23 Ill.App.3d 891, 900 (2nd Dist. 1992). Deceptive or unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact." *Vanzant,* 934 F.3d at 736 (*citing* to 815 Ill. Comp. Stat. 505/2). To recover on a claim under the Act, a plaintiff must plead and prove

that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages. *Id.* (*citing* to *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934-35 (7ᵗʰ Cir. 2010)).

The ICFA is to be "liberally construed" which "provides a clear mandate to Illinois courts to utilize the [ICFA] to the greatest extent possible to eliminate all forms of deceptive or unfair business practices and provide appropriate relief to consumers." *See Totz*, 23 Ill.App.3d at 901. To achieve its purpose, the ICFA removes many of the barriers to recovery by reducing the elements of a prima facie case and lowering the standard of proof. *Buechin v. Ogden Chrysler-Plymouth, Inc.*, 159 Ill. App. 3d 237, 250 (2d Dist. 1987) ("The majority of the traditional common law elements have been virtually eliminated by the [Act].")). Plaintiff has met all the requirements to properly plead an ICFA claim.

### i. Plaintiff Properly Alleges Deceptive or Unfair Conduct[8]

Deceptive conduct is distinct from unfair conduct under the ICFA. A claim under the Illinois Consumer Fraud Act may be premised on either (or both), but the two categories have different pleading standards. If the claim rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Specifically, the complaint must identify the "who, what, when, where, and how" of the alleged fraud. *Id.* (quotation marks omitted). On the other hand, "[a] plaintiff may allege that conduct is unfair ... without alleging that the conduct is deceptive." *Siegel*, 612 F.3d at 935. Finally, under either theory of the case, the plaintiff must adequately plead causation—more specifically, he must

---

[8] Defendants' Motion does not raise the applicable issues and legal standard related to the pleading of deceptive or unfair acts under the ICFA. Plaintiffs address them here so as not to waive any issues that may be raised in a reply and to present the proper standard to the Court.

allege that but for the defendant's deceptive or unfair conduct, he "would not have been damaged." *Siegel*, 612 F.3d at 935 (quotation marks omitted). "[R]eliance is not an element of statutory consumer fraud." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 593 (1996). Rather, it is the plaintiff's "damage," not his purchase, that must occur "as a result of" the deceptive act or practice. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 776 N.E.2d 151 (2002). Indeed, it was enough in *Connick* that the plaintiffs' purchases "occurred after the allegedly fraudulent statements." *Connick*, 174 Ill. 2d 482, 504.

Under Federal Rule of Civil Procedure 9(b), an ICFA claim premised on fraudulent conduct must allege "the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Plaintiff does just that in the Complaint. In particular, Plaintiff alleges:

*Who*: Defendants 21st Century Spirits (Compl., ¶¶ 3, 44) and Influencers (Compl., ¶¶ 3, 45-54);

*What*: repeatedly made a false representation and multiple omissions of material fact to Plaintiff as set forth in Paragraphs 10, 16, 20, 21, 38 and 46 of the Complaint (Compl., ¶¶ 10, 16, 20, 21, 38, 46);

*How*: by imposing, adhering to, advancing and perpetuating the health benefits of Blue Ice Vodka and manufacturing, marketing and selling Blue Ice Vodka while making false representations and omitting material facts, which would have caused Plaintiff to act differently had they been aware of those false representations and omitted facts (Compl., ¶¶ 10, 16, 20, 21, 38 and 46);

*When*: In October 2022 for Plaintiff Sava, purchased the Blue Ice Vodka (Compl., ¶98);

during the Class Period the Influencers made material misrepresentations during the last few years (Compl. ¶4, 39); and

*Where*: Plaintiff purchased Blue Ice Vodka at a Liquor Store in Chicago, Illinois (Compl. ¶98); during the Class Period the Influencers made material misrepresentations on Instagram (Compl. ¶39).

Based on the above, Plaintiff Sava properly alleges a claim for deceptive acts under the ICFA.

Defendants contend that Plaintiff's unfair practices claims must be pled with particularity because they retread the deceptive practices claims. But the unfair practices "need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). To determine whether an act is unfair within the meaning of the ICFA, courts consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes a substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E. 2d 951, 961 (2002). A plaintiff need not satisfy all three of these factors. *Id*. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*. As to the first factor, "[a] practice which has not previously been held to be unlawful can offend public policy if it violates a standard of conduct set out by an existing statute or common law doctrine that typically governs such situations." *Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1004 (N.D. Ill. 2016). Here, Plaintiff alleged that Defendants unfair acts are prohibited by the Alcohol and Tobacco Tax and Trade Bureau. (Compl. ¶¶ 23-25). Additionally, Plaintiff alleges that Defendants violate FTC regulations for influencers regarding proper advertising practices. (Compl. ¶¶ 62, 65, 69, 78. 79)

However, even if Plaintiff Sava's unfair practices claims are evaluated under Rule 9(b), as discussed above, Plaintiff adequately described the who, what, where, when and how of each Defendant's conduct. (*Supra*, at pp. 25-26). Those allegations, coupled with the allegations of Defendants' unfair practices are sufficient to maintain ICFA claims. Based on this factor alone, Plaintiffs have sufficiently alleged a claim for unfair practices under the ICFA. *See Robinson*, 775 N.E. 2d at 961. As to the second factor, the question is whether a defendant's conduct is "so oppressive as to leave the consumer with little alternative except to submit to it." *Id.* Plaintiff did not know he was buying a product that did not have the health benefits represented by Defendants. Plaintiff had little alternative here because he did not know that Defendants were selling misbranded products based on misrepresentations in advertising and thus, he had no reason to seek an alternative.

As to the third factor, an injury is substantial if it is: (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers could not reasonably have avoided. *Batson v. Live Nation Entm't, Inc*., 746 F.3d 827, 834 (7th Cir. 2014). Plaintiff Sava alleges that Defendants' conduct caused him substantial harm because he paid above-market prices for Blue Ice Vodka and because they did not receive what they expected to receive when he purchased the vodka. (Compl., ¶¶ 99, 117). Defendants have not even argued – nor could they – that their practice of selling Blue Ice Vodka in violation of the TTB and FTC regulations produces any countervailing benefits to consumers or competition. This factor also favors Plaintiff.

### ii. Plaintiff Sustained Damages Under the ICFA

"When a plaintiff alleges that it purchased something because of a fraudulent misrepresentation, there is actual injury when the plaintiff suffers a pecuniary loss by receiving

goods that are worth less than was promised." *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 931 (N.D. Ill. 2015) (internal citations omitted); *see also Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (holding that the prescription pet food was "something less that [Plaintiffs] expected; and that [plaintiffs] suffered damages because they paid a higher price" is sufficient to state an ICFA claim). In fact, "actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the [product]. *Muir v. Playtex Products, LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (internal citations omitted).

Here the Plaintiffs allege that "they paid more than what they would have otherwise paid had they know the true nature of the product." (Compl ¶151) and that "Blue Ice products proved to be of a much lower value than the price paid." (Compl. ¶7). Furthermore, the Complaint states that "Blue Ice is retailing for at least 50% more than Rain Vodka, another American-made "handcrafted" spirit, advertised as organic (unlike Blue Ice), gluten-free, low-calories vodka, distilled seven times (rather than just one time for Blue Ice). The difference in price can be attributed to the unfair advertising methods employed by 21st Century and the "Influencers." (Compl. ¶33). This Court and "[o]ther courts in this district have found similar allegations enough to satisfy the ICFA's actual damages requirement." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 709 (N.D. Ill. 2020).

### iii.  Proximate Causation

To allege proximate cause in an ICFA action, a plaintiff must plead facts that indicate (1) it would not have been injured without the defendant's alleged deception […] A plaintiff must also allege that (2) it was actually deceived by the defendant's deceptive act. *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 931–32 (N.D. Ill. 2015) citing *Avery v. State Farm*

*Mut. Auto. Ins. Co.,* 216 Ill. 2d 100, 199, 835 N.E.2d 801, 861 (2005) (internal citations omitted), *Price v. Philip Morris, Inc.,* 219 Ill.2d 182, 269, 302 Ill.Dec. 1, 848 N.E.2d 1, 52 (2005) (internal citations omitted).

Plaintiff has alleged that they would not have been injured but for the deception. Specifically, "[b]ut for the undisclosed advertising by the Influencers and the misleading advertising claims, Plaintiff and the class members would not have purchased the Blue Ice products." (Compl. ¶38). Plaintiff alleged they were actually deceived - "[t]he Plaintiffs would not have purchased the products if they knew that the Influencers were paid to pretend that they like Blue Ice and that the claims they made are not accurate." (*Id*. ¶88.) "[Pop] relied on the statements made by the Influencers and the statements on 21st Century's advertising." (*Id.* ¶102). Proximate causation of the ICFA claim is properly alleged.

### iv. Plaintiff's Transaction Occurred in the Course of Trade or Commerce in Illinois

Defendants' cursory mention that the transaction is not substantially connected to Illinois is not properly developed in the Motion and is unsupported by any case law. Plaintiff Sava is a citizen of Illinois and resides in Cook County, Illinois. (Compl. ¶46). Plaintiff Sava purchased Blue Ice Vodka in October 2022 from a liquor store located in Chicago, Illinois. (Compl. ¶98). A single transaction is sufficient to establish a claim under the ICFA. *See Azimi v. Ford Motor Co.*, 977 F.Supp. 847, 852 (N.D. Ill, 1996); *see also Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996).

Defendants claim that "Blue Ice is made from potatoes in Idaho and distilled in Idaho," therefore, the "Transaction of Sava's Purchase of Blue Ice is Not Substantially Connected to Illinois*."* This is not relevant to the inquiry. Defendants' "substantially connected" test has no basis in Illinois law. Blue Ice products are marketed and sold in Illinois and Plaintiff Sava, a

resident of Illinois, purchased the product at issue in Illinois. The purchase of Blue Ice Vodka by Plaintiff Sava at a liquor store in Chicago, Illinois is a single transaction sufficient to establish an ICFA claim. Plaintiff Sava has properly alleged that the transaction occurred in the course of trade or commerce in the State of Illinois.

### H. Plaintiffs' CLRA Claim Is Properly Alleged

Defendants argue that statements made by Influencers and 21st Century are not deceptive under California law. As discussed above, the statements referred to in the Complaint are simply false. Even if the Court decides, as a matter of law, that such statements are true, truth does not necessarily foreclose liability under the UCL, FAL, or CLRA. *O'Shea v. Epson Am., Inc.,* CV 09 -8063 PSG CWX, 2011 WL 3299936, at *9 (C.D. Cal. July 29, 2011), *aff'd in part,* 566 Fed. Appx. 605 (9th Cir. 2014). "This is not one of the rare cases where challenged statements can be determined not to have misled reasonable consumers as a matter of law." *Marek v. Molson Coors Beverage Co.,* 580 F. Supp. 3d 848, 861–62 (N.D. Cal. 2022).

Specifically, the Plaintiffs in this case allege that they were misled by the statements and that they only purchased Blue Ice vodka because of the misrepresentations. This is exactly what is required under California law. Under *Kwikset,* two causal steps are necessary to tie a labeling misrepresentation to an economic injury: the consumer (1) must have been "deceived by a products label into spending money to purchase the product," and (2) must allege that he or she "would not have purchased it otherwise." *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 246 P.3d 877 (2011). Both steps are properly alleged in the Complaint.

Defendants in the Motion cite to *Hoffman v. Fifth Generation, Inc., Case No. 14-cv-2569, 2015 WL 5440330 (S.D. Cal. Mar. 18, 2015)* and point to similarities between this case and Hoffman. However, in Hoffman the Court was clear about what was missing from the complaint:

"What is missing from his statutory claims is the second link-that he would not have bought Tito's otherwise." *Id at *5.* The case at hand is different because here, the Plaintiffs are alleging in the Complaint the facts that were missing in *Hoffman*: "But for the undisclosed advertising by the Influencers and the misleading advertising claims, Plaintiffs and the class members would not have purchased the Blue Ice products." (Compl. ¶33).

## I. Plaintiffs' UCL Claim Is Properly Alleged

### I. Unlawful Conduct

The UCL was designed to prohibit "not only advertising, which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 951, 45 P.3d 243, 250 (2002), *as modified* (May 22, 2002). California courts have stressed that, while a statement "may be accurate on some level," it may "nonetheless tend to mislead or deceive. *Mullins v. Premier Nutrition Corp.,* 178 F. Supp. 3d 867, 894 (N.D. Cal. 2016). A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL. *Morgan v. AT&T Wireless Services, Inc.,* 99 Cal. Rptr. 3d 768, 785 (Ct. App. 2009).

California Courts also held that on a case where plaintiffs alleged claims on e-cigarette devices implied the products were healthier or less harmful than other tobacco products such claims are sufficient for stating a cause of action under UCL. *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig., 497 F. Supp. 3d 552*

As for the injuries, there are "innumerable ways" for a plaintiff to show economic injury, including by showing that the consumer paid more than he or she would have paid otherwise, or entered a transaction that would otherwise have been unnecessary. *Fifth Generation*, 2015 WL

5440330, at *4. When representations about processes and origins are not true, the consumer who cares about them has "not received the benefit of his or her bargain." *Id* at *5*.

### J.  The Unjust Enrichment Claim Is Properly Alleged

Restitution for unjust enrichment is a common law claim that arises as a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law. *Toulon v. Cont'l Cas. Co.,* 877 F.3d 725, 741 (7th Cir. 2017).Thus, because Plaintiffs have sufficiently and properly pled the elements of each of their statutory-based claims, and because his allegations must be accepted as true and construed in the light most favorable to him, Plaintiffs have properly pled a cause of action.

### K.  Negligent Misrepresentation Is Properly Alleged

To bring a claim for negligent misrepresentation Plaintiff must allege (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.  *See Receivership Management, Inc. v. Locke Lord LLP*, No. 18-cv-8158, 2022 WL 4551889 at *14 (N.D. Ill., Sept. 29, 2022); *see also First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006) (citations omitted).

Illinois courts generally follow the Restatement (Second) of Torts § 552. *See, e.g.*, *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1565 (7th Cir. 1987) (collecting Illinois cases "influenced by section 552"). Under that section of the Restatement, a "[m]isrepresentation" may "denote not only words spoken or written but also any other conduct that amounts to an assertion

not in accordance with the truth," and "words or conduct asserting the existence of a fact constitute a misrepresentation if the fact does not exist." Restatement (Second) of Torts § 552 (1977).

The Complaint alleges numerous misrepresentations by the Defendants. Specifically, Defendant 21st Century misrepresents that Blue Ice Vodka is handcrafted when it is not (Compl ¶16). Defendants 21st Century and the Influencers falsely allege that Blue Ice Vodka has health benefits such as "helping you stay fit" or being "fit-friendly". (Id. ¶¶20-21). Defendants Influencers claim that Blue Ice Vodka suggest that the consumption of vodka has health benefits like weight loss, which is misleading. (Id. ¶¶22, 25). Defendants' arguments that Plaintiffs do not properly allege misrepresentations is without merit. Plaintiffs' allegations regarding Defendants' misrepresentations and false statements as set forth herein are more than sufficient to meet their burden in response to a motion to dismiss.

Defendants' argument that Plaintiffs failed to properly plead damages because diminished commercial expectations are not enough to establish harm is equally without merit. Under Illinois law, fraud is an exception to the economic loss doctrine, referred to as the *Moorman* doctrine, which generally precludes the recovery of purely economic losses in tort actions. *See Wigood v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 568-69 (7th Cir. 2012) (applying Illinois law); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 911 Ill.2d 69, 86-87 (1982); *Olson v. Hunter's Point Homes, LLC*, 2012 IL App 100506 (5th Dist), ¶ 8). Recovery of economic losses in tort is permitted in Illinois (1) where plaintiff's damages are proximately caused by defendant's intentional, false representation, i.e. fraud; or (2) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. *See Mormon Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 452-53 (1982); *In re Illinois Bell Switching Station Litigation*, 641 N.E.2d 440 (1994)

Here, Defendants induced Plaintiffs to buy Blue Ice Vodka by making misrepresentations and false statements regarding the quality of the product but also about the health benefits on Blue Ice Vodka. Further, Defendant Influencers are in the business of providing guidance to others on social media for their business transactions – in this case purchasing vodka products. Plaintiffs' damages claims go beyond just diminished commercial expectation and are sufficient at the pleading stage.

Defendants' reliance on the *Luli Fama* decision is misplaced. Again, as set forth herein, Plaintiffs have properly alleged Defendants' misrepresentations with sufficient specificity to satisfy the pleading requirements at this stage of the litigation. Even assuming the heightened pleading requirements of Rule 9(b) are applicable, Plaintiffs have clearly met their burden. Further, Defendants do not cite any Illinois case law in support of their Motion on this point. Defendants have not provided any support for their argument as to the duty to disclose in Illinois, which is fatal to their motion to dismiss. For these reasons, Defendants' Motion as to Plaintiffs' negligent misrepresentation claim should be denied.

### L. The Breach of Express Warranty Claim Is Properly Alleged

Defendants start from assuming, yet again, that, as a matter of law, the "handcrafted vodka," the same vodka that "helps you stay fit," (Compl. ¶21) and that "has less calories than an apple," (Compl. ¶26) conforms with representations made by Defendants (Mot at 34). Also, they are still trying to convince the Court that it's ok for the "best tasting vodka" to have no taste. These speculations are outside the realm of reality.

In order for a Plaintiff to assert a claim of breach of Express Warranty, the Plaintiff has to allege in the Complaint that the Defendants (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods

would conform to the affirmation or promise. *Aquino v. C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 787 (N.D. Ill. 2019)

All the four prongs for a claim have been satisfied: Defendants stated (1) that Blue Ice vodka (which is undoubtedly a good (2)) have 52 calories per serving, tastes better than other vodkas, is hand crafted, and help maintaining a healthy, fit-friendly, lifestyle. Relying on these representations (3), Pop purchased Blue Ice and paid a premium for the product. The defendants guaranteed the quality of Blue Ice.

Ultimately, whether an express warranty exists is a question for the trier of fact, and consequently, beyond the scope of this court's Rule 12(b)(6) determination. *Alan Wood Steel Co. v. Capital Equip. Enter., Inc.,* 349 N.E.2d 627, 633 (Ill.App.Ct.1976). As previously mentioned, for the purposes of a motion to dismiss a claim of breach of Express Warranty, the "court must accept as true all well-pled factual allegations in a complaint sufficient to meet the liberal standard of notice pleading under the Federal Rules." *Pressalite Corp. v. Matsushita Elec. Corp. of Am.,* 02 C 7086, 2003 WL 1811530, at *4 (N.D. Ill. Apr. 4, 2003).

Defendants consider the statements subject to this lawsuit as mere puffery and cite to *Stuve v. Kraft Heinz Co.,* No. 21-CV-1845, 2023 WL 184235, at *12 (N.D. Ill. Jan. 12, 2023). In that case the court looked at the statement "gooey, cheesy goodness," as connoting healthiness and compared to statements like: "Start with a Healthy Spoonful," "Invest in your Health Invest in yourself," "good for you". The later statements, "clearly connoting healthiness, are distinct from "gooey, cheesy goodness," which do not obviously ring of health." *Id.* at *12.

In our case the inaccurate statements are clear and obvious as Blue Ice is promoted as "fit-friendly," "handcrafted," having a taste, and having 52 calories per ounce/serving.

As properly alleged in the Complaint, Pop mailed a letter to the registered agent of Defendant 21st Century, prior to initiating the lawsuit. *See Rudy v. Family Dollar Stores, Inc.,* 583 F. Supp. 3d 1149, 1162 (N.D. Ill. 2022).

### M. Alternatively, Leave to Amend Should Be Granted

Plaintiffs requests in the alternative that they be given leave to file an amended Complaint to cure any perceived defects in the First Amended Complaint. Leave to amend a complaint should "be freely given when justice so requires." Fed.R.Civ.P. 15(a). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004).

Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given a chance to amend the complaint before the court dismisses the action with prejudice. In fact, Defendants arguments in large part rely on their belief that Plaintiff's Complaint lacks specificity. If such failure exists, it can be cured through an amendment. If the Court is inclined to dismiss Plaintiffs' Complaint, Plaintiffs should be granted leave to further amend their complaint.

### VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that Defendants' motion to dismiss be denied.  Alternatively, the Court grant should grant Plaintiffs leave to amend their Complaint.

Dated: November 20, 2023

Respectfully Submitted,

/s/Bogdan Enica
Bogdan, Enica, Esq.
FL Bar No.: 101934
66 West Flagler St., Ste. 937
Miami, FL 33130
Telephone: (305) 539-9206
Email: Bogdan.Enica@practus.com


Keith L. Gibson, Esq.
490 Pennsylvania Avenue, Suite 1
Glen Ellyn IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel and parties of record in this case.

/s/ Bogdan Enica