**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARIO SAVA and ALIN POP, individually and on behalf of all those similarly situated, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 22 C 6083 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| 21ST CENTURY SPIRITS, LLC, LEANNA | ) |
| BARTLETT, ALEXA COLLINS, SARAH | ) |
| HOUCHENS, METISHA SCHAEFER, | ) |
| NINA SEREBROVA, SKYLER SIMPSON, | ) |
| KRISTEN STROUT, KATHY PICOS f/k/a | ) |
| KATHY CRUZALEGUI, JAMIE | ) |
| VILLAMOR, ANNA KATHARINA VON | ) |
| STAEHLE a/k/a ANNA KATHARINA, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

21st Century Spirits, LLC ("21st Century") makes, distributes, and markets Blue Ice

Vodka ("Blue Ice"). 21st Century has engaged a number of women[1] as "influencers" to promote

Blue Ice on social media. After viewing the Blue Ice website, the influencers' posts, and

marketing materials attached to bottles of Blue Ice, Mario Sava and Alin Pop purchased Blue

Ice. The product did not live up to the marketing claims, and they filed this putative class action

against 21st Century and the influencers. They allege violations of the Federal Trade Commission

Act (FTC Act), 15 U.S.C. § 41 *et seq.*, the state consumer protection statutes of Florida, Illinois,

---

[1] Leanna Bartlett, Alexa Collins, Sarah Houchens, Metisha Schaefer, Nina Serebrova, Skyler Simpson, Kristen Strout, Kathy Picos, Jamie Villamor, and Anna Katharina.

and California,[2] and each of those state's common law theories of unjust enrichment, negligent misrepresentation, and breach of express warranty.[3] Defendants move to dismiss plaintiffs' Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For reasons discussed below, the motion (dkt. 71) is granted in part and denied in part.

## BACKGROUND

21st Century owns the vodka brand "Blue Ice Vodka." (Dkt. 60 ¶ 49.) In promoting Blue Ice, 21st Century has made a number of representations that plaintiffs see as "deceptive, unfair, and misleading," including that Blue Ice is "handcrafted," is manufactured in a distillery owned by 21st Century, is filtered four or five times,[4] "tastes better than other vodkas," has between 52 and 57 calories per ounce, and is "fit-friendly" and has "health benefits," including that it helps with personal fitness and weight management. (*Id.* ¶¶ 3, 10, 12–14, 16–18, 20–26, 32, 43, 81.) Some of these representations appear on the Blue Ice website. (*Id.* ¶¶ 12–13, 82.) Others appear on a "secondary label" attached to bottles of Blue Ice that seems "to be signed by a real person." (*Id.* ¶¶ 17, 30–31.) Still others appear on a bottle collar, a detachable label-like marketing material. (*Id.* ¶¶ 21–22, 30.)

To advertise Blue Ice around the United States, 21st Century pays a number of social-media "Influencers" (the individual defendants) to promote Blue Ice across social-media

---

[2] Specifically. the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et seq.*, the Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1 *et seq.*, the Illinois Uniform Deceptive Trade Practices Act (IUDTPA), 815 Ill. Comp. Stat. § 510/1 *et seq.*, the California Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.*, and the California Unlawful Competition Act (CUCL), Cal. Bus. & Prof. Code § 17200 *et seq.*,

[3] The court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Venue is proper under 28 U.S.C. § 1391(b)(2).

[4] Plaintiffs separately allege that defendants represent Blue Ice as "filtered 5 times" (dkt. 60 ¶ 12) and "filtered four times" (*id.* ¶ 32); for simplicity's sake, the court has combined these allegations as "filtered four or five times."

2

platforms, including Instagram. (*Id.* ¶¶ 79, 80, 84, 86.) In their social-media posts, the Influencers repeat to their millions of followers many of the representations plaintiffs view as deceptive and misleading. (*Id.* ¶ 81.) Although the specific representations vary from Influencer to Influencer, the Influencers as a group represent that Blue Ice is "handcrafted," has between 52 and 57 calories per ounce, and is "fit-friendly" in that it helps with personal fitness and weight management. (*Id.* ¶¶ 3, 20–25, 43, 81.) One Influencer has even stated that she makes Blue Ice cocktails that have fewer calories than an apple, implying that Blue Ice "is the healthier alternative." (*Id.* ¶ 26.)

Because consumers may not be willing to pay as much for Blue Ice or purchase it at all if they know that the Influencers are paid to promote it, 21st Century and the Influencers have "devised a scheme" whereby the Influencers "tag or recommend Blue Ice products" while "pretending they are disinterested consumers." (*Id.* ¶ 5.) In other words, the Influencers do not indicate in their social-media posts that they are paid to promote Blue Ice. (*Id.* ¶¶ 4–5, 16, 44, 79–80, 84–85, 87, 91.)

Relying on the representations made on the Blue Ice website, the "secondary label," the bottle collar, and the Influencers' Instagram posts, Pop and Sava purchased bottles of Blue Ice in August and October 2022, respectively. (*Id.* ¶¶ 7, 97–98, 101–102, 146, 149.) Both Pop and Sava were disappointed. (*Id.* ¶¶ 99, 101, 103.) Pop "realized that the Blue Ice product he purchased is of an inferior, generic quality," that Blue Ice "is not special" but is, rather, "substandard" and "not worth the high price" he paid. (*Id.* ¶ 101, 103.) Similarly, Sava "realized shortly after opening the spirit that it is not what he expected," that it is an "inferior" and "low quality flavored alcohol." (*Id.* ¶ 99.) After conducting some research, Sava "concluded that consuming

Blue Ice does not have health benefits," and Pop "discovered" that Blue Ice is "not produced manually" (*i.e.*, is not "handcrafted") and does not "have any health benefits." (*Id.* ¶¶ 99, 103.)

After the original Complaint was dismissed without prejudice, plaintiffs filed an Amended Complaint alleging that all the above-referenced representations made by 21st Century and the Influencers are false, deceptive, or misleading. (Dkt. 60.) Specifically, plaintiffs allege that Blue Ice (1) is not "handcrafted" but is, rather, "industrially manufactured" by machines without the "constant supervision of a human," (2) is not filtered multiple times but is, rather, filtered only once, (3) is not better tasting than other vodkas but is, rather, "inferior," "generic," "substandard," and "low quality," (4) is not a "healthy product" that helps with personal fitness and weight management but is a product that "poses significant health risks," and (5) is not manufactured in a distillery owned by 21st Century but is, rather, manufactured as a "private label" for 21st Century at a distillery owned by Distilled Resources Inc. (*Id.* ¶¶ 3, 9–10, 12–15, 17, 29, 33, 99–100, 103.) Indeed, to give the impression that Blue Ice is manufactured in a distillery owned by 21st Century and dedicated only to the production of Blue Ice, 21st Century includes on the Blue Ice website a doctored photograph of the Distilled Resources distillery, digitally placing the Blue Ice logo over the distillery's actual signage. (*Id.* ¶ 13.) Moreover, Blue Ice does not, in fact, have either 52 or 57 calories per ounce but has, instead, no fewer than 64 calories per ounce. (*Id.* ¶ 22.) Nor does Blue Ice have only 52 calories per serving; rather, Blue Ice has at least 96 calories per serving. (*Id.* ¶¶ 22–24.) Plaintiffs base their multiple claims on these alleged misrepresentations, as well as defendants' alleged failure to disclose the paid relationship between 21st Century and the Influencers. They purport to represent a nationwide class and subclasses applicable to Florida and Illinois. (*Id.* ¶¶ 107–08.) They seek damages of "at

least $11 per bottle" sold to these classes and subclasses, as well as declaratory and injunctive relief. (*Id.* ¶¶ 33, 132–34, 152, 167, 177–78, 183–84, 193(b)–(i).)

In support of their motion to dismiss, defendants broadly argue that plaintiffs (1) lack standing; (2) fail to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b); and fail plausibly to allege (3) any deceptive statements or misrepresentations, (4) actual damages, or (5) causation between the alleged violations and their alleged injuries. (*Id.* at 5, 9–10, 21.) Defendants also make several arguments that plaintiffs fail plausibly to allege elements necessary to sustain the alleged statutory violations or to establish liability under their common law theories. (*Id.* at 15–37.)

## **LEGAL STANDARDS**

### I.     **Rule 12(b)(1) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the court's subject-matter jurisdiction. As the party seeking to have its case heard in federal court, the plaintiff "bears the burden of demonstrating that the district court has subject-matter jurisdiction over [the] case[.]" *Thornley* v. *Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021) (citing *Schur* v. *L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009)). If the court determines that it lacks subject-matter jurisdiction, then "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### II.     **Rule 12(b)(6) Motion to Dismiss**

A motion under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678. In short, the allegations "must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555. In ruling on 12(b)(6) motions, the court accepts as

true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's

favor. *See Taha* v. *Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

## ANALYSIS

### III.    Standing

Article III of the Constitution "limits the jurisdiction of federal courts 'to the resolution of

'Cases' and 'Controversies.'''" *Brown* v. *Kemp*, 86 F.4th 745, 760–61 (7th Cir. 2023) (quoting

*TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 423 (2021)). At the outset of litigation, a controversy

exists if the plaintiff demonstrates that he has standing, meaning "a legally cognizable interest, or

personal stake, in the outcome of the action." *Genesis Healthcare Corp.* v. *Symczyk*, 569 U.S. 66,

71 (2013) (citations and quotation marks omitted). To demonstrate standing the plaintiff must

have suffered or be likely to suffer "an injury that (1) is concrete and particularized, (2) was or

will be caused by the defendant, and (3) likely will be remedied by a favorable judgment."

*Brown*, 86 F.4th at 761 (citing *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The

burden of establishing standing rests on the party invoking federal jurisdiction, and "each

element must be supported in the same way as any other matter on which the plaintiff bears the

burden of proof[.]" *Lujan* at 561. In other words, the plaintiff must establish standing "with the

manner and degree of evidence required at the successive stages of the litigation." *Id.* Thus, on a

motion to dismiss, the complaint must plausibly allege injury, causation, and redressability. *See*

*Silha* v. *ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015) (formally incorporating *Twombly* and

*Iqbal*'s "plausibility" requirement into analyses governing facial challenges to subject-matter jurisdiction on motions to dismiss under Rule 12(b)(1)).

Only the first element, injury, is at issue here, for any injury plaintiffs suffered was caused by defendant's allegedly fraudulent misrepresentations and is redressable via damages and/or injunctive relief. Defendants argue that plaintiffs have failed plausibly to allege an injury that is concrete and particularized. (Dkt. 71 at 9.) That the Blue Ice plaintiffs purchased "was subjectively not up to [their] expectations is immaterial." (*Id.* at 10.) Furthermore, defendants argue, any allegations relating to the manufacture, labeling, and advertising of Blue Ice are simply unrelated to plaintiffs' purchases because plaintiffs have not alleged that they "saw or relied upon" information about the manufacture, labeling, and advertising of Blue Ice prior to purchasing Blue Ice. (*Id.*) In sum, defendants argue, plaintiffs have failed plausibly to allege "an injury beyond personal dissatisfaction with a product purchased and an arbitrary claim that Blue Ice isn't worth the money paid." (*Id.*)

Plaintiffs respond that their injury has nothing to do with their personal dissatisfaction. Rather, their injury arises from being "promised something else than what was actually in the bottle[s]" of Blue Ice they purchased. (Dkt. 78 at 10.) The "difference in price between the product as advertised" and the product they received is, they argue, a "real and measurable" injury that "can be objectively measured." (*Id.*) For example, Blue Ice has at least 44 more calories per serving than advertised. (*Id.*) Furthermore, they argue, even if they were relying solely on subjective dissatisfaction to allege an injury, such allegations would be sufficient as a matter of law. (*Id.*) In short, both their statutory and common law theories, they contend, are based on measurable economic injuries widely recognized as cognizable for the purposes of standing. (Dkt. 78 at 10.)

In reply, defendants argue that plaintiffs have failed plausibly to allege an economic injury, for they have not alleged "the amount paid for the vodka."[5] (Dkt. 80 at 4.) Plaintiffs' allegations, they say, demonstrate "at best, only buyer's remorse," which is insufficient to constitute an injury under Article III.[6] (*Id.*)

Plaintiffs have the better of this argument, for a material difference between a product as advertised and as received constitutes a measurable economic injury for purposes of Article III. *See Flynn* v. *FCA US LLC*, 39 F.4th 946, 949–50 (7th Cir. 2022) (approving plaintiffs' "overpayment" theory of injury at pleadings stage where plaintiffs alleged "they paid more for their vehicles than they would have if they had known" about cybersecurity vulnerabilities); *Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V.*, 529 F. Supp. 3d 856, 862–63 (N.D. Ill. 2021) (defendant's refusal to issue refund, with or without contractual obligation, created economic injury); *Bonahoom v. Staples, Inc.*, No. 20 C 1942, 2021 WL 1020986, at *1, *3 (N.D. Ill. Mar. 17, 2021) (economic injury found in purchase of defective product that did "not function as advertised"); *Alea* v. *Wilson Sporting Goods Co.*, No. 17 C 498, 2017 WL 5152344, at *6 (N.D. Ill. Nov. 7, 2017) (same for defective product).

---

[5] The court notes that defendants do not argue in their opening brief that plaintiffs' failure to allege "the amount paid" for Blue Ice is relevant to the standing inquiry. The court has carefully reviewed defendants' standing argument (which spans fewer than two pages in their brief) and finds nothing that might be even liberally construed as making this argument. The argument is therefore waived. *See Bradley* v. *Vill. of Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023). Defendants' waiver is, however, practically irrelevant to the standing analysis, for the court has a duty, independent of the parties' arguments, to satisfy itself that a plaintiff has standing. *See Johnson* v. *U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 668 (7th Cir. 2015).

[6] Some of defendants' arguments seem attuned to plaintiffs' Original Complaint (dkt. 1) rather than to the Amended Complaint. For example, where the Original Complaint alleges only that Blue Ice "is not worth the high price [Pop] paid" and that Pop "paid a premium price for a substandard vodka product" (dkt. 1 ¶¶ 84, 86), the Amended Complaint specifically alleges that Blue Ice is worth "at least $11" less than the price paid (dkt. 60 ¶¶ 34, 67).

The two cases defendants cite do not hold otherwise. *Bell* v. *Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020), does not even address standing or injury and has no bearing on the question before the court. The other case, *Silha* v. *ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015), does resolve a question of standing, but the circumstances in *Silha* have little (if anything) in common with the circumstances here. In *Silha*, the Seventh Circuit considered whether an Article III injury was plausibly alleged where the plaintiffs were unaware that the defendants "profited from … information exchange programs" in which they had "consented to participate" when they took examinations administered by the defendants. *Id.* at 174. The court concluded that the allegations did not satisfy Article III because an "injury in fact cannot be based solely on a defendant's gain" but "must be based on a plaintiff's loss[,]" and the plaintiffs had "not alleged that they lost anything of value as a result of the alleged misconduct." *Id.* at 174–75.

That is not the case here, where plaintiffs allege that they understood that they would be receiving a product of a certain quality and with certain attributes but instead received a product that deviated from their expectations to the tune of "at least $11" per bottle. (Dkt. 60 ¶¶ 34, 67.) This is a classic economic injury through which standing invariably obtains.

## IV.    Federal Rule of Civil Procedure 9(b)

Complaints ordinarily need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Where a complaint's allegations sound in fraud, however, those allegations are held to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Camasta* v. *Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014). Although Rule 9(b) "'ordinarily requires describing the who, what, when, where, and how of the fraud[,]'" the

"precise level of particularity required … depends upon the facts of the case[.]" *Id.* at 737

(quoting *AnchorBank FSB* v. *Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)); *see also Uni*Quality,
Inc.* v. *Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (Rule 9(b) requires "the identity of the

person making the misrepresentation, the time, place, and content of the misrepresentation, and

the method by which the misrepresentation was communicated to the plaintiff") (quoting

*Bankers Tr. Co.* v. *Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). To be clear, Rule

9(b) expressly applies to *allegations*, not to *claims*, so only those allegations sounding in fraud

are held to the rule's "particularity" requirement; all other allegations must satisfy only *Twombly*

and *Iqbal*'s "plausibility" requirement, even if those allegations support a claim where fraud is

an essential element. *See Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan* v. *Buth*, 99 F.4th

928, 944–45 (7th Cir. 2024). When an allegation of fraud fails to satisfy Rule 9(b), the allegation

is disregarded. *See id* at 945; *Bankers Tr. Co.*, 959 F.2d at 684.[7]

Defendants argue that plaintiffs' Amended Complaint must be dismissed in its entirety

because it (1) lumps together the "'Influencers' and/or 'Defendants' as alleged violators," (2)

fails to allege whether plaintiffs viewed any alleged misrepresentations before purchasing Blue

Ice, and (3) fails to allege "the author, substance, or date/time of any alleged misrepresentation."

---

[7] Because Rule 9(b) is a federal procedural rule, it applies to all allegations of fraud "irrespective
of the source of subject matter jurisdiction or the state or federal nature of the claim." *High Road
Holdings, LLC* v. *Ritchie Bros. Auctioneers (Am.), Inc.*, No. 7 C 4590, 2008 WL 450470, at *3 (N.D. Ill.
Feb. 15, 2008) (citing *Hannah* v. *Plumer*, 380 U.S. 460 (1965), and *Christensen* v. *Cnty. of Boone*, 483
F.3d 454, 465–66 (7th Cir. 2007)). So too with plaintiffs' common-law theories of unjust enrichment and
breach of express warranty. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.* v. *Walgreen Co.*,
631 F.3d 436, 447–48 (7th Cir. 2011) (unjust enrichment); *In re Rust-Oleum Restore Mktg., Sales
Practices & Prods. Liab. Litig.*, 155 F. Supp. 772, 815 (N.D. Ill. 2016) (breach of express warranty). Only
plaintiffs' theory of negligent misrepresentation falls outside the auspices of Rule 9(b). *See Tricontinental
Indus., Ltd.* v. *PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) ("negligent
misrepresentation claim under Illinois law … is *not* governed by the heightened pleading standard of Rule
9(b)) (emphasis in original); *Siegel* v. *Shell Oil Co.*, 480 F. Supp. 2d 1034, 1041–42 (N.D. Ill. 2007)
(discussing how "the distinction between intentional fraudulent misrepresentation and negligent
misrepresentation" lies at "the periphery of Rule 9(b)[,]" collecting cases, and concluding that allegations
supporting negligent misrepresentation are generally not subject to Rule 9(b)).

(Dkt. 71 at 6–7.) Plaintiffs respond (1) that defendants' demand more than Rule 9(b) requires and (2) that the allegations in the complaint are sufficiently particular. (Dkt. 78 at 8.)

Before getting into the nuances of these arguments, the court observes that, even if any or all of plaintiffs' allegations of fraud fail to satisfy Rule 9(b), dismissing the case in its entirety would not be the proper remedy. First, as noted above, when an allegation comes up short with respect to Rule 9(b), the court simply disregards the allegation and does not *automatically* dismiss the claim. *See Appvion, Inc.*, 99 F.4th at 945 ("[I]f a court thinks a plaintiff has failed to plead fraud, it must 'disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated.'") (quoting *Lone Star Ladies Inv. Club* v. *Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)); *Bankers Tr. Co.*, 959 F.2d at 684.

Turning to the Amended Complaint's allegations of fraud, the court concludes that the allegations satisfy Rule 9(b). Defendants' make a perfunctory argument that plaintiffs need differentiate between the Influencers and other defendants to satisfy Rule 9(b) in this case. To be sure, a "complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, *generally* is insufficient" under Rule 9(b), *Sears* v. *Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (emphasis added) (quoting *Design Inc.* v. *Synthetic Diamond Tech., Inc.*, 674 F. Supp. 1564, 1569 (N.D. Ill. 1987)), but defendants do not explain how that general rule applies *in this case*. They do not identify what is lacking from the Amended Complaint. They merely assert that the lack of differentiation is "fatal" to plaintiffs' allegations of fraud without citing any legal authority or otherwise developing an argument based on the facts alleged (or not alleged). (Dkts. 71 at 7; 80 at 3.) As such, the argument is waived, *see United States* v. *McGhee*, 98 F.4th 816, 25 (7th Cir. 2024) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citations omitted), and the court will not

11

construct an argument on defendants' behalf, *see Econ. Folding Box Corp.* v. *Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them.").

### A.    Misrepresentations

The proper starting point under Rule 9(b) "is to discern the extent to which allegations in the Complaint are 'averments of fraud.'" *Siegel* v. *Shell Oil Co.*, 480 F. Supp. 2d 1034, 1041 (N.D. Ill. 2007). The Amended Complaint makes several allegations that may be reasonably read as alleging fraud, including that the Influencers fail to disclose "the material connection they have with the brand" and that defendants misrepresent Blue Ice as (1) "handcrafted"; (2) filtered four or five times; (3) better tasting than other vodkas; (4) having only 52 or 57 calories per ounce; (5) a "healthy product" that helps with personal fitness and weight management; and (6) produced at a distillery owned by 21st Century. (Dkt. 60 ¶¶ 3–5, 10, 12–16, 18, 20–26, 30–32, 43–44, 79–81, 84, 87.)

Before analyzing these allegations under Rule 9(b), the court must first address defendants' arguments that some of the underlying misrepresentations are not "misrepresentations" as a matter of law. (Dkt. 71 at 10–14.) Although what constitutes a "misrepresentation" may vary depending on the source of substantive law, *see Bober* v. *Glaxo Wellcome PLC*, 246 F.3d 934, 938–40 (7th Cir. 2001), a misrepresentation is, generally speaking, a representation that is "likely to deceive reasonable consumers" and mislead "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances[.]" *Bell*, 982 F.3d at 474–75 (quoting *Beardsall* v. *CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020)). Defendants make many arguments that plaintiffs alleged misrepresentations are not, as a matter of law or fact, misrepresentations, including some that

12

merit discussion, but most of their arguments are either waived or are improper at this stage of the litigation. Defendants argue, for example, that the lack of "volume or quantity of Blue Ice" in the Influencers' posts dooms any alleged misrepresentation regarding caloric content (dkt. 80 at 5), but this argument is raised for the first time only in reply and is therefore waived.[8] *See Bradley* v. *Vill. Of Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023)**.** Defendants also argue that they have never made any misrepresentations about "weight loss" or other "health benefits" (dkt. 80 at 6) and that Blue Ice is, in fact, "handcrafted," "filtered multiple times," and "manufactured as a 'private label'" (dkt. 71 at 8), but these arguments improperly challenge the factual accuracy of the allegations and are irrelevant at this stage of the litigation. *See Gunn* v. *Cont'l Cas. Co.*, 968 F.3d 802, 806–07 (7th Cir. 2020) (reminding that motion to dismiss under Rule 12(b)(6) tests legal sufficiency of complaint and is not proper vehicle for contesting factual allegations); *Taha*, 947 F.3d at 469 (court accepts factual allegations as true).[9]

The court likewise rejects defendants' contention that they never represented that Blue Ice "is healthier than an apple." (Dkt. 71 at 13.) While plaintiffs' allegation that Influencer Collins "compares vodka with an apple, suggesting that vodka is the healthier alternative" paraphrases the Influencer's actual statement (*i.e.*, "I make fit-friendly cocktails that have fewer calories than an apple.") (dkt. 60 ¶ 26), it is not for the court to decide on a motion to dismiss whether a consumer might or might not reasonably understand the Influencer's actual

---

[8] Even if the argument were not waived, the court would find it meritless in light of the allegations in the Amended Complaint, including, for example, that Influencers have variously claimed that Blue Ice has "only 52 calories *per serving*" and "52 calories *a serving*." (Dkt. 60 ¶ 23 (emphases added).)

[9] Defendants also argue that the alleged filtration misrepresentation fails as a matter of law because the Amended Complaint fails to allege that Blue Ice is *not* filtered four or five times (dkt. 71 at 12), but, as plaintiffs point out, the Amended Complaint does make that allegation at paragraph 33 (dkt. 78 at 2).

representation to suggest. Surely there may be consumers who might construe lower caloric content as "healthier," and just as surely there may be consumers who might not. But whether an interpretation is reasonable is a question of fact not generally to be answered by a judge on a motion to dismiss. *See Turubchuk* v. *S. Ill. Asphalt Co., Inc.*, 958 F.3d 541, 550–53 (7th Cir. 2020) (reversing summary judgment where district court's conclusions in negligent-misrepresentation claim "incorrectly stepped into the province of the jury").

The same is not true, however, regarding defendants' argument that any representation regarding taste is mere puffery. (Dkt. 71 at 36.) While plaintiffs allege that Blue Ice claims to be "the best tasting vodka" (dkt. 60 ¶ 10), the screenshots attendant to the allegations reveal that the Blue Ice website actually states, "We are handcrafted and American made with a singular goal – to create the best tasting vodka. Because taste is everything." (*Id.*) "Puffery comprises generalized, vague, nonquantifiable statements of corporate optimism." *Carvelli* v. *Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019). That is precisely the nature of 21st Century's representations relating to taste. 21st Century's "goal" of creating "the best tasting vodka" makes no quantifiable or verifiable promise but, rather, merely expresses 21st Century's "optimism" that it can achieve that "generalized" ambition. Even accepting as true plaintiffs' further allegation that, until 2022, the United States defined vodka as "a neutral spirit … without distinctive … taste" (*id.*), the court cannot avoid the conclusion that no reasonable consumer would view 21st Century's broad statement that "taste is everything" as promising to deliver "the best tasting vodka." In short, there is no misrepresentation regarding taste, and plaintiffs cannot rely on this alleged misrepresentation to support any of their claims.

Defendants' remaining arguments are that (1) "handcrafted" is "non-deceptive" as a matter of law, (2) all other alleged misrepresentations fail because "there are no … misleading

statements on the [Blue Ice] label, container, or packaging," and (3) the Influencers are not legally required to disclose any material connection to 21st Century or Blue Ice. (Dkts. 71 at 11, 13–15; 80 at 6–7.)

Plaintiffs counter, first, that "handcrafted" has not been found, at least within this district, to be "non-deceptive" as a matter of law; rather, whether "handcrafted" may be deceptive in a particular case depends, at least in part, on the size of the brand holding its products out as "handcrafted." (Dkt. 78 at 12–13.) Next, plaintiffs challenge defendants' narrow focus on representations made on the "actual label" on bottles of Blue Ice, reminding that the allegations speak to misrepresentations made on the Blue Ice website, secondary label, and bottle collar, as well as via social media. (*Id.* at 11.) Finally, plaintiffs argue that it is "undisputed that the Influencers failed to make any type of disclosure" of their connection to 21st Century in their social-media posts, which omissions are "deceptive acts" as a matter of law. (*Id.* at 15–17.)

       i.       **"Handcrafted"**

As plaintiffs point out, courts in this district have found that, where a spirits manufacturer is a relatively small brand, "a consumer could reasonably believe the phrase 'hand crafted'" on the spirit's label means that "it was not mass-produced." *Aliano* v. *Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 930–31 (N.D. Ill. 2015) (holding alleged "handcrafted" misrepresentation could be viewed as deceptive by a reasonable consumer). That finding stands in contrast to those of courts considering similar "handcrafted" or "handmade" representations where the spirits brand was relatively large. *See Salters* v. *Beam Suntory, Inc.*, No. 14 C 659, 2015 WL 2124939, at *2–3 (N.D. Fla. May 1, 2015) (rejecting allegation of "handmade" misrepresentation on motion to dismiss where plaintiffs "could not plausibly allege [that] they were unaware that Maker's Mark is mass marketed nationwide" and "[n]o reasonable person would understand

'handmade' in this context to mean substantial equipment was not used"). In other words, while it might not be plausible that a reasonable consumer would think a worldwide brand is "handcrafted," it is plausible that a reasonable consumer would think as much of a smaller brand. *See Twombly*, 550 U.S. at 569 & n.14.

In this case, neither district court decisions nor the factual allegations are on defendants' side. Defendants cite *Pye* v. *Fifth Generation, Inc.*, No. 14 C 493, 2015 WL 5634600 (N.D. Fla. Sept. 23, 2015), but it is not in tension with decisions of this district. In *Pye*, in express alignment with *Salters*, the court concluded that the use of the term "handmade" by Tito's Handmade Vodka was "puffery" that no reasonable consumer would read to mean that Tito's was either made by hand or made without the use of substantial equipment. *Id.* at *3. Indeed, despite defendants' efforts to rely exclusively on *Pye* to argue that "handcrafted" is "non-deceptive" as a matter of law, *Salters*, *Pye*, and *Aliano* are all in harmony on this issue. More important, the Amended Complaint alleges that Blue Ice is "manufactured as a 'private label' for 21st Century by … an alcohol distillery in Idaho that manufactures and bottles vodka for many other brands" (dkt. 60 ¶ 14), which is sufficient to indicate that Blue Ice is not a mass-marketed brand such as Makers' Mark or Tito's.

### ii. Misleading Statements on the Blue Ice Label, Container, or Packaging

Turning to defendants' next argument—that "there are no … misleading statements on the [Blue Ice] label, container, or packaging"—the court agrees with plaintiffs that this argument seems to sidestep plaintiffs' allegations that misrepresentations are made on the Blue Ice website, secondary label, and bottle collar, as well as on social-media posts. (Dkt. 78 at 11.) Regardless, to the extent the argument is directed at the secondary label and bottle collar, the court cannot credit it at this stage of the litigation. According to the Amended Complaint, the secondary label

16

claims that Blue Ice is "handcrafted" (dkt. 60 ¶ 17), and the court has already determined that whether "handcrafted" is misleading is a question to be resolved by the trier of fact. As to the bottle collar, the Amended Complaint includes images of the bottle collar that show representations that Blue Ice has either 52 or 57 calories per ounce and is "fit friendly." (Dkt. 60 ¶ 21.) Defendants do not claim that these representations cannot be deceptive as a matter of law, and the court will not step into the shoes of the trier of fact to find them "non-deceptive" as a matter of fact.

### iii.  Disclosure of Material Connections

As to defendants' final contention, that the Influencers are not legally required to disclose any material connection to 21st Century or Blue Ice, the court is again unpersuaded. Defendants argue, essentially, that plaintiffs cannot rely on FTC guidelines regarding advertising on social media to support their theory that the Influencers misled plaintiffs by failing to disclose their "material connections" to 21st Century because such guidelines are "not law" but merely "advisory in nature." (Dkts. 71 at 14–15; 80 at 6–7.) Since those guidelines do not proscribe conduct, defendants argue, the Amended Complaint fails to allege any non-disclosure conduct that might violate any of the state statutes upon which plaintiffs rely. (Dkt. 71 at 14–15.) Even if the guidelines did so, defendants add, they would be inapplicable here because the guidelines apply only to "endorsements," which plaintiffs have not alleged. (*Id.* at 14.)

The problem with defendants' argument is that there is no generally applicable federal common law that might help the court determine whether an alleged misrepresentation is deceptive as a matter of law. Rather, whether a representation is deceiving or misleading is determined by reference to the state law through which the claim is pursued. *See generally Erie R. Co.* v. *Tompkins*, 304 U.S. 64, 78–79 (1938); *Bober*, 246 F.3d at 938–40 (analyzing

deceptiveness of alleged acts and practices through standards developed by Illinois courts for claim brought under Illinois Consumer Fraud and Deceptive Business Practices Act). In this context, that means that neither the FTC Act nor its implementing regulations nor any guidelines promulgated to assist in its interpretation is itself a source of governing law. Rather, plaintiffs rely on the FTC Act, as well as its implementing regulations and guidelines, only to the extent that state statutes do: violations of the FTC Act "are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed" in the Amended Complaint. (Dkt. 60 ¶ 121.) Specifically, plaintiffs have here invoked the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et seq.*, the Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1 *et seq.*, the Illinois Uniform Deceptive Trade Practices Act (IUDTPA), 815 Ill. Comp. Stat. § 510/1 *et seq.*, the California Consumers Legal Remedy Act (CLRA), Cal. Civ. Code § 1750 *et seq.*, and the California Unlawful Competition Act (CUCL), Cal. Bus. & Prof. Code § 17200 *et seq.*

These statutes are among a larger group of state statutes that are "known as 'Little-FTC Acts' because they are patterned on" the FTC Act. *Bell*, 982 F.3d at 474 & n.1. While the FTC Act provides for only government enforcement of its prohibitions, the Little FTC Acts "provide private rights of action" to enforce their prohibitions of "unfair business practices, including deceptive advertising." *Id.* In their own ways and to different extents, these Little FTC Acts incorporate by reference the FTC Act and its implementing rules and regulations, as well as interpretations of the same set forth by the FTC and the federal courts. For example, violations of FDUTPA may be based not only on violations of FDUTPA itself "or the rules adopted under" it, but also on "[a]ny rules promulgated pursuant to the Federal Trade Commission Act," "[t]he standards of unfairness and deception set forth and interpreted by the Federal Trade Commission

or the federal courts[,]" or "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3). Similarly, ICFA states that, "[i]n construing [ICFA] consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 Ill. Comp. Stat. 505/2. The point here is not to survey all the specific ways in which the Little FTC Acts rely on or incorporate the FTC Act, its implementing rules and regulations, guidance promulgated by the FTC, or interpretations provided by the FTC or federal courts. Rather, the point is that this court's task, in analyzing whether a representation is deceptive, is to apply state law. In the process, the court may be required or permitted, depending on the specific state statute at issue, to consider interpretations of federal law promulgated by the FTC or federal courts.

The problem with defendants' argument is, therefore, that it focuses solely on the federal regulations and guidance without addressing how different state statutes make use of those regulations and guidance. This legal reality prevents the court from making sweeping decisions about whether the alleged failures to disclose are or are not deceptive. Instead, the court must undertake that analysis one state statute at a time, which the court will do in Section V, *infra*.[10]

In short, defendants' "guidance only" argument is not relevant to the analysis under Rule 9(b) although it may prove relevant to the analysis of the plausibility of the allegations vis-à-vis each state statute under Rule 12(b)(6).

---

[10] Because the proper analysis of the FTC Act, its implementing rules and regulations, and the relevant guidance must be performed state by state, the court need not reach, at this juncture, defendants' arguments that the operative FTC guidelines apply only to "endorsements" and that there are no allegations of endorsements in the Amended Complaint. (Dkt. 71 at 14.)

### B.    Particularity

With the allegedly fraudulent misrepresentations identified, the next step is to assess whether the Amended Complaint states with particularity the circumstances surrounding those misrepresentations.

Defendants argue that the Amended Complaint comes up short of Rule 9(b)'s particularity requirement in virtually every respect. Not only do plaintiffs fail to allege "the author, substance, or date/time of any alleged misrepresentation," they also fail to allege that they saw any of these alleged misrepresentations before purchasing Blue Ice. (Dkt. 71 at 6–7.) Specifically, defendants challenge the sufficiency of the allegations through a series of questions that, they believe, plaintiffs must answer if the allegations are to satisfy Rule 9(b):

> **Who:** Who are the Influencers followed? Who made posts that omitted disclaimers Plaintiffs alleged should have been included? Who did the Defendants … make statements to?
>
> **What:** What Blue Ice product (flavor and size) was purchased? What details give any substantiation to Plaintiffs' subjective assessment of the quality of Blue Ice? What Posts did Plaintiffs view and on what media? What express statements did Plaintiffs rely upon and who made them? What qualities of Blue Ice are being challenged? What are Plaintiff's injuries?
>
> **When:** When (a specific date) did Plaintiff(s) purchase Blue Ice? When did Plaintiff(s) consume Blue Ice? When did each Plaintiff follow each Influencer? When did Plaintiffs view Posts? When did Plaintiffs review the Blue Ice bottle labels(s)? When did Plaintiffs view the Blue Ice website?
>
> **Where:** Where did either Plaintiff purchase Blue Ice? Where did Defendants promise Blue Ice had health benefits?
>
> **How:** How much did each Plaintiff pay? How do Plaintiffs know or have any basis to allege that Blue Ice is not handcrafted or distilled? How is Blue Ice an insufficient "premium" vodka that does not support the price paid by Plaintiffs?

(Dkt. 71 at 7–8.) Defendants also rely extensively on *Pop* v. *Lulifama.com, LLC*, No. 22 C 2698, 2023 WL 4661977 (M.D. Fla. July 20, 2023), to argue by analogy that plaintiffs have failed to satisfy Rule 9(b). (*Id.* at 6–7.)

Plaintiffs respond that most of defendants' points are answered not only by the Amended Complaint's written allegations but also by the many screenshots of Instagram posts that incorporated therein. (Dkt. 78 at 8.) Furthermore, plaintiffs argue, defendants fail to cite any legal authority that would require plaintiffs to allege the answers to many of defendants' questions. (*Id.*) Rule 9(b), they argue, is applied "solely to the fraudulent or misleading statements," so plaintiffs need not plead with particularity, for example, (1) when they consumed Blue Ice or reviewed the Blue Ice labeling, (2) how much they paid for Blue Ice or how Blue Ice is an "insufficient 'premium' vodka that does not support the price paid," and (3) the "exact day and time" that they purchased Blue Ice. (*Id.*) Additionally, plaintiffs take issue with defendants' insistence that the Amended Complaint must particularly allege which Blue Ice products they purchased and when, for plaintiffs allege that "all bottles [of Blue Ice] sold during the Relevant Time Period have the same characteristics." (*Id.* at 8–9.)

At the threshold, the court agrees with plaintiffs that many of the particulars defendants demand fall outside Rule 9(b)'s orbit. Rule 9(b) is, indeed, concerned exclusively with the particulars relevant to allegations of fraud and therefore generally requires only "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Appvion, Inc.*, 99 F.4th at 944 (quoting *U.S. ex rel. Hanna* v. *City of Chi.*, 834 F.3d 775, 779 (7th Cir. 2016)). Many of the questions defendants present are thus not relevant to the Rule 9(b) analysis. It is not relevant, for example, what Blue Ice product was purchased since the alleged

misrepresentations allegedly apply to all Blue Ice products. Nor is Rule 9(b) concerned with when plaintiffs followed each Influencer, when and where plaintiffs purchased and consumed Blue Ice, how much they paid for it, what qualities of Blue Ice they are challenging, why they allege that Blue Ice is not a "premium" vodka, how they "know or have any basis to allege that Blue Ice is not handcrafted or distilled," or how they were injured by their purchases. To the extent that this information is relevant to plaintiffs' case, the Amended Complaint's allegations must satisfy only the *Twombly-Iqbal* "plausibility" standard; they need not also satisfy Rule 9(b)'s "particularity" requirement.

Of defendants' remaining questions, many sweep too broadly. For example, alleging the identities of the Influencers plaintiffs "follow" on social-media platforms is more than Rule 9(b) requires; the rule is concerned only with "the identity of the [Influencer] making the misrepresentation," *see Appvion, Inc.*, 99 F.4th at 944. Likewise, Rule 9(b) is not directly concerned with who *made* the social-media posts that allegedly omitted necessary disclaimers; the rule requires only "the identity of the person making the misrepresentation," *id.*, so who composed or created a post is only relevant to the extent that the same individual was responsible for making the misrepresentation.

To be sure, some of defendants' questions challenge the sufficiency of allegations with which Rule 9(b) is concerned, but defendants' scattershot framing seems to confuse the several distinct inquiries courts have developed to apply Rule 9(b). While the rule is concerned with the "who, what, when, where, and how" of the alleged fraud—"the first paragraph of any newspaper story," *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.* v. *Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quoting *United States ex rel. Lusby* v. *Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)), this shorthand formulation is not meant to suggest that every possible

who, what, where, when, or how within the alleged factual circumstances must be stated with particularity; rather, it is meant only to distill the specific inquiries under Rule 9(b): the *who* is "'the identity of the person making the misrepresentation'"; the *what* is "the 'content of the misrepresentation'"; the *when* is "'the time' the misrepresentation occurred"; the *where* is "'the place' of the misrepresentation"; and the *how* is "the 'method by which the misrepresentation was communicated to the plaintiff[.]'" *Siegel*, 480 F. Supp. 2d at 1043 (quoting *Sears*, 912 F.2d at 893). With those inquiries now clarified, the court assesses whether each allegation of fraud possesses the requisite particularity.

### i. "Handcrafted"

The Amended Complaint alleges that all defendants promote Blue Ice as "handcrafted." (Dkt. 60 ¶¶ 3, 12.) The *who* is thus all defendants, and the *what* is that Blue Ice is "handcrafted." As to *where* and *how*, "Blue Ice clearly states on its secondary label"—a label additional to that expected on a product "that seems to be signed by a real person"—that Blue Ice "is 'handcrafted' to suggest it is made in small quantities and distilled in a pot still, under constant supervision of a human." (*Id.* ¶¶ 17, 30–31.) The same representation is made on the website www.blueicevodka.com and in an Instagram post by Influencer Alexa Collins. (*Id.* ¶¶ 10, 79 ("Blue Ice … is handcrafted from Idaho Russet Potatoes!".) The Amended Complaint therefore alleges three different methods by which the "handcrafted" representation might have been communicated by defendants to plaintiffs: via the Blue Ice website, via Instagram posts, and via the secondary label.

The only remaining question posed by Rule 9(b) is *when* these three communications allegedly took place. Due to the nature of the methods used (*i.e.*, website, social-media post, and label), the focus is not on when defendants published the alleged misrepresentations but on when

plaintiffs *received* those misrepresentations. The Amended Complaint does not allege with specificity when plaintiffs viewed either the Blue Ice website, the Influencers' social-media posts, or the various labels and other marketing materials attached to bottles of Blue Ice; rather, plaintiffs allege only that they "saw Defendants' marketing and online advertising materials prior to purchasing Blue Ice" and "relied on Defendants' misrepresentations and omissions" when making their purchases. (Dkt. 60 ¶¶ 102, 146, 149.) In the context of false advertising, however, Rule 9(b) does "not require … the precise date, time, and location that [the plaintiff] saw the advertisement or every word that was included on it[.]" *Camasta*, 761 F.3d at 737. All that matters is that the alleged misrepresentation was made to the plaintiff "*before* the purchase of the merchandise." *Id.* at 738 (emphasis in original); *see also L. Zingerman, D.D.S., P.C.* v. *Nissan N. Am., Inc.*, No. 14 C 7835, 2015 WL 1840952, at *6 (N.D. Ill. Apr. 20, 2015) (sufficient that plaintiff aware of "representations prior to purchasing"). Plaintiffs' allegations are therefore sufficient to satisfy the *when* under Rule 9(b).[11]

### ii. Filtration

The Amended Complaint alleges that 21st Century "represents to consumers that Blue Ice is … 'filtered 5 times'" (dkt. 60 ¶ 12) and, separately, that it is "filtered four times" (*id.* ¶ 32). The *who* is thus 21st Century, and the *what* is that Blue Ice is filtered four or five times. As to

---

[11] With respect to the various labels and other marketing materials attached to bottles of Blue Ice, even if plaintiffs had not alleged that they had viewed these materials before making their purchases, the court would be compelled at this stage of the litigation to draw the reasonable inference that plaintiffs viewed those materials at the time of their purchases. *See Reyes* v. *Upfield US Inc.*, --- F. Supp. 3d ----, 2023 WL 6276685, at *5 (S.D.N.Y. Sept. 26, 2023) (allegation plaintiff relied on specific representations on label supported reasonable inference plaintiff viewed label before purchasing product); *Duchnik* v. *Tops Mkts., LLC*, No. 22 C 399, 2023 WL 4827951, at *7 (W.D.N.Y. July 6, 2023) (plaintiff's description of allegedly misleading statements on label allowed reasonable inference plaintiff "saw the misleading statements" and then purchased product) (quoting *Dash* v. *Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014)); *Mason* v. *Smithkline Beecham Corp.*, No. 05-1252, 2010 WL 2697173, at *9 (C.D. Ill. July 7, 2010) (where plaintiff could not recall reading label, reasonable inference at summary judgment was that she had).

*where* and *how*, plaintiffs allege that this representation is made on the Blue Ice website. (*Id.* ¶ 12.) Finally, as with "handcrafted," the *when* is satisfied by plaintiffs' allegation that they viewed the website "prior to purchasing Blue Ice" (*id.* ¶ 149), which is, again, sufficiently particular in the false-advertising context. *See Camasta*, 761 F.3d at 737–38; *L. Zingerman*, 2015 WL 1840952, at *6.

### iii. Calories

The alleged misrepresentation with respect to calories is one of the most particularly alleged in the Amended Complaint. The allegations state that all defendants have misrepresented "the number of calories" in Blue Ice. (Dkt. 60 ¶ 3.) More specifically, on each bottle of Blue Ice there is a "collar, a detachable label-like marketing material" that claims Blue Ice has either 52 or 57 calories per ounce, and on Instagram the Influencers have made similar representations, claiming that Blue Ice has either 52 or 57 calories per ounce or "52 calories per serving." (*Id.* ¶¶ 21–25, 51–53.) The *who* is all defendants; the *what* is that Blue Ice has as few as 52 calories per serving and as many as 57 calories per ounce; and the *where* and *how* are on Instagram and the "bottle collar." And again, plaintiffs plead the *when* with sufficient particularity by alleging that they "saw Defendants' marketing and online advertising materials prior to purchasing Blue Ice" and "relied on Defendants' misrepresentations and omissions" when making their purchases.[12] (Dkt. 60 ¶¶ 86, 102, 146, 149.) *See Camasta*, 761 F.3d at 737–38; *L. Zingerman*, 2015 WL 1840952, at *6.

---

[12] As already noted, *see supra* note 11, even if plaintiffs had not alleged seeing the marketing materials before purchasing Blue Ice, the court would be compelled at this stage of the litigation to draw the reasonable inference that plaintiffs viewed the bottle collar at the time they purchased Blue Ice.

### iv.      Health Benefits

The various alleged misrepresentations regarding the health benefits of Blue Ice also meet Rule 9(b)'s particularity requirement. The Amended Complaint alleges that 21st Century and the Influencers have deceptively, unfairly, and misleadingly "suggest[ed] that there are health benefits in consuming vodka" and falsely claimed that Blue Ice is "'fit-friendly'" and has "health benefits" that help with fitness and "weight management." (Dkt. 60 ¶¶ 3, 20–21, 23, 25, 43, 81.) Influencer Collins has also claimed that, with Blue Ice, she makes "fit-friendly cocktails that have fewer calories than an apple." (*Id.* ¶ 26 & n. 5.) The *who* is thus all defendants, and the *what* is that Blue Ice has these various health-related attributes. As to *where* and *how*, plaintiffs allege that the bottle collar misrepresents that Blue Ice is "fit-friendly" and that in Instagram posts the Influencers have misrepresented that Blue Ice is a "fit friendly vodka" that "can definitely help you stay fit" and can be used to "make fit-friendly cocktails that have fewer calories than an apple." (*Id.* ¶¶ 21, 23, 25–26.) Finally, that plaintiffs allege that they saw the Influencers' posts and defendants' "marketing and online advertising materials prior to purchasing Blue Ice" is sufficient to satisfy the *when* under Rule 9(b).[13] (*Id.* ¶¶ 86, 97–98, 101–02, 146, 149.) *See Camasta*, 761 F.3d at 737–38; *L. Zingerman*, 2015 WL 1840952, at *6.

### v.       Distillery

Regarding the distillery used to manufacture Blue Ice, the Amended Complaint alleges that 21st Century "mislead[s] consumers regarding … the true nature of its operations" by representing that Blue Ice is manufactured in a distillery owned by 21st Century or the Blue Ice "brand" and "bearing the name 'Blue Ice Vodka." (Dkt. 60 ¶¶ 12–13, 16.) 21st Century is the *who*, and that Blue Ice is produced at 21st Century's own distillery is the *what*. As to *where* and

---

[13] *See supra* notes 11 and 12.

*how*, the Amended Complaint alleges that these misrepresentations are made on the Blue Ice website. (*Id.* ¶¶ 12–13.) Plaintiffs' allegations that they viewed the website "prior to purchasing Blue Ice" are, again, sufficient to satisfy the *when*. (*Id.* ¶¶ 97–98, 101–02, 146, 149.) *See Camasta*, 761 F.3d at 737–38; *L. Zingerman*, 2015 WL 1840952, at *6.

### vi.    Material Connection Between 21st Century and the Influencers

Finally, as to the relationship between 21st Century and the Influencers, the Amended Complaint alleges that the Influencers misrepresent "the material connection they have with the brand by promoting Blue Ice products without disclosing the fact that they were paid to do it" and instead "pretending [to be] disinterested consumers." (Dkt. 60 ¶¶ 4–5, 44, 79–80, 84, 87.) The Influencers are therefore the *who*, and their failure to disclose their "material connection" to Blue Ice and 21st Century is the *what*. As to *where* and *how*, the Amended Complaint alleges that the Influencers have never disclosed the existence of a paid relationship on any social-media post promoting Blue Ice. (*Id.*) Finally, as with the Influencers' other alleged misrepresentations, the *when* is satisfied by plaintiffs' allegations that they viewed the Instagram posts "prior to purchasing Blue Ice." (*Id.* ¶¶ 86, 97–98, 101–02, 146, 149.) *See Camasta*, 761 F.3d at 737–38; *L. Zingerman*, 2015 WL 1840952, at *6.

In short, the Amended Complaint alleges with sufficient particularity that all alleged misrepresentations were communicated to plaintiffs before they purchased Blue Ice by either 21st Century, the Influencers, or all defendants via either the Blue Ice website, the Blue Ice labeling and marketing materials, or the Influencers' Instagram posts.

Still, defendants argue, this court should follow *Pop* and find that the Amended Complaint fails outright to allege with particularity the circumstances of the allegedly fraudulent misrepresentations. (Dkt. 71 at 6–7, 16–17.) In *Pop*, the plaintiff (who is also one of the named

27

plaintiffs in this case) sued a swimwear company and a number of social-media influencers under FDUTPA and the common-law theories of unjust enrichment and negligent misrepresentation, alleging that the defendants had failed to disclose a "material relationship" between the swimwear company and the influencers and that he had purchased their products solely because of their misleading advertisements on social media. 2023 WL 4661977, at *1. The plaintiff claimed that the products were "of an inferior quality," below "the expectations he had and the price he paid." *Id.* (cleaned up). The case was originally filed as a class action in state court, but the defendants removed to federal court and then moved to dismiss under Rule 12(b)(6). *Id.* at *2. Applying Rule 9(b), the court found that the allegations were not pleaded with sufficient particularity to support satisfy FDUTPA. *Id.* at *3. In particular, the court found that the plaintiff's failures to identify "which posts from the Influencer Defendants led him to purchase" the products and "any instances in which the Influencers posted any allegedly misleading advertisements" and his failure to allege "whether he viewed the alleged misrepresentations *at all* before purchasing the allegedly defective products" were fatal to his claim. *Id.* (emphasis added) (cleaned up).

Defendants' analogy to *Pop* is not persuasive for two reasons. First, some of the Rule 9(b) inadequacies that the *Pop* court identified relate to allegations that are, generally, not subject to Rule 9(b). For example, the *Pop* court applied Rule 9(b) to the causation element under FDUTPA, *id.* at *3, but neither causation nor reliance generally falls within the relatively narrow confines of Rule 9(b). *See Appvion, Inc.*, 99 F.4th at 944–45. The same is true with respect to the "material connection" between the defendants. In finding that the plaintiff in *Pop* failed to "provide[] any details of the [swimwear company's] alleged scheme to pay the Influencer Defendants to promote [the swimwear] products[,]" the court there seems to have strayed beyond

Rule 9(b)'s focus on *allegations*, stating that the plaintiff had "failed to plead with particularity any *element* of his [FDUTPA] *claim*." 2023 WL 4661977, at *3 (emphases added). The *Pop* court surely had its reasons for applying Rule 9(b) to such allegations, or lack thereof, but those reasons are not articulated in the *Pop* opinion, and this court cannot discern—and defendants do not offer—any reason to apply Rule 9(b) so broadly to the Amended Complaint in this case.

Second, the Rule 9(b) analysis is necessarily fact-bound, *see Camasta*, 761 F.3d at 737, and many of the factual allegations wanting in *Pop* are present in the Amended Complaint in this case. For example, where in *Pop* the plaintiff had failed to allege "whether he viewed the alleged misrepresentations *at all* before purchasing the allegedly defective products," 2023 WL 4661977, at *3 (cleaned up), plaintiffs here have alleged that they "saw Defendants' marketing and online advertising materials prior to purchasing Blue Ice" and "relied on Defendants' misrepresentations and omissions" when making their purchases (dkt. 60 ¶¶ 102, 146, 149). As already discussed, this is sufficient in the context of false advertising, *see Camasta*, 761 F.3d at 737–38; *L. Zingerman*, 2015 WL 1840952, at *6. Likewise, as already discussed, the Amended Complaint alleges multiple "instances in which the Influencers posted … allegedly misleading advertisements," *see Pop*, 2023 WL 4661977, at *3, and alleges that plaintiffs viewed not only these posts but also the Blue Ice website, secondary label, and bottle collar prior to making their purchases. (Dkt. 60 ¶¶ 102, 146, 149.) Put simply, *Pop* does not persuade the court that the Amended Complaint fails to meet Rule 9(b)'s particularity requirement.

## V.    Failure to State a Claim Under Rule 12(b)(6)

Having determined that plaintiffs have standing and that their allegations of fraud satisfy Rule 9(b), the court now turns to defendants' challenges to the sufficiency of the allegations vis-à-vis the several state statutes and common law theories upon which plaintiffs rely.

### A. Count I: FDUTPA

FDUTPA requires a plaintiff plausibly to allege three elements: (1) "a deceptive act or unfair practice;" (2) "causation;" and (3) "actual damages." *Stewart Agency, Inc.* v. *Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019). The Florida Supreme Court "has defined 'deception' as 'a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Id.* (emphases omitted) (quoting *PNR, Inc.* v. *Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

Furthermore, as noted above, FDUTPA states that a violation of the act "may be based upon … [a]ny rules promulgated pursuant to the Federal Trade Commission Act," "[t]he standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts[,]" or "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3); *see also Porsche Cars N. Am., Inc.* v. *Diamond*, 140 So. 3d 1090, 1096–97 (Fla. Dist. Ct. App. 2014) (recognizing that FDUTPA incorporates by reference "standards of … deception set forth and interpreted by the [FTC] or the federal courts"). To be clear, FDUTPA does not, and constitutionally cannot, automatically adopt and incorporate all standards announced by the FTC or the federal courts, *see id.* at 1097; rather, whenever the Florida legislature amends FDUTPA—as it last did on July 1, 2017, *see* Fla. Stat. § 501.203—any federal standards not specifically rejected by the legislature are incorporated into FDUTPA "[b]y operation of law" through such amendments, *see Porsche Cars N. Am.*, 140 So. 3d at 1097. Thus, such standards and interpretations set forth prior to July 1, 2017, are incorporated into FDUTPA, and this court must accord those standards "'due consideration and great weight' when construing FDUTPA." *Id.*

Under FDUTPA, there are thus two avenues to plausibly alleging a "deceptive act or unfair practice": a plaintiff may allege (1) "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment[,]" *PNR, Inc.*, 842 So. 2d at 777 (citations omitted), or (2) a violation of (a) "[a]ny rules promulgated pursuant to the Federal Trade Commission Act," (b) "standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts[,]" or (c) "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices[.]" Fla. Stat. 501.203(3)(a)–(c).[14] Again, the second avenue is only open where the relevant rule, standard, law, statute, regulation, or ordinance had been announced prior to the most recent amendment to FDUTPA. *See Porsche Cars N. Am.*, 140 So. 3d at 1097–98 (finding 1980 Policy Statement by FTC establishing definition of "unfairness" had been "incorporated into Florida law in the 1983 amendments to FDUTPA and re-adopted by [] subsequent amendments" and holding "a Federal Trade Commission and federal court interpretation [does not] stop[] being authoritative in Florida if it becomes codified into federal law"). Where a source extrinsic to FDUTPA defines the "deceptive act," courts refer to that extrinsic source as a *per se* or "predicate" basis for a violation of FDUTPA. *Naples Motorcoach Resort Homeowners Ass'n, Inc.* v. *JG&M Props., LLC*, 363 So. 3d 1184, 1187 (Fla. Dist. Ct. App. 2023).

---

[14] *See, e.g.*, *Naples Motorcoach Resort Homeowners Ass'n, Inc.* v. *JG&M Props., LLC*, 363 So. 3d 1184, 1187–89 (Fla. Dist. Ct. App. 2023) ("Florida statutory construct[s] relating to unlicensed real estate broker activity" not incorporated into FDUTPA because they were "totally unrelated to the scope of FDUTPA" in that they were not "designed to protect purchasers from unfair competition or deceptive trade practices") (citations omitted); *State* v. *Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1259–60 (Fla. Dist. Ct. App. 2007) (violation of Florida Administrative Code "is a *per se* violation" of FDUTPA); *Millennium Commc'ns & Fulfillment, Inc.* v. *Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000) ("Federal Trade Commission standard for deceptive advertising" articulated by Ninth Circuit in *Southwest Sunsites, Inc.* v. *FTC*, 785 F.2d 1431 (9th Cir. 1986), incorporated into FDUTPA via Fla. Stat. 501.203(3)(b)).

Here, plaintiffs seek to establish a "deceptive act" via both avenues. They first allege that defendants' misrepresentations of "the qualities of Blue Ice" are deceptive acts directly under FDUTPA. (Dkts. 60 ¶¶ 123–24, 130–31; 78 at 20.) Plaintiffs further allege that the Influencers' failures to disclose their material connections to 21st Century and 21st Century's misrepresentations on Blue Ice's secondary label and bottle collar are violations of the FTC Act, 27 C.F.R. § 4.39(a)(1), 16 C.F.R. § 255.5, and related guidance and are, therefore, *per se* deceptive acts under FDUTPA. (Dkts. 60 ¶¶ 84, 125–29; 78 at 20.)

Defendants argue that plaintiffs fail plausibly to allege any element of a claim brought under FDUTPA. (Dkt. 71 at 22.) They contend that (1) there is no "factual basis" for any misrepresentation; (2) the court should adopt the *Pop* court's rejection of 16 C.F.R. § 255.5 as a potential predicate under FDUTPA; (3) plaintiffs erroneously cite to 27 C.F.R. § 4.39(a)(1) when the pertinent regulation is 27 C.F.R. § 5.142, under which plaintiffs cannot establish a "misleading statement on the label, container, or packaging"; (4) plaintiffs fail plausibly to allege a "traditional violation" of FDUTPA in that they do not allege any "representation, omission, or practice that is likely to mislead the consumer" as plaintiffs erroneously rely "solely" on FTC guidelines to support the alleged failures to disclose and plaintiffs do not allege that they ever "viewed anything before the purchase or that any Influencer made a representation regarding quality; (5) causation is wanting because plaintiffs do not connect the alleged failures to disclose with the allegedly inferior quality of Blue Ice and because plaintiffs do not allege any differences between the Blue Ice they received and "what they presumably saw in" the Instagram posts or that the Influencers made any statements about the quality of Blue Ice; and (6) actual damages cannot be based on plaintiffs' "subjective dissatisfaction" with Blue Ice. (Dkt. 71 at 13, 17–21.)

As with the question of particularity under Rule 9(b), defendants rely heavily on *Pop* to support many of these arguments. (*Id.* at 13–22.)

Plaintiffs do not respond to defendants' arguments regarding 27 C.F.R. § 4.39(a)(1) and 27 C.F.R. § 5.142. It thus appears that plaintiffs have abandoned their theory that Section 4.39 may serve as a basis for a *per se* violation of FDUTPA. *See Levy* v. *W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022) (recognizing plaintiff may abandon legal theory on motion to dismiss); *Mach* v. *Will Cnty. Sheriff*, 580 F.3d 495, 501–502 (7th Cir. 2009) (same on motion for summary judgment). Plaintiffs do respond, however, to defendants' other arguments, arguing that (1) they have plausibly alleged misrepresentations; (2) even "interpretations" under the FTC Act are entitled to "due consideration and great weight" when analyzing an allegedly deceptive act under FDUTPA; (3) the allegations present numerous deceptive acts not present in *Pop* and capable of sustaining a "traditional violation" of FDUTPA; (4) causation is established by plaintiffs' alleged reliance on defendants misrepresentations and omissions when purchasing Blue Ice; and (5) the Amended Complaint plausibly alleges actual damages based on the difference between the product as expected and as received. (Dkt. 78 at 15–22.) Plaintiffs also argue that the facts of this case differ significantly from those in *Pop*. (*Id.* at 18.)

At the threshold, the court agrees with plaintiffs that they have indeed plausibly alleged a "factual basis" for multiple misrepresentations. Although defendants contend otherwise, they point to no legal authority to suggest that misrepresentations under FDUTPA need be pleaded with greater particularity than with that required under Rule 9(b), nor do they make any argument that the factual allegations are somehow insufficient as a matter of law.[15]

---

[15] The one case defendants cite, *Blair* v. *Wachovia Mortg. Corp.*, No. 11 C 566, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012), merely stands for the unassuming proposition that plaintiffs must make factual allegations sufficient to support a predicate violation that might trigger a *per se* violation of FDUTPA.

### i. *Per Se* Violation Via 16 C.F.R. § 255.5

Turning to whether 16 C.F.R. § 255.5 can serve as a predicate for a *per se* violation of FDUTPA, one must first distinguish between the different versions of Section 255.5 that are in play. While plaintiffs seem to rely on a version promulgated in 2023, the court agrees with defendants that the "applicable" version is the one enacted in 2009 (dkt. 71 at 14), for only regulations and guidance promulgated by the FTC prior to the last amendment of FDUTPA are incorporated by operation of law. *See Porsche Cars N. Am.*, 140 So. 3d at 1097. Plaintiffs do not contest that the 2009 version is applicable, so any counterargument they might have made is waived. *See Bradley*, 59 F.4th at 897–98 (counterarguments waived if party fails to respond).

The remaining question, however, is whether the 2009 version of Section 255.5 can serve as the basis for a *per se* violation of FDUTPA. Defendants argue that this court should follow the *Pop* court on this issue and hold that the 2009 version of Section 255.5 cannot perform that function. (Dkt. 71 at 18.) The court agrees. In *Pop*, the plaintiff alleged a *per se* violation of FDUTPA with Section 255.5 serving as the predicate. 2023 WL 4661977, at *4. The court rejected that theory because "Section 255.5 is a *guide* that does not proscribe conduct, and, as such, … is not a rule promulgated pursuant to the FTC Act or a regulation that proscribes unfair methods of competition." *Id.* (emphasis added). Put differently, guides like Section 255.5 are not law; rather, they are only "administrative interpretations *of laws* administered by the [FTC] for the guidance of the public in conducting its affairs in conformity with legal requirements." *Id.* (quoting 16 C.F.R. § 1.5) (emphasis added); *see also* 16 C.F.R. § 255.0(a) ("The Guides in this part represent administrative interpretations of laws enforced by the Federal Trade Commission for the guidance of the public in conducting its affairs in conformity with legal requirements.").

The *Pop* court thus concluded that, although Section 255.5 had been incorporated into FDUTPA, it could not support a *per se* violation of FDUTPA because it was itself guidance, not law.

This reasoning aligns with that of the Florida Court of Appeals in *Porsche Cars North America* v. *Diamond*, 140 So. 3d 1090 (Fla. Dist. Ct. App. 2014). In *Porsche*, the court considered whether a Policy Statement promulgated by the FTC in 1980 had been incorporated into FDUTPA. *Id.* at 1096. Because the Policy Statement had issued prior to multiple amendments to FDUTPA, the court held that it had indeed been incorporated under Fla. Stat. § 501.203(3)(b): "By operation of law," the Policy Statement "was incorporated into Florida law in the 1983 amendments to FDUTPA and re-adopted [FDUTPA's] subsequent amendments." *Id.* at 1097. Incorporation did not, however, mean that the Policy Statement became more than a policy statement once the Florida Legislature amended FDUTPA. Indeed, the court rejected an argument that later codification of the Policy Statement by Congress into federal statutory law had any effect on the Policy Statement's position as a guiding interpretation under Florida law. *Id.* at 1097–98. In effect, once a policy statement, always a policy statement.

Concluding that the 2009 version of Section 255.5 does not have the force of law necessary to sustain a *per se* violation of FDUTPA does not, however, end the analysis. Although FTC guidance remains only guidance when incorporated into FDUTPA, guidance still has a role to play where, as here, a plaintiff pursues a "traditional violation" theory. As plaintiffs point out (dkt. 78 at 19), the Florida Legislature has directed that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [Section] 5(a)(1) of the Federal Trade Commission Act" when courts are construing "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. Thus, while a *per se* violation based on Section 255.5 is off the table, the court

must still afford Section 255.5's interpretive guidance "due consideration and great weight" when deciding whether plaintiffs have plausibly alleged a "deceptive act" in support of their "traditional violation" theory under FDUTPA. *Accord Porsche Cars N. Am.*, 140 So. 3d at 1097 (incorporated Policy Statement "entitled to 'due consideration and great weight' when construing FDUTPA) (quoting Fla. Stat. § 501.204(2)).[16]

### ii.    "Traditional Violation" Under FDUTPA

In the absence of a predicate supporting a *per se* violation of FDUTPA, a plaintiff may plausibly allege a "deceptive act" by way of "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc.*, 842 So. 2d at 777.

Plaintiffs here allege both representations and omissions that might meet that standard. First, they allege that defendants promote Blue Ice as "'handcrafted,'" a term that "is usually reserved for artisanal fermentation and distillation," in order "to suggest that [Blue Ice] is made in small quantities and distilled in a pot still, under constant human supervision" when Blue Ice is, in fact, "made by machines" in a distillery that "can produce close to one million cases (12 million bottles) per year." (Dkt. 60 ¶¶ 17–19.) Second, plaintiffs allege that 21st Century represents that Blue Ice is filtered four or five times, when it is, in fact, filtered only once. (*Id.* ¶¶ 12, 32–33.) Third, plaintiffs allege that defendants represent Blue Ice as having either 52 or 57 calories per ounce or 52 calories per serving when, in fact, Blue Ice has at least "64 calories per ounce and 96 calories per serving." (*Id.* ¶¶ 22–25, 51–53.) Fourth, plaintiffs allege that defendants represent Blue Ice as a "healthy product" with health benefits that help with personal

---

[16] *Pop* does not hold otherwise. Since the plaintiff there alleged only a *per se* violation of FDUTPA via Section 255.5, the *Pop* court had no occasion to consider the applicability of Section 255.5 to a "traditional violation" theory.

fitness and weight management when Blue Ice, like all vodkas, actually "poses significant health risks" when consumed excessively. (*Id.* ¶¶ 20–21, 23, 25–29, 43, 81.) Fifth, they allege that 21st Century represents on its website that Blue Ice is made in a distillery owned by 21st Century when Blue Ice is, in fact, manufactured in a distillery owned and operated by Distilled Resources Inc. (*Id.* ¶¶ 12–14, 16, 18.) Finally, plaintiffs allege that the Influencers failed to disclose any "material connection" with 21st Century and Blue Ice when the Influencers are, in fact, paid by 21st Century to promote Blue Ice. (*Id.* ¶¶ 4–5, 16, 44, 79–80, 84, 87.)

Under FDUTPA, the pertinent question is whether these representations and omissions are "likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc.*, 842 So. 2d at 777. In addition to the arguments the court has already addressed, *see supra* Section IV.A, defendants also scatter throughout their memorandum several arguments that might be construed as speaking to the issue of "deception" under FDUTPA. First, they argue that "it is impossible for Plaintiffs to assert that any reasonable customer was or has the capacity to be deceived" by any of "Plaintiffs' fanciful interpretations of the label and [social-media] Posts." (Dkt. 71 at 13.) Defendants do not, however, develop this argument. It is therefore waived. *See McGhee*, 98 F.4th at 825.[17]

---

[17] Even if the argument were not waived, the court would not find it generally persuasive. First, the court has already addressed and rejected this argument with respect to the "handcrafted" representation. *See supra* Section IV.A.i. As to the alleged misrepresentations regarding filtration and caloric content, the court finds it nearly frivolous to argue that a reasonable consumer might not be deceived by defendants' representations that Blue Ice is filtered multiple times or has as few as 52 calories per serving. These representations are specific and unambiguous and simply cannot be given to "fanciful interpretation." Put another way, these representations are the antithesis of puffery. *See Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183–84 (2015) (distinguishing between "mere puffery" and "verifiable" representations); *Carvelli*, 934 F.3d at 1318 (defining puffery to include "nonquantifiable" representations). With respect to the alleged distillery misrepresentation, it is difficult to comprehend how a reasonable consumer could not be deceived by 21st Century's representation on the Blue Ice website, where 21st Century has allegedly doctored a photograph of the distillery by placing its own logo over the logo of the actual distillery. (Dkt. 60 ¶¶ 12–13.) As to representations that Blue Ice has health benefits that may help with personal fitness and weight

Defendants also argue that, even if Section 255.5 has any bearing on the analysis, it applies only to "endorsements," which, they contend, are absent from the Influencers' posts. (Dkt. 71 at 14.) As defendants read the Amended Complaint, "there is no allegation of an endorsement," and "a photograph [of an Influencer] holding Blue Ice or mentioning [that] a cocktail was made with Blue Ice … is not an endorsement or advertisement within the meaning of Section 255.5. (*Id.*)

Plaintiffs dispute this reading of the Amended Complaint. The Influencers, they argue, "are acting as endorsers for 21st Century," for "it is clear that the Influencers are pretending to drink Blue Ice and promoting the vodka." (Dkt. 78 at 15.) Moreover, even if it is correct as a matter of law that a photograph of an Influencer holding Blue Ice or mentioning that a cocktail was made with Blue Ice is not an endorsement or an advertisement, defendants ignore the many allegations that the Influencers do more than pose with Blue Ice or suggest making a cocktail with it. (*Id.*) The Amended Complaint alleges, rather, that the Influencers advocate purchasing and trying Blue Ice. (*Id.*) Thus, "a reasonable consumer," viewing the Influencers' posts in their totality, would be "likely to believe that these messages reflect the opinion or belief of the Influencers posting them," which renders the Influencers "endorsers of the product" within the meaning of Section 255.5. (*Id.* at 15–16.)

To resolve this dispute, the court turns to Section 255.5 ("Disclosure of material connections."), which states:

> When there exists a connection between the endorser and the seller of the advertised
> product that might materially affect the weight or credibility of the endorsement

---

management, the Amended Complaint alleges that the Alcohol and Tobacco Tax and Trade Bureau (TTB) views such representations as "mislead[ing] consumers by presenting incomplete information about the health effects and nutritional content of alcohol beverages." (*Id.* ¶¶ 27–29 (quoting TTB-Ruling 2004-01).) While TTB rulings and guidance do not necessarily decide the matter in plaintiffs' favor, that TTB expressly views such representations as misleading strongly suggests that a reasonable consumer might be misled by them.

(i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed. For example, when an endorser who appears in a television commercial is neither represented in the advertisement as an expert nor is known to a significant portion of the viewing public, then the advertiser should clearly and conspicuously disclose either the payment or promise of compensation prior to and in exchange for the endorsement or the fact that the endorser knew or had reason to know or to believe that if the endorsement favored the advertised product some benefit, such as an appearance on television, would be extended to the endorser. Additional guidance, including guidance concerning endorsements made through other media, is provided by the examples below.

16 C.F.R. § 255.5 (December 1, 2009). An "endorsement" is defined as "any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser … . The party whose opinions, beliefs, findings, or experience the message appears to reflect will be called the endorser and may be an individual, group, or institution." 16 C.F.R. § 255.0(b) (December 1, 2009). "Endorsements" and "testimonials" are treated "identically" by the FTC, and "[w]hether a particular endorsement or testimonial is deceptive will depend on the specific factual circumstances of the advertisement at issue." 16 C.F.R. § 255.0(a), (c) (December 1, 2009). As discussed above, *see supra* Section V.A.i, the court must give Section 255.5 "due consideration and great weight" when analyzing whether plaintiffs have plausibly alleged a "deceptive act" under FDUTPA. Fla. Stat. § 501.204(2); *see also Porsche Cars N. Am.*, 140 So. 3d at 1097. That said, Section 255.5 is not the whole kit and caboodle; while it informs the analysis, the court's focus remains trained on whether a representation or omission is "likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc.*, 842 So. 2d at 777.

39

Accordingly, Section 255.5 does not, as defendants argue, apply only to "endorsements," for the FTC uses that term interchangeably with "testimonials," and both terms are defined more broadly as "any advertising message … that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser." 16 C.F.R. § 255.0(b)–(c).

Moreover, the court agrees with plaintiffs that the Amended Complaint alleges that the Influencers did more than post photographs of themselves with Blue Ice and "mention" that they had made cocktails with Blue Ice; rather, the allegations and the attendant screenshots of the Influencers' Instagram posts present those posts as affirmatively promoting Blue Ice. For example, on May 23, 2020, Influencer Metisha Schaefer posted that Blue Ice has "only 52 calories per serving, so my calories stay well under 100 calories." (Dkt. 60 ¶ 23.) Likewise, on April 30, 2020, Influencer Jamie Villamor posted the following:

> For all my friends that enjoy a nice smooth cocktail. … There's nothing better than relaxing with a smooth @blueicevodkausa cocktail in hand after a long day. With only 52 calories a serving, no sugar added and gluten free, Blue Ice can definitely help you stay fit during quarantine. Have a bottle delivered to your door … . #fitfriendlyvodka #ketofriendly #potatovodka #vodka.

(*Id.* ¶ 25.) To be sure, these posts also include a photograph of the Influencer with a bottle of Blue Ice and perhaps a cup in hand as though the Influencer has just or is about to have a sip, but these posts and the many others like them described or pictured in the Amended Complaint (*id.* ¶¶ 26, 40–43, 50–59, 79, 87) do far more than "mention" the use of Blue Ice in a cocktail. Taking the allegations in the Amended Complaint as a whole, while Influencers sometimes "only pose next to a bottle of Blue Ice and tag Blue Ice in their posts, suggesting that this is their drink of choice when it comes to spirits" (*id.* ¶ 40), the Influencers also "specifically indicate that Blue Ice is their favorite alcoholic beverage or recommend cocktails for their followers where they

must use Blue Ice" and "often try to convince consumers to purchase Blue Ice, even directing the consumer to their closest grocery/liquor store or bar." (*Id.* ¶¶ 41–42.) Drawing all reasonable inferences in plaintiffs' favor, at least a significant majority of these posts qualify as "advertising message[s] … that consumers are likely to believe reflect[] the opinions, beliefs, findings, or experiences" of the Influencers rather than of "the sponsoring advertiser," 21st Century. *See* 16 C.F.R. § 255.0(b).

Since the posts fall within the scope of Section 255.5, the next question is whether "there exists a connection between" the Influencers and 21st Century "that might materially affect the weight or credibility of the [Influencers'] endorsement[s] (i.e., the connection is not reasonably expected by the audience)." *See* 16 C.F.R. § 255.5. The Amended Complaint alleges such a connection: "the Influencers were paid [by 21st Century] to pretend that they like Blue Ice." (Dkt. 60 ¶ 88.) Defendants argue, however, that plaintiffs "cannot claim a reasonable consumer would interpret the Influencers' Posts as 'honest consumer advice.'"[18] (Dkt. 71 at 20–21.) Reframed in terms of Section 255.5, defendants argue that any connection between the Influencers and 21st Century would be "reasonably expected by the audience." This argument would be more persuasive under FTC guidance if the Influencers were more well known, for Section 255.5 states that, where an endorser is not "known to a significant portion of the viewing public," then the material connection between the endorser and the sponsoring advertiser "might materially affect the weight or credibility of the endorsement" and the connection must be disclosed. Moreover, plaintiffs here specifically allege that they took the Influencers to be offering "honest advice" about Blue Ice and "would not have purchased [Blue Ice] products if

---

[18] Defendants purport to quote *Nivia* v. *Nationwide Mtg., LLC*, No. 13 C 24080, 2014 WL 4146889, at *6 (S.D. Fla. Aug. 21, 2014), to support this argument, but neither the phrase "honest consumer advice" nor anything resembling it appears in the *Nivia* opinion.

they knew that the Influencers were paid" to promote it. (Dkt. 60 ¶¶ 39, 88, 146, 149.) In short, the court agrees with plaintiffs that the Influencers' posts come within the scope of Section 255.5 and the material connection between the Influencers and 21st Century "might materially affect the weight or credibility of the [Influencers'] endorsements." *See* 16 C.F.R. § 255.5.

Therefore, according Section 255.5 "due consideration and great weight," the court concludes that the paid relationship between 21st Century and the Influencers should have been disclosed by the Influencers. Furthermore, recognizing that whether the Instagram posts are "deceptive … depend[s] on the specific factual circumstances" surrounding the posts, *see* 16 C.F.R. § 255.0(a), the court concludes that the Amended Complaint plausibly alleges that the Influencers' failures to disclose were "deceptive acts" within the meaning of FDUTPA. In other words, these failures to disclose are omissions that are "likely to mislead the consumer acting reasonably in the circumstances," and as plaintiffs allege that they would not have purchased Blue Ice had the paid relationships been disclosed, these omissions are also "to the consumer's detriment." *See PNR, Inc.*, 842 So. 2d at 777.[19]

Because defendants do not, with respect to "deceptive acts" under FDUTPA, develop any as-yet-unaddressed arguments regarding the many other alleged misrepresentations (*e.g.*, on the secondary label and bottle collar and via Instagram posts), the court concludes that plaintiffs have plausibly alleged that those misrepresentations are likewise deceptive under FDUTPA.

---

[19] In perfunctory fashion, defendants contend that plaintiffs cannot "claim that the failure to disclose an alleged material connection between the Defendants alone would have been enough to mislead a reasonable consumer, let alone to his/her detriment." (Dkt. 71 at 19.) Even if this perfunctory and undeveloped argument were not waived, *see McGhee*, 98 F.4th at 825, for the reasons articulated above, the court would not find it persuasive.

### iii.    Causation

They key to causation under FDUTPA is that the plaintiff must have "suffered a loss as a result of" the defendant's violation of the statute. Fla. Stat. § 501.211(2); *see also Stewart Agency, Inc.*, 266 So. 3d at 213.

Defendants' argument that plaintiffs cannot show causation under FDUTPA boils down to this: there is no connection between plaintiffs' alleged injury and defendants' failure to disclose the material connection between 21st Century and the Influencers.[20] (Dkt. 71 at 20.) In support, defendants again rely on *Pop*, where the court determined that causation had not been plausibly alleged because the plaintiff had not "explain[ed] how the Defendants' alleged failure to disclose an advertising relationship led to him receiving a … product that he perceived to be inferior." 2023 WL 4661977, at *4–5.[21]

For myriad reasons, defendants' argument is unavailing. First, as discussed above, *see supra* Section IV.B.vi, *Pop* is readily distinguishable from this case. While the plaintiff in *Pop* failed to allege that the product he received was different from what he anticipated based on Instagram posts and failed to allege "that the Influencer Defendants made any statements regarding the quality of the product[,]" 2023 WL 4661977, at *4–5, plaintiffs here have made those allegations. Plaintiffs claim, for example, that they expected a vodka that was handcrafted, filtered multiple times, and fit-friendly in that it contained as few as 52 calories per serving and as many as 57 calories per ounce, but received a vodka that was not handcrafted, was filtered only once, and in fact had no fewer than 64 calories per ounce and 96 calories per serving. (Dkt.

---

[20] Defendants also argue that the Influencers never made any statements about the quality of Blue Ice (dkt. 71 at 20), but for reasons discussed above, this argument is without merit.

[21] Oddly, defendants make no argument regarding any of the other alleged misrepresentations; rather, they focus entirely on the omission of a material connection between 21st Century and the Influencers.

60 ¶¶ 21–23, 32–33.) Plaintiffs allege further discrepancies, but these are sufficient to distinguish this case from *Pop*. And while the plaintiff in *Pop* did not explain how the alleged failures to disclose an advertising relationship caused him to receive a different product than anticipated, 2023 WL 4661977, at *4–5, plaintiffs here allege that they would not have purchased Blue Ice had the Influencers not both made misrepresentations about the product and failed to disclose that they were paid to do so. (Dkt. 60 ¶¶ 23, 25, 39–43, 50–59, 79, 87–88, 146, 149.) Put simply, plaintiffs allege that knowledge of a paid relationship between the advertiser (21st Century) and the promoters (the Influencers) would have led plaintiffs to distrust the Influencers' representations and, therefore, not purchase the product. As such, plaintiffs have plausibly alleged causation in that they "suffered a loss," paying more for Blue Ice than they would have paid for a competing product, "as a result of" defendants' deceptive representations and omissions. *See* Fla. Stat. § 501.211(1).

### iv.    Actual Damages

For many of the same reasons, plaintiffs have plausibly alleged actual damages. As defendants correctly note, actual damages "are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Pop*, 2023 WL 4661977, at *5 (quoting *Marrache* v. *Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021)). Yet defendants (mystifyingly) claim that, as in *Pop*, plaintiffs allege neither "that [they] paid more than market value" for Blue Ice nor that they "received a product different than the one [they] intended to purchase." (Dkt. 71 at 21.) While this might have been true of plaintiffs' original Complaint,[22] it is simply not true of plaintiffs' Amended

---

[22] *See supra* note 6.

Complaint, which alleges that plaintiffs paid "at least $11 per bottle" more for Blue Ice than they would have paid for competing vodkas that actually possess the qualities that Blue Ice only purports to possess and that the Blue Ice they received did not measure up to the Blue Ice they anticipated based on defendants alleged misrepresentations. (Dkt. 60 ¶¶ 33–34, 37, 67.)

In short, plaintiffs have plausibly alleged all elements under FDUTPA.

> **v.    Safe Harbor**

Defendants also seek to defeat Count I based on a "safe harbor" exception to FDUTPA. (Dkt. 71 at 18–19.) Under FDUTPA, "'[a]n act or practice required or specifically permitted by federal or state law' can never violate the statute." *Young* v. *Cmty. Health Sys., Inc.*, No. 22-14255, 2023 WL 6121795, at *3 (11th Cir. 2023) (quoting Fla. Stat. § 501.212(1)). In practice, this means that a plaintiff cannot rely on FDUTPA "to create new obligations, or to broaden existing obligations, when a defendant's conduct is already in compliance with federal law or regulations." *Id.*

Because "labeling and advertising of distilled spirits is regulated by The Alcohol and Tobacco Tax and Trade Bureau" (TTB) and TTB ensured that Blue Ice labels were compliant with federal law, defendants argue, "statements made on [Blue Ice] labels could never" serve as deceptive representations in a claim brought under FDUTPA. (Dkt. 71 at 18–19.) Plaintiffs counter that FDUTPA's "safe harbor" exception is inapplicable here because they have not alleged any misleading statements on the label that was vetted by TTB; rather, they have alleged misrepresentations only on the secondary label and bottle collar, and those misrepresentations have been specifically identified by TTB as deceptive and misleading. (Dkt. 78 at 22.) In reply, defendants do not address this distinction. (Dkt. 80 at 8–9.) Instead, defendants insinuate that plaintiffs failed to allege the distinction in the Amended Complaint, stating that plaintiffs only

"now claim" that the alleged misrepresentations exist on the secondary label and bottle collar. (*Id.* at 8.)

This is incorrect. As this opinion has repeatedly discussed, the Amended Complaint explicitly alleges misrepresentations on the secondary label and bottle collar, as well as on the Blue Ice website and via social media, and makes no mention of misrepresentations on the label defendants claim was approved by TTB. (Dkt. 60 ¶¶ 17, 21–23, 26, 30–31.) As defendants fail to grapple with this critical distinction, they have waived the issue. *See Bradley*, 59 F.4th at 897–98. This waiver is fatal to defendants' "safe harbor" argument as the court will not construct arguments about the secondary label and bottle collar on defendants' behalf.[23]

### vi. Requests for Declaratory and Injunctive Relief

Defendants also argue that plaintiffs' requests for declaratory and injunctive relief under FDUTPA must be dismissed because injunctive relief is only available where the plaintiff shows that he has been "aggrieved" by a deceptive or unfair practice and declaratory relief is redundant given plaintiffs' pursuit of damages. (Dkt. 71 at 22.) Regardless of whether defendants are correct on either point, plaintiffs have chosen not to respond to defendants' arguments, apparently abandoning the pursuit of equitable relief under FDUTPA. *See Mach*, 580 F.3d at 501–502. Plaintiffs may not, therefore, continue to pursue equitable relief under Count I.

### B. Count II: ICFA

To bring a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1 *et seq.*, a plaintiff must plausibly allege, and eventually prove, that (1) "the defendant committed a deceptive or unfair act with the intent that others rely on the

---

[23] Even if defendants had presented argument on the secondary label and bottle collar and were successful in their argument, it would not dispose of Count I, for plaintiffs would have still plausibly alleged misrepresentations on the Blue Ice website and via the Influencers' social-media posts.

deception," (2) "the act occurred in the course of trade or commerce," and (3) the act "caused actual damages." *Vanzant* v. *Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). "Deceptive or unfair practices include any 'misrepresentation or the concealment, suppression or omission of any material fact.'" *Id.* (quoting 815 Ill. Comp. Stat. 505/2). "A misrepresentation is material if it relates to a matter upon which the plaintiff could be expected to rely in determining whether to engage in the conduct in question." *People ex rel. Hartigan* v. *Knecht Servs., Inc.*, 575 N.E.2d 1378, 1387 (Ill. App. Ct. 1991).

Important here, ICFA does not operate extraterritorially; rather, "the circumstances that relate to the disputed transaction [must] occur primarily and substantially in Illinois." *Avery* v. *State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853–54 (Ill. 2005). While "there is no single formula or bright-line test for determining whether a transaction occurs" in Illinois, *id.*, the Supreme Court of Illinois has considered the following factors: "(1) the claimant's residence; (2) the defendant's place of business; (3) the location of the item that was the subject of the transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions; (7) where the deceptive statements were made; (8) where payments for services were sent; and (9) where complaints were to be directed." *Clearing Corp.* v. *Fin. & Energy Ltd.*, No. 09 CV 5383, 2010 WL 2836717, at *6 (N.D. Ill. July 16, 2010) (citing *Avery*, 835 N.E.2d at 854–55).

Defendants argue that Count II must be dismissed because plaintiffs have failed to allege that (1) defendants made "even one false or misleading statement," (2) plaintiffs relied on any alleged misrepresentations in purchasing Blue Ice, (3) plaintiffs sustained any damages, (4) any deceptive acts caused plaintiffs' alleged injuries, and (5) Sava's purchase of Blue Ice was substantially connected to Illinois. (Dkt. 71 at 23–26.) As the court has already addressed and

47

rejected the first four of these arguments, *see supra* Sections IV.A. & V.A, the court need only here consider the last argument regarding territoriality.[24]

Defendants contend that the "only connection" between Illinois and Sava's purchase of Blue Ice is that Sava purchased Blue Ice at a liquor store in Illinois. (Dkt. 71 at 25.) This connection, they argue, cannot overcome the following facts: (1) no defendants live in or do business in Illinois, (2) Blue Ice is distilled in Idaho, (3) Sava never had any contact with 21st Century before purchasing Blue Ice, and (4) Sava "merely indicates" that he followed the Influencers on Instagram "which led" him to purchase Blue Ice. (*Id.*)

Plaintiffs respond, first, that Sava's purchase of Blue Ice in Illinois is alone "sufficient to establish a claim" under ICFA. (Dkt. 78 at 30.) Moreover, they present the following salient facts: (1) Sava is a citizen of Illinois who resides in Illinois, (2) he purchased Blue Ice at a liquor store in Chicago, Illinois, and (3) Blue Ice is marketed and sold in Illinois. (*Id.* at 30–31.)

The court agrees with plaintiffs. Considering the factors the Illinois Supreme Court took into account in *Avery*, plaintiffs have plausibly alleged that the circumstances relating to Sava's purchase of Blue Ice occurred "primarily and substantially" in Illinois. Some of those factors are simply not implicated in this case (*e.g.*, where contracts were executed, contractual choice-of-law provisions), but of those that are implicated, the balance favors plaintiffs. Sava is a citizen of Illinois who resides in Cook County. (Dkt. 60 ¶ 46.) While 21st Century "operates its entire marketing program, as well as its compliance program from California," it conducts business in Illinois. (*Id.* ¶ 49.) The bottle of Blue Ice Sava purchased was in Illinois at the time he purchased it in Illinois. (*Id.* ¶ 98.) Moreover, the court may reasonably infer that whatever contacts Sava

---

[24] Even if the court had not already addressed these arguments, defendants offer them in the ICFA context in only perfunctory and undeveloped fashion (dkt. 71 at 23–26), rendering these arguments waived. *See McGhee*, 98 F.4th at 825.

had online with the Blue Ice website and the Influencers' social-media posts were made from Illinois, and regardless of where the website and Influencers published their representations, those representations were directed into Illinois. Finally, the court may also reasonably infer that any complaints about Blue Ice would be directed into California, where 21st Century's marketing and compliance programs are located. Even if more factors, including ones not articulated in *Avery*, favored defendants, the court would likely agree with plaintiffs that, where an Illinois consumer purchases a product in Illinois that a company has marketed to Illinois and distributed for sale in Illinois, the transaction has occurred "primarily and substantially" in Illinois.

For these reasons, the court concludes that Sava's claims come within ICFA's territorial reach of ICFA and that plaintiffs have plausibly alleged a claim under ICFA.[25]

### C.     Counts III, IV, and V: IUDTPA, CLRA, and CUCL

In seeking dismissal of plaintiffs' claims brought under IUDTPA, CLRA, and CUCL (Counts III, IV, and V, respectively), defendants simply repeat or incorporate by reference the same arguments they make with respect to FDUTPA and ICFA. (*See* dkt. 71 at 26–30.) Because the court has already addressed these arguments and found them unpersuasive and because the elements a plaintiff must allege to bring claims under IUDTPA, CLRA, and CUCL are

---

[25] Defendants make no argument regarding ICFA's intent requirement (*i.e.*, that the defendant act "with the intent that others rely on the deception," *Vanzant*, 934 F.3d at 736), but the court finds that intent has been sufficiently pled in that plaintiffs allege, for example, that defendants "devised a scheme in which the Influencers [would] tag or recommend Blue Ice products, pretending they are disinterested consumers" and made all misrepresentations "knowingly and intentionally, with the intent to mislead the named Plaintiffs and the Class." (Dkt. 60 ¶¶ 5, 158.) Such allegations meet Rule 9(b)'s allowance that "intent … may be alleged generally."

essentially the same as those required under FDUTPA and ICFA,[26] the court concludes that plaintiffs have plausibly alleged Counts III, IV, and V.

### D. Count VI: Unjust Enrichment

Under Illinois law, unjust enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence[.]" *Toulon* v. *Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (quoting *Saletech, LLC* v. *E. Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. Ct. 2014)). To support "a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary* v. *Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc.* v. *Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). Where

---

[26] **IUDTPA**: To bring a claim under IUDTPA, a plaintiff must plausibly allege (1) "the defendant engaged in a deceptive act or practice," (2) "intending that the plaintiff rely on the deception or practice," (3) "which occurs in the course of conduct involving trade or commerce," (4) "causing actual damage to the plaintiff," (5) "proximately caused by the deception." *Ash* v. *PSP Distrib., LLC*, 226 N.E.3d 748, 754 (Ill. App. Ct. 2023).

    **CLRA**: "The CLRA makes unlawful … various 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" *Meyer* v. *Sprint Spectrum L.P.*, 200 P.3d 295, 298 (Cal. 2009) (quoting Cal. Civ. Code § 1770(a)). Prohibited acts include misrepresenting "the source, sponsorship, approval, or certification of goods or service" or "the affiliation, connection, or association with, or certification by, another[,]" representing "that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have[,]" or that they "are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another[,]" and advertising "goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(2)–(3), (5), (7), (9) (January 1, 2022). If a consumer "suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful" under Section 1770, the consumer may, as relevant here, bring an action for actual damages, injunctive relief, or punitive damages. Cal. Civ. Code § 1780(a)(1)–(2), (4).

    **CUCL**: The CUCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising… ." Cal. Bus. & Prof. Code § 17200. A plaintiff may "seek relief under the statute only if that plaintiff has 'suffered an injury in fact' and 'lost money or property as a result of the unfair competition' at issue. *Cal. Med. Ass'n* v. *Aetna Health of Cal., Inc.*, 532 P.3d 250, 254 (Cal. 2023) (quoting Cal. Bus. & Prof. Code § 17204). Injunctive relief and restitution, but not damages, are available. *Id.* at 257 (citing Cal. Bus. & Prof. Code § 17203).

"an unjust enrichment claim rests on the same improper conduct alleged in another claim,"
including one based on statutory violations, "then the unjust enrichment claim will be tied to this
related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at
517. Unjust enrichment functions in essentially the same way under Florida law. *See Duty Free
World* v. *Miami Perfume Junction, Inc.*, 253 So.3d 689, 693 (Fla. Dist. Ct. App. 2018).

Defendants argue that plaintiffs' theory of unjust enrichment fails because it "relies on
the same alleged conduct" as plaintiffs' other claims. (Dkt. 71 at 30.) Defendants also argue that
plaintiffs have failed to allege "how their purchases benefitted" either 21st Century or the
Influencers. (*Id.* at 30–31.)

Defendants' first argument assumes that plaintiffs' statutory claims fail, but this is not the
case. Since all of plaintiffs' statutory claims may proceed past defendants' motion to dismiss, so
too may plaintiffs' claims based on unjust enrichment.

As to defendants' second argument regarding a "direct benefit," plaintiffs make no
argument that they have plausibly alleged *directly* conferring a benefit on any of the defendants.
(*See* dkt. 78 at 33.) Plaintiffs have therefore waived the argument. *See Bradley*, 59 F.4th at 897–
98. Defendants are correct that, under Florida law, any benefit must be directly conferred on the
defendant by the plaintiff. *See Kopel* v. *Kopel*, 229 So.3d 812, 818 (Fla. 2017) ("plaintiff must
*directly* confer a benefit on the defendant") (emphasis added). The same is not true, however,
under Illinois law, *see HPI Health Care Servs., Inc.*, 545 N.E.2d at 679 (discussing unjust
enrichment claims where benefit "was transferred to the defendant by a third party"), and
defendants cite no legal authority to the contrary.

The court therefore dismisses Count VI to the extent that it relies on Florida law.
Plaintiffs' theory of unjust enrichment may proceed, however, under Illinois law.

### E. Count VII: Negligent Misrepresentation

"To state a claim for negligent misrepresentation" under Illinois law, "a plaintiff must allege (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank* v. *Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006). Florida employs essentially the same standard. *See Souran* v. *Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993).

Defendants first argue that plaintiffs' claims of negligent misrepresentation must satisfy Rule 9(b)'s particularity requirement and that plaintiffs have failed to do so. (Dkt. 71 at 31–33.) This argument is not persuasive for two reasons. First, as discussed above, *see supra* Section IV, Rule 9(b) applies to allegations, not claims. *See Appvion, Inc.*, 99 F.4th at 944–45. Second, as the court has already noted, *see supra* note 7, the allegations supporting a claim of *negligent* misrepresentation, as opposed to *intentional* misrepresentation, are generally not subject to Rule 9(b). *See Siegel*, 480 F. Supp. 2d at 1041–42. Furthermore, to the extent defendants intend this argument to apply to *allegations* in the Amended Complaint, the court has already found that those allegations satisfy Rule 9(b). *See supra* Section IV.B.

Next, defendants argue that plaintiffs' claims must fail because "under both Florida and Illinois law, 'the failure to disclose material information is not actionable as part of a negligent misrepresentation claim absent some fiduciary or fiduciary-like duty to disclose the information[.]'" (Dkt. 71 at 33 (quoting *Hawaiian Airlines, Inc.* v. *AAR Aircraft Servs., Inc.*, 167 F. Supp. 3d 1311, 1322 (S.D. Fla. 2016)).)

Plaintiffs do not respond on this point with respect to Florida law and, oddly, assert that defendants "have not provided any support for their argument as to the duty to disclose" under Illinois law. (Dkt. 78 at 35.) By not responding vis-à-vis Florida law, plaintiffs have waived the argument. *See Bradley*, 59 F.4th at 897–98. The same is true regarding Illinois law, for defendants *do cite* several cases to support their duty-to-disclose argument and plaintiffs have not substantively challenged defendants' argument. The court concludes, therefore, that plaintiffs' negligent misrepresentation claims cannot, based solely on the alleged failures to disclose, survive defendants' motion to dismiss.

This does not mean, however, that the claims must be dismissed, for, as plaintiffs point out, their claims are based not only on defendants' omissions but also on numerous other alleged misrepresentations. (Dkt. 78 at 34.) As to those other misrepresentations, defendants simply repeat the same arguments they make with respect to all of plaintiffs' claims (*i.e.*, that there were no misrepresentations). (Dkt. 71 at 32.) As discussed above, *see supra* Section IV.A, those arguments, with the exception of those relating to the alleged misrepresentations about "taste," are not persuasive.

The court therefore concludes that plaintiffs have plausibly alleged their claims under Count VII and may continue to pursue those claims based on the various alleged misrepresentations, though not based on any alleged failures to disclose.

### F.    Count VIII: Breach of Express Warranty

"While the general duty not to breach warranties arises under state law," warranties themselves are "best understood" as promises "undertaken by the manufacturer[.]" *Cipollone* v. *Liggett Grp., Inc.*, 505 U.S. 504, 526 (1992). "[A]n express warranty claim arises[,]" therefore, "from the manufacturer's statements in its advertisements." *Id.* To state a claim for breach of

express warranty under Illinois law, a plaintiff must allege that the defendant "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *Aquino* v. *C.R. Bard, Inc.*, 413 F. Supp. 3d 770, 787 (N.D. Ill. 2019). Florida employs essentially the same standard. *See Thurn* v. *Kimberly-Clark Corp.*, No. 22 C 2526, 2023 WL 4455630, at *4 (M.D. Fla. July 11, 2023). As particularly relevant here, in both Florida and Illinois, a plaintiff may generally bring a claim for breach of express warranty only where the parties are in privity of contract although there is an exception where the parties have had "substantial direct contacts." *Inouye* v. *Adidas Am., Inc.*, No. 22 C 416, 2023 WL 2351654, at *7 (M.D. Fla. Mar. 3, 2023); *see also Aquino*, 413 F. Supp. 3d at 787.

In addition to repeating arguments the court has already addressed and found largely non-persuasive,[27] defendants argue that plaintiffs' express warranty claim must fail because there is no privity of contract between the parties. (Dkt. 71 at 35.) Because plaintiffs did not buy Blue Ice directly from 21st Century or have any "substantial direct contacts" with 21st Century, defendants argue, there is no privity. (*Id.* at 36.)

Plaintiffs have waived any counterargument on this point by failing to respond to it, *see Bradley*, 59 F.4th at 897–98, and that waiver is fatal to plaintiffs' express warranty claims. Absent contractual privity or an express warranty communicated directly to the consumer by the manufacturer, there can be no claim for breach of express warranty. *See Inouye*, 2023 WL 2351654, at *7; *Aquino*, 413 F. Supp. 3d at 787. The court therefore dismisses Count VIII.

---

[27] As discussed above, *see supra* Section IV.A, the court agrees with defendants that the alleged misrepresentations regarding "taste" are puffery.

## CONCLUSION AND ORDER

For the foregoing reasons, the motion to dismiss (dkt. 71) is granted in part and denied in part. Count VI (unjust enrichment) is dismissed with prejudice to the extent that it relies on Florida law. Count VIII (breach of express warranty) is dismissed with prejudice. The motion is denied with respect to all other claims.[28]

Date: June 25, 2024

_____
U.S. District Judge Joan H. Lefkow

---

[28] Judge Lefkow expresses her gratitude to her law clerk, Peter Douglas, who prepared the original draft of this opinion. Because the opinion carefully addresses each claim and each theory of recovery, the parties should seriously consider settlement before the cost of litigation overwhelms the value of the case.