IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO SAVA, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 22 C 6083 ) |
| 21st CENTURY SPIRITS, LLC, et al., | ) Magistrate Judge Finnegan ) |
| Defendants. | ) |

### ORDER

Plaintiffs have filed a Motion to Compel Discovery Related to Suppressed Public Information of Potential Class Members (Doc. 146).[1] For the reasons stated herein, the motion is granted in part and denied in part.

**I.   BACKGROUND**

   **A.   Allegations**

In this putative class action, Plaintiffs Mario Sava ("Sava") and Alin Pop ("Pop") bring common law and state and federal statutory claims against Defendants for "deceptive, unfair and misleading promotion of Blue Ice vodka products in the states of Illinois and Florida and throughout the United States." (Doc. 60 ¶ 2 (amended complaint)). The gist of the claims is that Defendants—which include Defendant 21st Century Spirits, LLC ("21st Century") and ten so-called social media "Influencer" Defendants (see *id.* ¶ 1)—"are involved in deceptive, unfair and misleading advertising by promoting Blue Ice as 'handcrafted,' misrepresenting the qualities of Blue Ice vodka, including the taste and

---

[1] This motion appears to be filed against all of the defendants even though it concerns document productions only by the so-called Influencer Defendants (who are all of the defendants besides defendant 21st Century Spirits, LLC). The response, however, was filed only by the Influencer Defendants. (Doc. 158-1). For convenience, this Court refers to the Influencer Defendants as "Defendants" throughout this Order.

the number of calories, and as well as suggesting that there are health benefits in consuming vodka." (*Id.* ¶ 3).

For example, Plaintiffs complain that 21st Century makes the false claim that "Blue Ice is 'the best tasting vodka; BECAUSE TASTE IS EVERYTHING'"; falsely represents "to consumers that Blue Ice is 'handcrafted and American made' and 'filtered 5 times' in a distillery that purports to be a distillery bearing the name 'Blue Ice Vodka,' and belonging to the brand"; and shows misleading "pictures of the sign outside the distillery bearing the name 'Blue Ice.'" (*Id.* ¶¶ 10, 12, 13). Plaintiffs go on to allege that "[n]ot only is 21st Century misleading consumers regarding the qualities of its vodka and the true nature of its operations, but it also promotes Blue Ice by using Influencers on social media and making deceptive claims." (*Id.* ¶ 16). Defendants allegedly "devised a scheme in which the Influencers . . . recommend Blue Ice products, pretending they are disinterested consumers" and the Influencers misrepresent their connections with the brand "by promoting Blue Ice products without disclosing . . . that they were paid to do it." (*Id.* ¶¶ 4-5). Thus, Plaintiffs allege misrepresentations by 21st Century and/or by the Influencers, which include both misrepresentations about Blue Ice Vodka and about the Influencers' connections to 21st Century.

Sava complains that he "purchased Blue Ice (Blue Ice Huckleberry Flavored Vodka) to celebrate his birthday, in October 2022, from a Liquor Store in Chicago" and realized that it was "of inferior quality" and did "not have health benefits." (*Id.* ¶¶ 46, 98-99). Pop says that he "purchased Blue Ice (Blue Ice Potato Vodka) online on August 23, 2022, and, upon receiving the delivery, realized that the spirit is not worth the high price he paid," was not "special," and was of an "inferior, generic quality." (*Id.* ¶¶ 47 101, 103).

Plaintiffs allege that they relied on statements made by Influencers and in 21st Century's advertising in making their purchases. (E.g., *id.* ¶ 102). Their claims are largely based on allegations of deceit, fraud, and misrepresentation. (*Id.* ¶¶ 30-41).

Both seek to represent a nationwide class of "all persons that purchased Blue Ice relying on misleading marketing practices and Influencers from September 1, 2018, to present ('Class Period')." (*Id.* ¶ 106). In addition, Sava and Pop each individually seeks to represent a class of such purchasers in his home state. (*Id.* ¶¶ 107-108). They allege that "[a]t least one million consumers have purchased Blue Ice vodka products and paid a premium for it in reliance on the Defendants' representations" and that "their claims are typical for the class and, as the named Plaintiffs, they are aware of other persons in the same situation." (*Id.* ¶¶ 113, 115). They further claim that "[s]ince the whole class purchased Blue Ice vodka products and such products are promoted by the Defendants, the questions of law and fact are common to the class" and that a class is superior to other methods for "fairly and efficiently adjudicating this controversy." (*Id.* ¶¶ 116, 118).

### B. Discovery Requests

Plaintiffs served Supplemental Requests for Production ("RFPs") on April 9, 2024 (Doc. 146-7), to which Defendants responded on May 9, 2024 (Doc. 146-8). The RFPs at issue here appear directed to obtaining the identities of and contact information about individuals who might have followed or engaged with Defendants' Instagram posts about Blue Ice products. RFP No. 2 seeks:

> For each Blue Ice Influencer Post, produce all documents, data, reports, information or records that show the Instagram social media name, Instagram handle, individual account name, address or other identifying information for each person that was included in the "Accounts Reached" section of the Post Insights for each said Post.

"Accounts Reached" on Instagram commonly means the number of unique accounts that have seen the relevant content. RFP No. 3 is identical to RFP No. 2 except that the words "Accounts Reached section" are changed in RFP No. 3 to "Account Engaged section," which commonly means the number of unique accounts that interacted with the relevant content. (Doc. 146-7, at 9-10). And "Blue Ice Influencer Post" in these RFPs means "any post on the social media site Instagram by an Influencer promoting, advertising, endorsing, referencing, tagging (#blueicevodka, #blueicevodkausa, #potatovodka, or some similar version), or otherwise mentioning any Blue Ice Vodka product" from September 1, 2018 to the present. (*Id.*, at 4, 6). "Blue Ice" or "Blue Ice Vodka" in the RFPs refers to "all alcoholic beverages marketed or sold by 21st Century Spirits, LLC," including "Blue Ice Potato Vodka, Blue Ice, Blue Ice Huckleberry Flavored Vodka, and Blue Ice Organic Wheat Vodka." (*Id.*, at 3-4).

Although these document requests contain 8 pages of instructions and definitions, they do not expressly ask for the metadata of the responsive materials. Nor do they define "Instagram handle." The Court understands this term to mean a unique username that identifies an accountholder on Instagram which distinguishes that user from other users and is visible to anyone on the platform.

### C. Objections and Responses to Discovery Requests

Defendants objected to RFP Nos. 2 and 3 on numerous grounds, but stated that they produced and will continue to produce responsive materials using "appropriate searches" to the extent not already available on their public Instagram pages.[2] (Doc. 146-

---

[2] Defendants' objections include that these RFPs are overbroad, unduly burdensome, and/or disproportionate to the case as they: (i) cover "all" documents and not the subset of defined, relevant documents (Doc. 146-8, at 11-12, 23); (ii) seek documents about products that Plaintiffs did not purchase and consume (*id.*, at 24); (iii) employ a six-year time period although Plaintiffs purchased only two Blue Ice

4

8, at 25-26, 28). Thus, Defendants represent that they have produced "screenshots of all static Instagram posts and videos of every Instagram video that they posted relating to Blue Ice Vodka and that was available to them at the time they were served with this lawsuit," which amounts to about 8,645 pages and includes "pictures, captions, videos, and the text of comments, Post Insights reports, as well as the number of likes and comments associated with Blue Ice Vodka posts." (Doc. 158-1, at 6 (footnote omitted); Doc. 158-2 ¶ 10 (Decl. of Irene Oria)). These were produced in TIFF format with Relativity files that are "searchable, sortable, readable, paired with essential metadata," except that Instagram posted videos were produced in native format. (Doc. 158-1, at 6).

According to Defendants, the "only information *not* included" in the production is the "redacted Instagram handles of each person that liked or commented." (*Id.*). They state that they "properly redacted their followers' Instagram handles because the subject Instagram posts" have been archived, and thus are no longer in the public domain, meaning privacy interests of the Defendants and their third-party followers are implicated." (*Id.*, at 9). But Defendants do not dispute that they archived the posts and that these handles were in the public domain before they did so.

Plaintiffs represent that the parties conferred telephonically and in writing about the proper scope of responses to these RFPs. The parties reached an impasse on the discoverability of the Instagram handles of individuals posting on Instagram and of the metadata of such materials, which led to this motion. (Doc. 146, at 9, 15).

---

products in August and October 2022 (*id.*); (iv) seek material that certain Influencers do not know how to access or to which they have no access (*id.*, at 25); (v) seek 100s or 1000s of comments, likes, etc. and even millions of accounts reached and engaged (*id.*); and (vi) are not limited to the posts that Plaintiffs viewed (*id.*, at 24). Similar objections were made as to RFP 3. (*Id.*, at 26-28).

## II. ANALYSIS

### A. Discoverability of Instagram Handles

Plaintiffs seek to compel responses to their "discovery request regarding the Instagram handles of the persons who engaged with Defendants' Instagram posts and regarding Defendants' Blue Ice posts," which Defendants redacted before producing them. They argue that discovery of Instagram handles is relevant to the class certification issues in this case. (Doc. 146, at 4-5, 7-10).

Plaintiffs also contend that when certain Defendants "'archived' the Instagram posts at the heart of this case," that action "modified the metadata (i.e., the URL address of each post) and hid the posts from public view."[3] (*Id.*, at 1-2). They point out that certain Defendants testified at their depositions that they did not know how to access "information available to them on Instagram" (such as the URL address of each post to their Instagram accounts). (*Id.*, at 2, 6, 11). Thus, Plaintiffs alternatively ask that "this Court compel Defendants to produce their Instagram credentials so that Plaintiffs' expert can download the posts and access information regarding persons who liked and commented on the posts." (*Id.*, at 7).

In response, Defendants do not deny archiving certain posts, explaining that "[t]here is nothing wrong with [their] decision to archive their Instagram posts as doing so removes them from public view, but preserves them for production in this lawsuit." (Doc. 158-1, at 4). They explain that when they later produced the archived posts, however,

---

[3] Plaintiffs also state, without specificity, that some posts were modified or deleted. (Doc. 146, at 1-2 & n.1). Defendants counter that they properly archived certain posts and that all original posts are available from non-party Meta, which owns and operates Instagram. (Doc. 158-1, at 4-5). The Court need not resolve this issue as Plaintiffs state that they will file a separate motion for spoliation. (See Doc. 146, at n.1).

6

they redacted the handles to protect the privacy of the users as the posts were no longer public. (*Id.*, at 7).

Defendants also argue that the handles are not relevant to class certification issues. (*Id.*, at 8-11). When Defendants responded to RFP Nos. 2-3, however, they did not take the position that the handles were properly redacted because irrelevant to the case. Defendants' boilerplate objections to these RFPs on relevance and privacy grounds, for example, did not refer to handles. (*Id.*, at 24, 27). Indeed, in these objections, Defendants conceded that certain information, including "Instagram handles," "is publicly available and equally accessible to Plaintiffs on the Individual Defendants' Instagram pages," without objecting to relevance. (Doc. 146-8, at 25, 28). Defendants thus appeared amenable to producing non-confidential information about handles.[4]

Nor have Defendants ever provided any information, by declaration or description, of any undue burden associated with producing the handles that Plaintiffs request in this motion. Indeed, it would have been easier to produce the posts with the handles visible than to spend time redacting them from the posts.

As for the privacy rationale for redacting the handles, the Court is not persuaded that redaction was necessary to protect the privacy rights of individuals following or engaging with the Influencer Defendants on Instagram. These handles were admittedly in the public domain when the Defendants archived them after this litigation was filed.

---

4   In their objections to the *definitions* applicable to all of Plaintiffs' RFPs, Defendants do make boilerplate burden and relevance objections "to the extent [the requests require] Individual Defendants to identify every person's 'social media handles' where every person's social media handle is not relevant to the party's claims and defenses in this case and where Individual Defendants does [sic] not have sufficient information to identify every person's social media handles[.]" But they then concede that they "will provide relevant, non-confidential identifying information that is in Individual Defendants' possession, custody or control following a reasonably diligent search and that is sufficient to identify the individual or entity without violating any applicable laws, including applicable privacy laws." (Doc. 146-8, at 6).

7

(See also Doc. 153, at 3-4 (explaining that handles do not contain personal identifying information and quoting Instagram guidance on the public nature of profile information)). Defendants have cited no case law supporting user privacy rights under these circumstances. Under these peculiar facts, the Court finds that Defendants had no basis for redacting the handles and so must re-produce the posts to Plaintiffs, but this time in unredacted form so the handles (and accompanying photos, if any) are visible.

Given this ruling, the Court declines to analyze and resolve the parties' disputes over whether the handles are discoverable as relevant to the elements of class certification. Defendants already produced the posts during discovery, redacting the handles only for the ostensible (and unjustified) purpose of protecting the privacy of the users who chose to post with their handles in a public domain.

### B. Discoverability of Metadata

Plaintiffs next complain about the format of Defendants' production of the Instagram posts in screenshot format versus in a format containing the metadata of the posts (which they argue would reveal "the date of posting, the date of any modification, the date of archiving, the handles of the accounts that interacted with the post (potential class members)." (Doc. 146, at 12). They stress the importance of obtaining the URL of each post and the date of posting. (Doc. 165, at 5-6). Defendants describe this as a request for them to "download their posts through the Instagram app rather than producing screenshots of static Instagram posts" because the screenshots lack the posts' metadata. (Doc. 158-1, at 11). Plaintiffs cite deposition testimony of certain Defendants that they did not know how to download the posts and demand that these defendants "produce their Instagram credentials, on a confidential basis, so that Plaintiffs' experts

8

can download or otherwise retrieve the original posts, the existing metadata, and any edited information." (Doc. 146, at 2-4, 11-14).

Defendants counter that Plaintiffs never requested metadata in their RFPs, "nor have the parties in this case entered into an ESI order by which they agreed to provide documents in native format with metadata." (Doc. 158-1, at 5-6, 11). Defendants also argue that because "Plaintiffs made the decision to depose each of Defendants using the screenshot TIFF images of Instagram posts that were produced," Plaintiffs "did not find the need to move to compel native files with metadata for use in these depositions" and must have found the production to be in "reasonably useable form." (*Id.*, at 14). Indeed, in their brief, Plaintiffs rely on testimony by Defendants from February 16, 2024, April 29, 2024, April 30, 2024, May 2, 2024, and May 9, 2024, begging the question of why Plaintiffs waited until September 16, 2024 (with a pending discovery cutoff of October 22, 2024) to file this motion. (Docs. 129; 146-1; 146-2; 146-3, 146-4, 146-5). Plaintiffs do not dispute this timeline, instead protesting that in July 2023, they informed Defendants that Instagram provides a way to download the posts but failing to support their decision to proceed with depositions thereafter and, only much later, to ask Defendants to re-produce these documents in a different format. (Doc. 165, at 14).

And Defendants point out (with a supporting declaration) that their production contains most of the data (including posting date) that Plaintiffs say (without a supporting declaration) is lacking and that a production of all of the posts' metadata today would not be complete, whether accessed by Defendants or Plaintiffs' expert, due to "Instagram account restrictions." (*Compare* Doc. 165, at 5 *with* Doc. 158-2 ¶ 10 (Decl. of Irene Oria); Doc. 158-1, at 15-17 & n. 6). They strongly object to allowing Plaintiffs' expert to access

9

Defendants' Instagram accounts since this would permit "overbroad access to all of the information" on those accounts extending "far beyond the putative class members and the claims in this case" and would invade Defendants' privacy. (*Id.*, at 18-21).

In reply, Plaintiffs do not deny that they never asked for metadata, but assert that they *did* say documents "should include all pictures included in a post, rather than just the first picture, together with comments, posting data, analytics, etc." (Doc. 165-2, at 2). This citation, however, is not to the RFPs but to a subsequent email asking for more information from selected documents that Defendants had already produced. Moreover, this request did not seek the URL or the date of posting, which Plaintiffs now argue are essential (see Doc. 165, at 5-6).[5]

The Court need not address these arguments, however, for the simple reason that Plaintiffs have not adequately explained why they need, and how they would use, the categories of metadata that they lack and now seek for class certification purposes. Because the motion on this point is denied for this reason, the Court need not resolve the question whether Plaintiffs properly asked for metadata.[6]

---

[5] Plaintiffs also contend that the form of the documents produced makes them difficult to review and use and that some documents are incomplete (Doc. 165, at 4-7), but this argument was waived since it was not made in Plaintiffs' initial brief. *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011) (well established in Seventh Circuit that arguments made for first time in reply briefs may be treated as waived).

[6] Plaintiffs also argue that some videos were produced in native format but others were not, despite the fact that Defendants represented that they produced the videos in native format. (Doc. 165, at 6; Doc. 158-2 ¶ 7). Since there appears to be no dispute that videos would be produced in native format, the parties should be able to resolve this issue among themselves. Plaintiffs also devote a significant part of their reply brief to (i) rebutting arguments that they say discredit Plaintiffs or their counsel, and (ii) attempting to discredit one of the Influencer Defendants. (Doc. 165, at 11-16). The Court does not rely on, and need not resolve, these accusations of the parties in ruling on the motion.

### III. REQUESTS FOR SANCTIONS

Plaintiffs and Defendants seek sanctions against each other in connection with the burden of filing or of responding to this motion. (Docs. 146, at 15; 165, at 16; 158-1, at 20). Given that the motion was granted in part and denied in part, and considering the complexity of the issues, both requests are denied.

### IV. CONCLUSION

For the reasons stated herein, Plaintiffs' motion is granted in part and denied in part. Both parties' requests for sanctions are denied.

ENTER:

Dated: December 5, 2024

SHEILA FINNEGAN
United States Magistrate Judge